**FILED**

APR 2 6 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-Filing

1   Daniel B. Beck, Esq., State Bar #63865
    Mahsa Gholami, Esq., State Bar #235634
2   BECK LAW, P.C.
    2681 Cleveland Avenue
3   Santa Rosa, CA 95403
    Telephone:  (707) 576-7175
4   Facsimile:   (707) 576-1878

5

6   Attorney for Plaintiffs,
    Thomas Knowles and Thomas Hicks

7

8                 UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA    **JCS**

10                   **C 07      2284**

11

12   THOMAS KNOWLES and THOMAS HICKS,          Case No.:

13                  Plaintiffs,                **COMPLAINT FOR BREACH OF
                                               CONTRACT, SPECIFIC
14   v.                                        PERFORMANCE, BREACH OF
                                               IMPLIED COVENANT OF GOOD
15   PACIFIC GAS & ELECTRIC COMPANY,           FAITH AND FAIR DEALING,
     DEANNA RADFORD, and DOES 1-20.            DISCRIMINATION IN
16                                             EMPLOYMENT PURSUANT TO
                   Defendants.                 CAL. GOVT. CODE § 12940(a), and
17                                             MALICE, FRAUD AND
                                               OPPRESSION.**
18

19                                             **BY FAX**

20

21   Plaintiffs THOMAS KNOWLES and THOMAS HICKS allege as follows:

22

23   1.  Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as

24       DOES 1-20, inclusive, and therefore, sue these Defendants by such fictitious names.

         Plaintiffs will amend this complaint to allege their true names and capacities when

25       ascertained.  Plaintiffs are informed and believe and thereon allege that each of the

26       fictitiously named Defendants is negligently responsible in some manner for the

27       occurrence herein alleged, and that Plaintiffs' injuries as herein alleged were proximately

28       caused by the negligence of these Defendants.

2.  Plaintiffs Thomas Knowles and Thomas Hicks (hereinafter collectively called "Plaintiffs") were employees of Defendant PACIFIC GAS & ELECTRIC COMPANY (hereinafter called "Defendant PG & E") and DOES 1-10, and each of them during the times relevant to this complaint. At all times herein mentioned, DOES 11-20, and each of them, were the owners, managers, supervisors, or other management employees of Defendant PG & E and were the supervisors of Plaintiffs.

3.  Defendant DEANNA RADFORD was an employee of Defendant PG & E during the time relevant to this Complaint. Plaintiffs are informed and believe and thereon allege that Defendant Deanna Radford worked in the Human Resources division of Defendant PG & E's Santa Rosa office.

4.  Until 1999, the Geysers were power plants operated by Defendant PG & E. Then, in 1999, a divestiture occurred, where the California Public Utility Commission placed an obligation on Defendant PG & E to have a two (2) year Operation and Maintenance period (hereinafter called "O & M period"). During this time, Defendant PG & E's expertise were made available to whoever purchased the power plant.

5.  Defendant PG & E created a benefits package for all power generation employees affected by the divestiture. The benefits package included a sixty (60) month right to re-employment by Defendant PG & E. Plaintiffs were entitled to the benefits package because they were affected by the divestiture as well and were by all definitions, power generation employees. At all times, plaintiffs were informed and believe, and thereon allege that they were entitled to the entirety of the benefits package.

6.  Defendant PG & E, through their employee, Defendant Deanna Radford specifically told Plaintiffs that they had a 60 month right to re-employment, including preferential rights to employment. At all times, Plaintiffs were informed and believe, and thereon allege that they had a 60 month right to re-employment. Defendant Deanna Radford, expressly notified plaintiffs that they were entitled to the 60 month right to re-employment.

*Knowles & Hicks v. PG & E, et al.*
Complaint

2

7. Plaintiffs were promised a 60 month right to re-employment, and relied on this benefit. They were personally informed by Defendants PG & E and Deanna Radford that they were entitled to this benefit. Plaintiffs were also reminded of such 60 month time period by their supervisors, including TIMOTHY HOLLINGSHEAD. Before the ending of the 60 month time period, Plaintiffs elected to claim their employment with Defendant PG & E. Mr. Hollingshead was also aware of the benefits package, and would attest to the fact that plaintiffs were persons entitled to such benefits package.

8. Prior to the conclusion of the 60 month period, plaintiffs communicated with Defendant Deanna Radford in order to claim their right to re-employment. Initially, Defendant Deanna Radford agreed that plaintiffs had a 60 month right to re-employment. However, shortly thereafter, Defendant Deanna Radford and Defendant PG & E denied ever making such promise to Plaintiffs. Despite their promises and agreement with Plaintiffs, Defendant PG & E refused to honor the 60 month right to re-employment, informing Plaintiffs that they would not be re-employed. Defendant PG & E attempted to deny any communication or promise to Plaintiffs, insisting that no such right existed.

9. Plaintiffs were entitled to all aspects of the benefits package. They were by all definitions persons entitled to such package, and they were affected by the divestiture. Plaintiffs were also expressly promised that they were entitled to a 60 month right to re-employment. Plaintiffs relied on such promises. All defendants, and each of them, are now denying that plaintiffs have any such rights.

10. During all times relevant to this Complaint, Plaintiffs were employed by PG & E, being classified as Base Personnel employees for purposes of the O & M period. During all times relevant to this Complaint, Plaintiffs were entitled to the 60 month right to re-employment. (*see* **EXHIBIT ONE**, attached herein and incorporated by reference.)

11. Jurisdiction and venue are proper in federal court based upon federal question jurisdiction under 28 U.S.C. § 1331. Defendant PG & E originally removed this case to this Court

*Knowles & Hicks v. PG & E, et al.*
Complaint

3

under 28 U.S.C. § 1441(b). Plaintiffs initially dismissed this action, without prejudice, in order to pursue arbitration. At this point, Plaintiffs are seeking relief in this Court.

### FIRST CAUSE OF ACTION

### BREACH OF CONTRACT

12. Plaintiffs incorporate by reference Paragraphs 1 through 11 of this Complaint as though fully set forth herein.

13. In 1999, when the divestiture occurred, Plaintiffs and Defendant PG & E, represented by Defendant Deanna Radford, entered into an agreement, by which Plaintiffs agreed that in exchange for working during the two year O & M period as Base Personnel, Defendant PG & E would give them a 60-month right to re-employment. This agreement was made by Defendant Deanna Radford, on behalf of Defendant PG & E.

14. Plaintiffs worked during the O & M period, and were classified as Base Personnel employees. This classification also conferred upon plaintiffs the entire benefits of the package given to all power generation employees, which included rights to re-employment, and other monetary and employment benefits. *See* Exhibit One, attached. Plaintiffs were power generation employees and as such, entitled to the entirety of the benefits package given to such classified employees. Furthermore, plaintiffs were specifically promised that they would have the 60 month right to re-employment with Defendant PG & E. The agreement was followed by subsequent oral confirmations that both plaintiffs would be entitled to the 60-month right to re-employment.

15. During the divestiture, plaintiffs were promised a 60-month right to re-employment. This promise was conferred by oral agreement. Pursuant to such promise, plaintiffs did not elect their rights until shortly before the 60-month period lapsed. Defendant PG & E and their employees, managers, and staff, including Defendant Deanna Radford, failed to honor their promises to Plaintiffs, and by failing to honor Plaintiffs' right to re-employment, Defendants PG & E and Deanna Radford breached their agreement.

*Knowles & Hicks v. PG & E, et al.*
Complaint

4

Defendants PG & E and Deanna Radford breached their oral agreement, as well as their subsequent confirmations to honor the 60 month right to re-employment. All defendant, and each of them, denied plaintiffs their rights to the 60 month right to re-employment because they believed that plaintiffs would eventually give up.

16. The divestiture also conferred upon plaintiffs the entirety of the benefits package, since they were within the class of persons for which such benefits package was created. Mr. Hollingshead was also aware of such right, as evidenced by the Exhibit One Declaration. Defendant PG & E and their employees, managers, and staff, including Defendant Deanna Radford, failed to honor the benefits package that plaintiffs were entitled to receive, and by failing to honor such benefits, Defendants PG & E and Deanna Radford breached their agreement. Defendants PG & E and Deanna Radford breached their agreement, despite the fact that it was clear that plaintiffs were qualified for the entirety of the benefits package. All defendant, and each of them, denied plaintiffs their rights to the benefits package because they believed that plaintiffs would eventually give up.

17. Within the 60-month time period, Plaintiffs asserted their rights under the benefits package and oral promises of their employer, and asked Defendants PG & E and Deanna Radford for re-employment. Plaintiffs requested that Defendants perform under their agreement. However, Defendants PG & E and Deanna Radford breached the agreement by refusing to honor the rights to re-employment to which Plaintiffs were entitled, and informed Plaintiffs that they would not be re-employed.

18. Plaintiffs have performed all the terms and conditions required of Plaintiffs by the terms of the agreement.

19. Within the allotted time, pursuant to the 60-month right to re-employment, Plaintiffs demanded that Defendants PG & E and Deanna Radford perform their promises under the parties' agreement, but all Defendants, and each of them, refused and continue to refuse to perform under the agreement.

*Knowles & Hicks v. PG & E, et al.*
Complaint

5

20. Defendants have also denied plaintiffs their rights to the benefits package, and refuse to perform, despite the fact that plaintiffs were entitled to such package. Plaintiffs were classified as Base Personnel and as such, entitled to the benefits package put together by Defendant PG & E. The benefits package included a 60-month right to re-employment with Defendant PG & E. Even if defendants argued that plaintiffs were not entitled to the entire benefits package, plaintiffs were expressly promised a 60 month right to re-employment. Plaintiffs detrimentally relied on such benefit, and as a result, waited until shortly before the 60-month time period to pursue their re-employment rights. Defendant PG & E breached its agreement with Plaintiffs. Defendant PG & E is refusing to honor plaintiffs' rights to re-employment and rights under the benefits package.

21. As a direct, foreseeable and proximate result of Defendant PG & E's deliberate breach of the agreement, Plaintiffs have lost income, career opportunities, and other damages in an amount to be proven.

22. Separate from the benefits package, Defendant PG & E and its employees orally promised Plaintiffs that they would be entitled to a 60-month right to re-employment. These oral assurances by Defendant PG & E and their employees were relied upon by Plaintiffs, all to their detriment.

23. An oral agreement will be held binding, regardless of the absence of any representation by the defendant, if (1) the plaintiff, in reliance upon it, has so changed his or her position that unconscionable injury would be suffered, or (b) the defendant, having accepted the benefits of the oral contract, would be unjustly enriched by nonenforcement. (*see Monarco v. Lo Greco* (1950) 35 C.2d 621, 623) A person is required to make restitution to another if, under the circumstances, it is unjust for her to retain said benefits received. (*First Nationwide Savings v. Perry* (1992) 11 Cal.App.4th 1657, 1662)

24. Pursuant to their oral agreements, Defendant PG & E gave further assurances of Plaintiffs' 60-month right to re-employment. Plaintiffs detrimentally relied on such oral promises by Defendant PG & E and its employees. Defendant PG & E and its employees

*Knowles & Hicks v. PG & E, et al.*
Complaint

6

breached this oral agreement by refusing to re-employ Plaintiffs within the 60-month time period. As a direct and proximate result, Plaintiffs have incurred serious damages in an amount to be ascertained.

25. Defendant Deanna Radford represented to Plaintiffs that Plaintiffs had a 60 month right to re-employment with Defendant PG & E. When plaintiffs attempted to claim such right, she confirmed her previous promise. However, Defendant Deanna Radford subsequently changed her story, and denied ever giving such right. By failing to honor her promise under the parties' oral agreement, Defendant Deanna Radford breached her agreement with Plaintiffs. Defendant Deanna Radford's breach of contract was within the scope of her employment with Defendant PG & E. Through agency and/or respondeat superior theories of liability, her breach and the resulting damages are further attributable to Defendant PG & E.

## SECOND CAUSE OF ACTION
### SPECIFIC PERFORMANCE

26. Plaintiffs incorporate by reference Paragraphs 1 through 25 of this Complaint, as though fully set forth herein.

27. At the time of the divestiture, plaintiffs believed that they were entitled to the entirety of the benefits package since they should have been classified as power generation employees. (*See also* Exhibit One) Furthermore, Defendants PG & E and Deanna Radford insisted plaintiffs would have a 60 month right to re-employment with Defendant PG & E. Plaintiffs and Defendants PG & E and Deanna Radford entered into an oral agreement, whereby Defendants promised that Plaintiffs would have a 60 month right to re-employment, including preferential rights to such employment. Plaintiffs would have their former classifications and be able to work in their former area at the time they elected to take their right. Plaintiffs relied on such oral promises. Plaintiffs further relied on the fact that their job classification entitled them to the entirety of the benefits package.

*Knowles & Hicks v. PG & E, et al.*
Complaint

7

28. At the time that Plaintiffs and Defendants entered into the agreement, the consideration to be paid by both parties was adequate, and the agreement is reasonable and just as to all parties.

29. Plaintiffs have performed all conditions precedent required to be performed by Plaintiffs under the oral contract.

30. Within the 60 month time period, plaintiffs invoked their right to re-employment with Defendant PG & E. Plaintiffs have repeatedly requested that Defendant PG & E give them their jobs back, with their promised preferential rights. Defendant PG & E refused and continues to refuse to perform their promises under the agreement.

31. As such, Plaintiffs request that Defendant PG & E be ordered to honor their promise of re-employment and give Plaintiffs their jobs back. Plaintiffs further request that Defendant PG & E be ordered to confer upon plaintiffs the entirety of the benefits package.

32. Plaintiffs further request damages from all Defendants, and each of them, in an amount to be proven.

## THIRD CAUSE OF ACTION

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

33. Plaintiffs incorporate by reference Paragraphs 1 through 32 of this Complaint as though fully set forth herein.

34. The parties' agreement and oral promise by Defendants PG & E and Deanna Radford, discussed above, contained an implied covenant of good faith and fair dealing, which obligated all Defendants, and each of them, to perform the terms and conditions fairly and in good faith, and refrain from doing any act that would prevent or impede Plaintiffs

*Knowles & Hicks v. PG & E, et al.*    8
Complaint

from performing any and all of the conditions of the agreement that they agreed to perform, or any act that would deprive Plaintiffs of the benefits of the contract.

35. Furthermore, because plaintiffs were equally affected by the divestiture and were, by all definitions, classified power generation employees, they were entitled to the entirety of the benefits package that power generation employees received.

36. Plaintiffs performed all of the duties and conditions of their agreement.

37. Defendants PG & E and Deanna Radford knew that Plaintiffs had fulfilled all of their duties and conditions under the contract.

38. Defendants PG & E and Deanna Radford breached the implied covenant of good faith and fair dealing under the agreement by terminating Plaintiffs' employment intentionally, in bad faith, and for reasons extraneous to the contract. All Defendants, and each of them, reaped the benefits of their contract, by having Plaintiffs work during the O & M period. However, when plaintiffs attempted to lawfully obtain their right to re-employment, Defendants refused to honor the parties' agreement.

39. Plaintiffs had a 60 month right to re-employment pursuant to their employment with Defendant PG & E. Plaintiffs were orally promised that they would be entitled to such benefit by Defendant Deanna Radford, on behalf of Defendant PG & E. Plaintiffs relied on Defendants PG & E and Deanna Radford's promises and assurances to honor their agreement. Moreover, plaintiffs were entitled to the benefits package given to power generation employees because their work was classified as such.

40. Defendants PG & E and Deanna Radford breached the implied covenant of good faith and fair dealing by acting in bad faith with the intent to frustrate plaintiffs' enjoyment of their contractual rights. All Defendants, and each of them, are denying Plaintiffs their right to re-employment, despite their earlier promises. (*see Shapiro v. Wells Fargo Realty Advisors* (1984) 152 Cal.App.3d 467, 478-479) There is an implied covenant of good

faith and fair dealing in every contract the neither party will do anything that will injure the right of the other to receive the benefits of the parties' agreement. (*see Sheppard v. Morgan Keegan & Co.* (1990) 218 Cal.App.3d 61, 66; *see also* Restatement (Second) of Contracts, § 205)

41. Defendants' bad faith conduct caused these Plaintiffs to lose the benefits of their contract, namely, to lose their employment with Defendant PG & E. Plaintiffs also lost all other monetary and employment benefits given pursuant to the benefits package.

42. As a proximate result of Defendants PG & E and Deanna Radford's breach of the implied covenant of good faith and fair dealing, Plaintiffs have suffered, and continue to suffer, losses in earnings and other employment benefits, and consequential economic damages in an amount to be proven.

## FOURTH CAUSE OF ACTION

### DISCRIMINATION IN EMPLOYMENT – CALIFORNIA GOVERNMENT CODE § 12940(a)

43. Plaintiffs incorporate by reference Paragraphs 1 through 42 of this Complaint as though fully set forth herein.

44. At all times relevant to this Complaint, Plaintiffs have been employed by Defendant PG & E. When Defendant PG & E created their benefits package, Plaintiffs should have been included as recipients of such package. Even arguing that they were not recipients of the entirety of the benefits package, plaintiffs were definitely promised a 60 month right to re-employment with Defendant PG & E. Plaintiffs relied on this benefit and promise.

45. When Plaintiffs attempted to pursue their right to re-employment, they were told by Defendant PG & E that no such rights existed as far as these Plaintiffs were concerned. Furthermore, they were informed that they would not be entitled to re-employment with Defendant PG & E. Plaintiffs, who had relied on the benefits package and promises of their employer, were left without employment. Had Plaintiffs not been made promises by

Defendant PG & E, promises on which they relied, Plaintiffs would have pursued their
right to re-employment at an earlier time.

46. Plaintiffs were entitled to Defendant PG & E's benefits package, and in particular, the 60
month right to re-employment benefit. This is based on their job title, job description,
and responsibilities following divestiture. Furthermore, Defendant PG & E specifically
promised Plaintiffs that such right to re-employment for 60 months existed as far as
Plaintiffs were concerned.

47. Defendant PG & E has engaged in discrimination in employment. Discovery is still
continuing as to the extent of such discrimination. Plaintiffs are informed and believe
and thereon allege that such discrimination was motivated by their age. Defendant PG &
E has refused to honor their promises, pursuant to the benefits package, only as far as
these two plaintiffs are concerned. Defendant PG & E's failure to honor their promises to
Plaintiffs is not based on any good cause.

48. Both plaintiffs are over forty years old, and plaintiffs are informed and believe and
thereon allege that their age was a motivating factor in Defendant PG & E's refusal to re-
employ Plaintiffs. The Fair Employment & Housing Act protects employees over the age
of 40. (see Cal. Govt. §§ 12926(b), 12941(a)) Defendant PG & E, despite their promises
to Plaintiffs, has denied these Plaintiffs their right to re-employment. In doing the things
herein mentioned, Defendant PG & E discriminated against Plaintiffs in the conditions of
their re-employment. Defendant PG & E dismissed the duties and obligations they owed
these Plaintiffs, in violation of California Government Code § 12940.

49. As a direct and proximate result of the conduct of the defendants, and each of them,
Plaintiffs have suffered and will suffer economic loss and the violation of their statutory
or other constitutional rights and other damages as herein set forth.

50. Based on the foregoing, Plaintiffs filed claims with the Department of Fair Employment
and Housing and have received right to sue letters from it.

*Knowles & Hicks v. PG & E, et al.*
Complaint

11

# FIFTH CAUSE OF ACTION

## MALICE, OPPRESSION AND FRAUD

51. Plaintiffs incorporate by reference paragraphs 1 through 50 of this Complaint as though fully set forth herein.

52. Civil Code section § 3294(a) allows recovery of punitive damages as follows:

In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

Civil Code section § 3294(c) defines malice and oppression as follows:

(1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.
(2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.
(3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

53. Defendant PG & E, through their employee, Defendant Deanna Radford, represented to Plaintiffs that they would have a 60-month right to re-employment. This promise was repeatedly given to plaintiffs and pursuant to such promise, plaintiffs worked during the O & M period. Relying reasonably and justifiably on these representations, Plaintiffs worked during the two year O & M period, and did not attempt to reclaim their right to re-employment until shortly before the 60-month time period.

54. Plaintiffs are informed and believe and thereon allege that Defendant PG & E is intentionally refusing to honor the 60-month right to re-employment which they offered to Plaintiffs. They are doing this in order to save themselves additional expense of re-employing these plaintiffs since such re-employment would cause other employees' positions to be reclassified and moved. Plaintiffs are informed and believe and thereon allege that Defendant PG & E was not intending to honor their agreement pursuant to the

benefits package or their oral agreement that plaintiffs would have a 60 month right to re-employment. Defendant PG & E knew plaintiffs were relying on such benefits package and 60-month re-employment. Defendant PG & E intentionally and knowingly concealed such information from Plaintiffs, with the intent to deceive Plaintiffs into continuing their employment and performing all of their duties and responsibilities under the employment contract. Because plaintiffs trusted Defendant PG & E and their promises, they did not attempt to reclaim their employment rights until shortly before the 60 month time period.

55. All Defendants, and each of them, knew that Plaintiffs would not have sought, obtained, and continued their employment had they known that Defendants were not intending to fulfill their promise of re-employing plaintiffs. Both plaintiffs were employees of Defendant PG & E for over twenty years, and had seniority rights. Defendants PG & E and Deanna Radford did not want to honor such seniority rights, and hoping that plaintiffs would give up, denied plaintiffs their given rights to re-employment.

56. This is further evidenced by the fact that Defendant Deanna Radford promised plaintiffs such right, then confirmed such right during the time plaintiffs attempted to reclaim their employment. Then, after speaking with Defendant PG & E personnel, Defendant Deanna Radford denied ever making such statements to plaintiffs, and denied that Plaintiffs ever had such a right. Plaintiffs are informed and believe and thereon allege that defendant Deanna Radford intentionally misrepresented and deceived plaintiffs because she was told to do so by Defendant PG & E. Despite her previous statements to the contrary, defendant Deanna Radford concealed the truth from plaintiffs, hoping that they would give up. Defendants PG & E and Deanna Radford intended to deprive plaintiffs of their property and legal rights because they fraudulently denied plaintiffs their rights to re-employment.

57. As a proximate result of the acts herein alleged, Plaintiffs sustained the loss of their employment with Defendant PG & E, employment benefits, income, and other related, consequential damages. Each of the acts alleged herein were done with wanton, reckless

*Knowles & Hicks v. PG & E, et al.*
Complaint

13

disregard for the rights of the Plaintiffs and with full knowledge that they would be
harmed as a result of said acts. All defendants, and each of them, are guilty of fraud.

58. Furthermore, Defendant PG & E is guilty of malice and oppression in its unlawful
conduct against Plaintiffs. Defendant PG & E recklessly and maliciously placed
Plaintiffs in a situation wherein plaintiffs did not reclaim their right to re-employment
until shortly before the 60-month period. Defendant PG & E did so with a willful and
conscious disregard of the rights or safety of Plaintiffs. Their despicable conduct resulted
in Plaintiffs losing their right to re-employment, and sustaining serious damages.
Defendant PG & E's despicable conduct subjected Plaintiffs to cruel and unjust hardship
in conscious disregard of Plaintiffs' rights. Defendant PG & E wanted to silence
plaintiffs and force them to stay with Calpine, having them falsely believe that they had
re-employment rights.

59. Defendant PG & E, in total disregard of the rights and safety of Plaintiffs, and with the
malicious desire of wrongfully causing plaintiffs to lose their jobs, exposed plaintiffs to
this situation that inevitably resulted in plaintiffs' serious damages.

60. In doing the acts herein alleged, Defendant PG & E acted with oppression, fraud and
malice, and Plaintiffs are entitled to punitive damages in an amount to be proven.

Plaintiffs will suffer damages legally and proximately caused by Defendants if relief is not
granted.

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1. Recovery for loss of earnings for Plaintiff Thomas Hicks;
2. Recovery for loss of earnings for Plaintiff Thomas Knowles;
3. Recovery for loss of future earning capacity for Plaintiff Thomas Hicks;
4. Recovery for loss of future earning capacity for Plaintiff Thomas Knowles;
5. Restitution in the amount of Defendants' unjust enrichment;

*Knowles & Hicks v. PG & E, et al.*                                     14
Complaint

6. That the Court order Defendant PG & E to re-employ Plaintiffs with preferential rights and former classification, based on plaintiffs' seniority;

7. That the Court order Defendant PG & E to confer upon plaintiffs all rights under the benefits package given to power generation employees;

8. Punitive damages against Defendants;

9. For an award of interest, including prejudgment interest, at the legal rate;

10. For mental and emotional distress damages;

11. Attorneys' fees and costs of suit; and

12. For such other and further relief that the court may deem proper.

Dated: April 25, 2007

BECK LAW, P.C.

By _____
Mahsa Gholami, Esq.
Attorney for Plaintiffs

**EXHIBIT 1**

I, TIMOTHY HOLLINGSHEAD, declare as follows:

1.    I am competent to testify as to the matters set forth herein. If called as a witness, I could and would testify as to the matters set forth below. I have knowledge of all the matters set forth below based on first-hand personal knowledge except for the matters alleged on information and belief, and so to those matters, I believe them to be true. I make this declaration in support of Thomas Hicks and Thomas Knowles re-employment rights of 60 months from the last day of work.

2.    Until 1999, the Geysers were power plants operated by PG & E. I was a Department Head at that time. Then, in 1999, the divestiture occurred, placing a requirement on PG & E by the California Public Utility Commission for a two year O & M period (Operation and Maintenance period) (1999-2001), where PG & E's expertise were to be made available to whoever purchased the power plant. (California Public Utilities Commission Code section 363)

3.    Thomas Hicks and Thomas Knowles worked at PG & E and were classified as Base Personnel employees for purposes of the two year O & M period, as deemed by the Purchase and Sales Agreement filed with the C.P.U.C. by PG & E. (a copy of the pertinent portion of the Purchase and Sales Agreement is attached as **Exhibit A**, and incorporated by reference herein) I acted as a liaison between Calpine and PG & E until the end of the O & M period in 2001. I have known Mr. Hicks and Mr. Knowles for over fifteen years, and from approximately 1991 through 1999, I acted as their Department Head. From 1999 through 2001, I was the Geyser's liaison, and being in the O & M group, we continued our work relationship.

4.    There was a benefits package put together for power generation PG & E employees affected by divestiture. Initially, this package was only offered to Power Generation Department employees. However, eventually a modified version included fleet and material employees. It is my position that all employees affected by the divestiture would receive a 60 month right to re-employment by PG & E. Everything in their agreements were the same, except for the fact that some power generation employees also received monetary compensation as an addition to their package. The 60 month right to re-employment was given to all affected employees.

Declaration of Timothy Hollingshead

5.      There is no doubt in my mind that Mr. Hicks and Mr. Knowles are entitled to the 60 month right to re-employment. They were required to work during the two year O & M period as Base Personnel. In Exhibit A, under the Schedule of Base Personnel (2.1.1), it states that "2 Garage Personnel" are defined as base personnel. Mr. Hicks and Mr. Knowles were the 2 garage personnel referred to in this section of the Agreement. The power generation employees and fleet and material employees were always given the same 60 month right to re-employment.

6.      Although PG & E has never stated that Mr. Hicks and Mr. Knowles were power generation employees, it is my opinion and position that they should be classified as power generation employees as well. This opinion is based, in part, by PG & E's own definition in their filing of the Purchase and Sale Agreement between PG & E and Calpine. (Exhibit A) Specifically, the "base personnel" for the O & M period *must* be power generation employees. (see Exhibit A, Article 1, under definition of Base Personnel) By including Garage and Materials Personnel in the schedule of Base Personnel, by PG & E's own definition, Mr. Hicks and Mr. Knowles are power generation employees.

Mr. Hicks and Mr. Knowles maintained all fleet equipment at the plant, specifically for power generation. They worked at a PG & E power generation plant, reported to a power generator supervisor, and were considered power generation employees in all regards. In my opinion, they should be classified as power generation employees, and are entitled to the additional monetary compensation as designated for power generation employees.

8.      Based on my experience and knowledge of the circumstances around this matter, I am confident that both Mr. Hicks and Mr. Knowles were given the right to re-employment for a period of *60 months*. Mr. Hicks and Mr. Knowles detrimentally relied on this promise by PG & E and attempted to pursue their right within the 60 month time period. PG & E has been unwilling to honor their agreement, even though Mr. Hicks and Mr. Knowles are clearly entitled to the 60 month time period for re-employment. If nothing else, Mr. Hicks and Mr. Knowles deserve this right in fairness and reliance on PG & E's representations to them.

Declaration of Timothy Hollingshead

1    I declare under penalty of perjury under the laws of the State of California that the

2    foregoing is true and correct, and that this declaration was executed on 3·21·2006 at

3    Mendocino, California.

4

5    Timothy Hollingshead

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Declaration of Timothy Hollingshead

**EXHIBIT A**

## OPERATION AND MAINTENANCE AGREEMENT

This OPERATION AND MAINTENANCE AGREEMENT ("Agreement") is made and entered into as of _____, 199_, by and between [OWNER], a _____ ("Owner"), and PACIFIC GAS AND ELECTRIC COMPANY, a California corporation ("PG&E").

### BACKGROUND

A.    Concurrently herewith, Owner has purchased certain assets constituting the generating facility known as the Sonoma County Units at the Geysers from PG&E pursuant to a Purchase and Sale Agreement between Owner and PG&E dated as of even date herewith (the "Purchase Agreement"). The generating facility and any other Assets (as defined in the Purchase Agreement) constituting tangible real and personal property conveyed to Owner pursuant to the terms of the Purchase Agreement are referred to herein as the "Generating Facility".

B.    Section 363 of the California Public Utilities Code requires that, in connection with the sale of the Generating Facility, PG&E enter into an agreement with Owner for a period of not less than two years pursuant to which PG&E will operate and maintain the Generating Facility (subject to the exceptions set forth in Section 363 of the California Public Utilities Code).

C.    In accordance with Section 363 of the California Public Utilities Code, Owner desires to retain the services of PG&E for operation and maintenance of the Generating Facility, and PG&E is willing to perform such services, all upon the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants, undertakings and conditions set forth below, each of Owner and PG&E hereby agrees as follows:

### ARTICLE 1
### DEFINITIONS

1.1    Defined Terms. The following terms when used in this Agreement (or in the Schedules, Appendices or Exhibits to this Agreement) with initial letters capitalized have the meanings set forth below:

○    Absent Personnel. "Absent Personnel" has the meaning set forth in Section 2.1.6 "Absent Personnel".

• Additional Perso.....el. "Additional Personnel" means ... .e certain job categories listed on Schedule 2.1.3. Notwithstanding anything hereunder to the contrary, subcontractors and their personnel, including employees, agents and representatives, will not be deemed to constitute Additional Personnel.

• Affiliate. "Affiliate"of a Person means any other Person that: (i) directly or indirectly controls the specified Person; or (ii) is controlled by or is under direct or indirect common control with the specified Person. For the purposes of this definition, "control", when used with respect to any specified Person, means the power to direct the management or policies of the specified Person, directly or indirectly, whether through the ownership of voting securities, partnership or limited liability company interests, by contract or otherwise; provided, however, that a contract between a Person and any supplier of fuel or power purchaser does not, by itself, constitute "control" for the purposes of this definition.

• Agreement. "Agreement" means this Operation and Maintenance Agreement, together with the Schedules and Exhibits hereto.

• Base Fee. "Base Fee" has the meaning set forth in Section 6.1 "Base Fee".

• Base Personnel. "Base Personnel" means, collectively, the personnel listed on Schedule 2.1.1 by job category. Notwithstanding anything herein to the contrary, subcontractors and their personnel, including employees, agents and representatives, and Non-Power Gen Personnel will not be deemed to constitute Base Personnel.

• Business Day. "Business Day" means a day other than Saturday, Sunday or a day on which: (i) banks are legally closed for business in the State of California; or (ii) PG&E is closed for business.

• CBAs. "CBAs" means, collectively, the following collective bargaining agreements, as in existence from time to time, between PG&E and the unions representing PG&E's employees: (i) the Agreement Between PG&E and Local Union No. 1245 of International Brotherhood of Electrical Workers Affiliated with American Federation of Labor Congress of Industrial Organizations Applying to Operation, Maintenance and Construction Employees; and (ii) the Agreement Applying to Professional and Technical Employees Between Engineers and Scientists of California IFPTE (AFL-CIO) and PG&E.

• Closing Date. "Closing Date" has the meaning set forth in the Purchase Agreement.

• Code of Conduct. "Code of Conduct" has the meaning set forth in Section 13.16.3 "Code of Conduct".

• Commencement Date. "Commencement Date" means the Closing Date.

## ARTICLE 2
## PG&E PERSONNEL AND SERVICES

From and after the Commencement Date, PG&E will provide operation and maintenance services as described in this Article 2 "PG&E Personnel and Services", at and under the direction and instruction of Owner, on the terms and conditions, in accordance with the standards and for the compensation and/or reimbursement as herein set forth.

### 2.1    Personnel.

2.1.1 Base Personnel. PG&E will provide and make available to Owner at the Generating Facility the Base Personnel.

2.1.2 Requested Personnel. PG&E will provide and make available to Owner at the Generating Facility the Requested Personnel, as requested by Owner within 45 days after the date Owner executes the Purchase Agreement and as amended or modified from time to time, with the consent of PG&E, on 30 days' written notice to PG&E by Owner.

2.1.3 Additional Personnel. PG&E will use Commercially Reasonable Efforts to make available to Owner Additional Personnel at the Generating Facility, in quantities and for periods of time, as requested by Owner in accordance with Section 4.3 "Request for Additional Personnel".

2.1.4 PG&E Personnel. All PG&E employees assigned by PG&E, on a permanent or temporary basis, to perform PG&E's obligations under this Agreement will be qualified to perform their assigned duties, and will remain the employees of PG&E or its Affiliates, and, subject to the CBAs, PG&E will be solely responsible for, and possess sole authority over the management, direction and control over such employees, including all matters relating to such employees' working hours, schedules, working conditions, rates of compensation and all other terms and conditions of their employment. Owner acknowledges that the terms and conditions of employment of substantial numbers of the personnel provided and/or made available to Owner by PG&E under this Agreement are governed by the CBAs, and neither PG&E nor any employee of PG&E will be required by the terms hereof to take any action in violation of any CBA. The Parties intend that they will not be considered joint employers of any PG&E employees.

2.1.5 Responsibility for Workplace Health and Safety. Subject to Section 3.6 "Generating Facility", and in accordance with PG&E's customary practices and at the expense of Owner under Section 6.4 "Workplace Health and Safety", PG&E will be responsible for: (i) the workplace health and safety of PG&E Personnel at the Generating Facility, including (a) taking those precautions (such as providing personal protective equipment) that PG&E determines in its sole discretion should be taken to provide a safe workplace at the Generating Facility for PG&E Personnel, and (b) providing general, specific and environmental training to PG&E Personnel; and (ii) complying with the CBAs

SF1-314027 09

SCHEDULE 2.1.1

## SCHEDULE OF BASE PERSONNEL

1. 10 Supervisors (one of which will be a safety supervisor)

2. 50 Operators

3. 36 Maintenance Personnel

4. 2 Materials Personnel

5. 4 Chemical Technicians

6. 2 Plant Clerks

7. 2 Garage Personnel

If Owner acquires the Sonoma County Units and the Lake County Units, the combined Base Personnel will be:

1. 10 Supervisors (one of which will be a safety supervisor)

2. 60 Operators

3. 40 Maintenance Personnel

4. 2 Materials Personnel

5. 4 Chemical Technicians

6. 3 Plant Clerks

7. 2 Garage Personnel

10348419.hf - 4/25/2007 12:44:25 PM

SCHEDULE 6.2

# SCHEDULE OF LABOR RATES

## 1991 LABOR RATES

| Job Category | Straight Time | 1.5x Overtime | 2.0x Overtime |
|---|---|---|---|
| 1. Operator | $50.70 | $65.24 | $79.79 |
|     Second Shift | $52.93 | $68.13 | $83.33 |
|     Third Shift | $55.14 | $70.34 | $84.22 |
| 2. Supervisor | $60.99 | $77.39 | $92.35 |
| 3. Maintenance Personnel | $50.11 | $64.48 | $74.85 |
| 4. Materials Personnel | $44.38 | $57.09 | $69.20 |
| 5. Helper | $40.18 | $51.59 | $62.04 |
| 6. Chemical Technician | $47.41 | $61.00 | $76.58 |
| 7. Design Engineer | $57.19 | $74.22 | $91.23 |
| 8. Design Drafter | $45.69 | $59.18 | $72.67 |
| 9. Plant Clerk | $46.24 | $59.48 | $72.72 |
| 10. Garage Personnel | $49.51 | $63.71 | $77.91 |
| 11. Non-Power Gen Personnel | PG&E's internal standard rate | PG&E's internal standard rate | PG&E's internal standard rate |

## VERIFICATION (CCP Section 446)

I, THOMAS KNOWLES, declare:

I am a Plaintiff in this matter; I have read the foregoing **COMPLAINT,** and know the contents thereof; the same is true of my own personal knowledge, except as to those matters which are therein stated on my information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 6th day of _August_ , 2006, in _Middleto..h_, California.

_[signature]_

Thomas Knowles

**VERIFICATION (CCP Section 446)**

I, THOMAS HICKS, declare:

I am a Plaintiff in this matter; I have read the foregoing **COMPLAINT**, and know the contents thereof; the same is true of my own personal knowledge, except as to those matters which are therein stated on my information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 6 day of AUGUST , 2006, in Hondo/town , California.

Thomas Hicks