IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

THOMAS KNOWLES AND THOMAS HICKS,

                Plaintiffs,

  v.

PACIFIC GAS & ELECTRIC COMPANY,
DEANNA RADFORD, AND DOES 1-20,

                Defendants.

_____/

No. C 07-2284 CW

ORDER GRANTING
DEFENDANT PG&E'S
MOTION TO DISMISS WITH
LEAVE TO AMEND

    Plaintiffs Thomas Knowles and Thomas Hicks allege, among other things, breach of an employment contract and employment discrimination based on age.  Defendant Pacific Gas & Electric Company (PG&E)[1] moves to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint is preempted by § 301 of the Labor Management Relations Act of 1947

---

[1]  Defendant Deanna Radford was served with the summons and complaint on October 5, 2007.  This motion was filed before she was served and she has not joined it.  Although Radford did not join in this motion, the claims against her must be dismissed with leave to amend also.  See Silverton v. Dep't of Treasury of United States of America, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related.").  Such is the case here.

(LMRA), 29 U.S.C. § 185(a).  Plaintiffs oppose this motion.  The
motion was heard on November 15, 2007.  Having considered oral
argument on the motion and all of the papers filed by the parties,
the Court GRANTS PG&E's motion to dismiss, and grants Plaintiffs
leave to amend.

                              BACKGROUND

     The following facts are taken from Plaintiffs' complaint and
from the documents of which the Court takes judicial notice.
Plaintiffs were former fleet maintenance employees of PG&E.
(Compl. ¶ 2 at 2.)  At all relevant times, Plaintiffs worked in the
PG&E power plants called the Geysers.  Plaintiffs' employment with
PG&E was governed by a collective bargaining agreement (CBA)
between PG&E and International Brotherhood of Electrical Workers,
Local No. 1245 (IBEW).

     The Geysers were operated by PG&E until they were sold in
1999.  As a condition of the sale, the California Public Utility
Commission (CPUC) imposed an obligation on PG&E to agree to a two
year Operation and Maintenance period (1999-2001) (O&M period)
which required PG&E to make its expertise available to whomever
purchased the power plants.  (Id. ¶ 4.)  PG&E continued to operate
the power plants for another two years after they were sold in
1999.  Plaintiffs worked in the Geysers during the O&M period.

     The CBA provides that a benefits package, including
preferential re-employment rights for up to thirty months, would be
granted to qualified laid-off employees affected by divestiture.
(Exh. A, Agreement: Operation, Maintenance & Construction
Employees, title 206.13, at 50.)

                                   2

Title 400.1 of the CBA provides that PG&E and IBEW could use letter agreements to resolve pending issues under the CBA.  (Id., Exh. A, titles 400.1-400.4.)  On April 14, 1997, pursuant to title 400.1 of the CBA, PG&E and IBEW entered into a Letter Agreement that modified title 206.13 of the CBA.  (Def's Exh. B, Letter Agreement.)  The modification increased the preferential re-employment rights of qualified employees from thirty months to sixty months.  (Id. at 3.)  The Letter Agreement provides:

> The trigger for these provisions will be the formal approval by the CPUC of the process tied to the sale of generating facility.  All of these provisions will only be applicable to that facility that has been approved for sale.  In the event of a partial sale, Company and Union will meet prior to the filing to determine which employees are covered by this Agreement.  If, after the determination is made, it is found during subsequent 206 activity that other employees are impacted by the divestiture sale, they will be entitled to the provisions outlined in this Agreement on a retroactive basis.  This agreement is subject to the provisions of Title 102 for determination of covered employees.

(Def.'s Exh. B, Letter Agreement, "Application Trigger" at 2.)

Plaintiffs allege that the benefits package was created for all power generation employees affected by the divestiture and that they were entitled to the benefits package because they were classified as power generation employees and were affected by the divestiture.  (Id.)  Plaintiffs further allege that PG&E, through its employee Deanna Radford, orally represented to them that they were entitled to the sixty-month preferential re-employment benefit.  (Compl. ¶ 6.)  Plaintiffs relied upon this promise and continued working during the O&M period.  (Id. ¶ 7.)  When they applied for re-employment near the end of the sixty month period, Radford denied telling them they were qualified for the

preferential sixty-month re-employment benefit and denied that they

were.  (<u>Id.</u> ¶ 8.)  The complaint alleges, in pertinent part:

> During divestiture, Plaintiffs were promised a 60-month
> right to re-employment.  This promise was conferred by
> oral agreement.  Pursuant to such promise, plaintiffs did
> not elect their rights until shortly before the 60-month
> period lapsed.  [PG&E], including Defendant Deanna
> Radford, failed to honor their promises to Plaintiffs,
> and by failing to honor Plaintiffs' right to re-
> employment, [PG&E] breached their agreement.  [PG&E] and
> Deanna Radford breached their oral agreement, as well as
> their subsequent confirmations to honor the 60-month
> right to re-employment.

(<u>Id.</u> ¶¶ 12-25.)

Plaintiffs were laid off in May, 2001, after the O&M period

expired.  On July 2, 2001, Plaintiffs separately executed a

Severance Agreement and Release and with it each received more than

$58,000 as consideration.  (Def.'s Exhs. C and D.)  The Severance

Agreement provides in pertinent part:

> The parties understand and agree that the payment
> provided in this paragraph is in addition to, and does
> not affect, any payment and benefit to which [Plaintiffs]
> may be otherwise entitled under PG&E's compensation,
> performance incentive, stock option and other benefit
> programs.

(<u>Id.</u> ¶ 2.)  The agreement also provides that Plaintiffs release and

agree to hold harmless PG&E, its agents and employees from "all

actions, causes of action, claims, disputes, judgments,

obligations, damages, and liabilities of whatsoever kind and

character, relating to [Plaintiffs'] employment with PG&E,

including [their] employment severance and any action which led to

the severance."  (<u>Id.</u> ¶ 4.)  This includes, but is not limited to,

claims "arising under the federal, state, or local law, regulation,

or order relating to civil rights (including employment

discrimination on the basis of race, color, religion, age, sex,

4

national origin, handicap, ancestry, physical handicap, medical
condition, veteran status, marital status, and sexual orientation),
wage and hour, labor, contract or tort."  (<u>Id.</u>)  The release
further provides that it "extends to all claims of every nature and
kind whatsoever, known or unknown, suspected or unsuspected, past
or present, and all rights under Section 1542 of the California
Civil Code are hereby expressly waived."[2]  (<u>Id.</u> ¶ 5.)

PROCEDURAL HISTORY

On August 23, 2006, Plaintiffs filed an action against
Defendants alleging the same causes of action they allege in the
instant complaint.  On October 16, 2006, Defendants removed that
action to this Court.  <u>See</u> <u>Knowles v. Pacific Gas & Electric</u>, case
number C 06-6430 EMC.  On October 30, 2006, Plaintiffs voluntarily
dismissed that case.  Plaintiffs allege that they dismissed without
prejudice in order to pursue arbitration.

On April 26, 2007, Plaintiffs filed the present civil
complaint.  Plaintiffs allege five claims against PG&E for failing
to give them the sixty-month preferential re-employment benefit:
(1) breach of contract; (2) request for specific performance;
(3) breach of implied covenant of good faith and fair dealing;
(4) age discrimination in violation of the California Fair
Employment and Housing Act (FEHA), California Government Code

---

[2]  California Civil Code § 1542 states: "A general release
does not extend to claims which the creditor does not know or
suspect to exist in his or her favor at the time of executing the
release, which if known by him or her must have materially affected
his or her settlement with the debtor."  Cal. Civ. Code § 1542.

§ 12940(a);[3] and (5) malice, oppression and fraud.

JUDICIAL NOTICE

PG&E requests, under Federal Rule of Evidence 201, that the Court take judicial notice of the following documents: (1) the CBA, entitled, Agreement Applying to Operation, Maintenance and Construction Employees between PG&E and IBEW (Def.'s Exh. A); (2) the April 14, 1997 Letter of Agreement between PG&E and IBEW (Def.'s Exh. B); (3) the Severance Agreement between Plaintiffs and PG&E, (Def.'s Exhs. C and D).

Plaintiffs request that the Court take judicial notice of the declaration of Timothy Hollingshead and the Purchase and Sales Agreement filed with the CPUC, attached as exhibit A to the declaration. (Hollingshead's Declaration, Exh. A, attached to Compl.)

Under Rule 201 of the Federal Rules of Evidence, a court may take judicial notice of facts that are either generally known within the territorial jurisdiction of the court or are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. A matter that is properly subject to judicial notice under Federal Rule of Evidence 201 may be considered along with the complaint when deciding a motion to dismiss for failure to state a claim. MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986). In ruling on a motion to dismiss, a court may consider documents to which a

---

[3] Plaintiffs allege that they have filed claims with the California Department of Fair Employment and Housing (DFEH) and have received right to sue letters from the Department. However, there is no evidence in the record of the right-to-sue letters.

complaint refers and whose authenticity no party questions, but which are not physically attached to the pleading.  <u>Branch v. Tunnell</u>, 14 F.3d 449, 454 (9th Cir. 1994); <u>Kaye v. Directors Guild of America, Inc.</u>, 1999 WL 1261468, *2 (C.D. Cal.)

The Court takes judicial notice of the CBA, the Letter Agreement, and the Severance Agreements submitted by PG&E.  These documents are capable of accurate and ready determination. Plaintiffs' request for judicial notice of Hollingshead's declaration is DENIED because its contents could be the subject of dispute.  The Court takes judicial notice of the exhibit attached to Hollingshead's declaration, the authenticity of which no party has questioned.

LEGAL STANDARD

All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. <u>NL Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986).

When granting a motion to dismiss, a court is generally required to grant a plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. <u>Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.</u>, 911 F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment would be futile, a court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." <u>Reddy v. Litton Indus., Inc.</u>, 912 F.2d 291, 296 (9th Cir. 1990). Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged

7

1  pleading.  Id. at 296-97.

2                          DISCUSSION

3  I.    Complete Preemption Under § 301

4        Plaintiffs do not argue that their job positions were not

5  covered by the CBA.  Nor do they dispute that the Letter Agreement

6  and its provisions govern the labor relationship between PG&E and

7  IBEW or that it was created to resolve pending issues that arose

8  under the CBA.  However, they argue that a separate oral agreement

9  between them and PG&E governed their right to a sixty-month

10 preferential re-employment benefit.  Characterizing their claims as

11 premised on breach of an oral agreement independent of the CBA,

12 Plaintiffs argue that § 301 of the LMRA does not preempt them.

13       PG&E contends that all of the causes of action alleged by

14 Plaintiffs are completely preempted by § 301 because their

15 resolution requires interpretation of the CBA.  PG&E argues that

16 the Letter Agreement, which was incorporated into the CBA, was made

17 applicable only to "Title 200 Steam Generation and Hydro Generation

18 employees," (Exh. B, at 2) not Plaintiffs.  PG&E maintains that the

19 right to preferential re-employment is covered by the CBA and that

20 any claim for breach of an alleged oral contract containing a right

21 to a job position that is the subject matter of the parties' labor

22 contract is preempted by § 301.

23       Section 301 of the LMRA provides exclusive federal

24 jurisdiction over "suits for violation of contracts between an

25 employer and a labor organization."  29 U.S.C. § 185(a); Young v.

26 Anthony's Fish Grottos, Inc., 830 F.2d 993, 997 (9th Cir. 1987).

27 That a plaintiff has not framed his or her complaint so that it

28

                                8

explicitly refers to a collective bargaining agreement will not
defeat federal preemption.  <u>International Bhd. of Elec. Workers v.</u>
<u>Hechler</u>, 481 U.S. 851, 859 n.3 (1987); <u>Cook v. Lindsay Olive</u>
<u>Growers</u>, 911 F.2d 233, 237 (9th Cir. 1990).  Rather, if a
plaintiff's claims are founded on rights created by a collective
bargaining agreement or are "substantially dependent on analysis of
a collective-bargaining agreement" and can only be resolved by
referring to the terms of a collective bargaining agreement, they
are preempted.  <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 394
(1987).

The Ninth Circuit has recognized that the preemptive force of
§ 301 completely displaces any state cause of action for violation
of a collective bargaining agreement.  <u>Stallcop v. Kaiser Found.</u>
<u>Hosp.</u>, 820 F.2d 1044, 1048 (9th Cir. 1987).  Thus, where an
inconsistency exists between the collective bargaining agreement
and an independent contract, the collective bargaining agreement
necessarily controls and "any independent agreement of employment
[can] be effective only as part of the collective bargaining
agreement."  <u>Olguin v. Inspiration Consolidated Copper Co.</u>, 740
F.2d 1468, 1474 (9th Cir. 1984); <u>see</u> <u>also</u> <u>Stallcop</u>, 820 F.2d at
1048-49 (quoting <u>Olguin</u> in holding oral agreement made in
connection with employee's reinstatement should be treated as a
collective bargaining agreement for preemption purposes because the
independent agreement could only be effective as part of larger
CBA); <u>Young</u>, 830 F.2d at 997-98 (alleged oral contract between
employee and employer regarding reinstatement was controlled by
collective bargaining agreement because employee held position

covered by collective bargaining agreement.)

The LMRA does not preempt the application of a state law remedy when the "factual inquiry [under the state law] does not turn on the meaning of any provision of a collective bargaining agreement." <u>Lingle v. Norge Div. of Magic Chef, Inc.</u>, 486 U.S. 399, 403-06 (1988). The Supreme Court has indicated that § 301 "cannot be read broadly to pre-empt non-negotiable rights conferred on individual employees as a matter of state law." <u>Livadas v. Bradshaw</u>, 512 U.S. 107, 123 (1994). Even if the right exists independently of the collective bargaining agreement, however, the court must still consider whether it is nevertheless "substantially dependent on analysis of a collective-bargaining agreement." <u>Caterpillar</u>, 482 U.S. at 394.

A.   First Claim: Breach of Contract

Plaintiffs argue that their breach of contract claim should not be dismissed as preempted because it involves an oral promise that is only tangentially related to the CBA.

Nonetheless, the case is governed by <u>Young</u>. There, Young's complaint alleged breach of an oral employment contract made in connection with her reinstatement. <u>Young</u>, 830 F.2d at 997. The complaint did not allege that her employment was governed by a collective bargaining agreement. <u>Id.</u> The court held that Young's claim for breach of contract based on an oral promise by her employer to discharge her only for cause was preempted by § 301 because the plaintiff's position was covered by a collective bargaining agreement. <u>Id.</u>

Similarly, Plaintiffs' positions were covered by the

provisions of the CBA throughout their employment.  In order to
address Plaintiffs' claims that they were entitled to a re-
employment preference described in the CBA, the Court would have to
interpret provisions of the CBA and the Letter Agreement.  Because
Plaintiffs' state law cause of action for breach of contract
requires the Court to interpret the CBA, it must be dismissed as
preempted under § 301 of the LMRA.  Plaintiffs' claims of a
separate oral agreement, at a time when they were covered by the
CBA, require an interpretation of the terms of the CBA.
Accordingly, PG&E's motion to dismiss Plaintiffs' first claim is
granted, with leave to amend as a claim under the LMRA.

     B.    Second Claim: Specific Performance

     Plaintiffs' second claim for specific performance states a
remedy, not a cause of action.  Harara v ConocoPhillips Co., 377 F.
Supp. 2d 779, 796 (N.D. Cal. 2005) ("Specific performance is a form
of contractual relief, not an independent claim.").  Therefore,
PG&E's motion to dismiss Plaintiffs' second claim is granted.  If
Plaintiffs can state a claim for breach of contract, they may be
able to seek specific performance as a remedy.

     C.    Third Claim: Breach of Implied Covenant of Fair Dealing

     Under California law, a claim for breach of an implied
covenant is necessarily based on the existence of an underlying
contractual relationship, and the essence of the covenant is that
neither party to the contract will do anything which would deprive
the other of the benefits of the contract.  Seaman's Direct Buying
Service, Inc. v. Standard Oil Co. of Cal., 36 Cal. 3d 752, 768
(1984).  State law claims for breach of the implied covenant of

11

good faith and fair dealing are preempted by § 301 if the right
asserted is rooted in the labor contract and can only be determined
by interpreting the rights and obligations established in the
contract.  <u>Harris v. Alumax Mill Products, Inc.</u>, 897 F.2d 400, 403
(9th Cir. 1990); <u>Allis-Chalmers</u>, 471 U.S. at 218-219.  Plaintiffs'
state law cause of action for breach of the covenant of good faith
and fair dealing is preempted by § 301 because it necessarily
involves interpretation of the collective bargaining agreement.
Accordingly, PG&E's motion to dismiss Plaintiffs' third claim is
granted, with leave to amend to state as a claim under the LMRA.

D.    Fourth Claim: Age Discrimination under FEHA

Plaintiffs contend that their age discrimination claims under
FEHA rest on independent, non-negotiable state law rights.
Plaintiffs allege, in pertinent part, that:

> PG&E has engaged in discrimination in employment.
> Discovery is still continuing as to the extent of such
> discrimination.  Plaintiffs are informed and believe and
> thereon allege that such discrimination was motivated by
> their age [both Plaintiffs are over forty years old].
> [PG&E] has refused to honor their promises, pursuant to
> the benefits package, only as far as these two plaintiffs
> are concerned.  PG&E's failure to honor their promises to
> Plaintiffs is not based on any good cause.

(Compl. ¶ 47 at 10-11.)  Plaintiffs contend that they were not
provided the sixty-month re-employment preference which they were
orally promised because of discrimination based on their age.
Plaintiffs assert that such conduct violated their rights under
FEHA.  PG&E argues that, because Plaintiffs' age discrimination
claims are based on its denial of the sixty-month re-employment
preference, they are inextricably intertwined with the terms of the
CBA.

In <u>Lingle</u>, where the defendant discharged the plaintiff for filing a false workers' compensation claim, the plaintiff filed a grievance through her union, and an arbitrator ruled in the plaintiff's favor.  466 U.S. at 401-02.  The plaintiff then filed an action in state court alleging that, in violation of state law, the defendant discharged her for filing a workers' compensation claim.  The defendant removed the case to federal court on the ground of preemption under the LMRA.  <u>Id.</u> at 402.  The Supreme Court concluded that the plaintiff's claim was not preempted because the right to be free from retaliatory discharge for filing a claim under the state workers' compensation laws existed independent of the collective bargaining agreement.  <u>Id.</u> at 407.  The Court explained that "to defend against a retaliatory discharge claim, an employer must show that it had a non-retaliatory reason for the discharge; this purely factual inquiry likewise does not turn on the meaning of any provision of a collective-bargaining agreement."  <u>Id.</u>

The Ninth Circuit has held that claims of discrimination under California's FEHA are not preempted by federal law.  <u>Ramirez v. Fox Television Station, Inc.</u>, 998 F.2d 743, 748 (9th Cir. 1993) ("In every case in which we have considered an action brought under the California Employment Act, we have held that it is not preempted . . ."); <u>see</u> <u>also Cook v. Lindsay Olive Growers</u>, 911 F.2d 233, 240 (9th Cir. 1990) (religious discrimination); <u>Jackson v. So. Cal. Gas Co.</u>, 881 F.2d 638, 644 (9th Cir. 1989); (racial discrimination); <u>Chmiel v. Beverly Wilshire Hotel Co.</u>, 873 F.2d 1283, 1286 (9th Cir. 1989) (age discrimination); <u>Ackerman v. Western Elec. Co.</u>, 860 F.2d

1514, 1517-18 (9th Cir. 1988) (disability discrimination); <u>Carter v. Smith Food King</u>, 765 F.2d 916, 921 & n.6 (9th Cir. 1985)(race and age discrimination).  These cases rest upon the view that "the rights conferred by the California Employment Act are 'defined and enforced under state law without reference to the terms of any collective bargaining agreement,'" <u>Ramirez</u>, 998 F.2d at 748 (quoting <u>Chmiel</u>, 873 F.2d at 1286), and that "[a]ctions asserting those rights are thus independent of collective-bargaining agreements," <u>id.</u> (quoting <u>Ackerman</u>, 860 F.2d at 1517).

However, there is a narrow exception to this rule: "state-law claims are preempted [] when the resolution of an allegation of discrimination itself hinges on the interpretation of a labor contract."  <u>Guidry v. Marine Eng'rs Ben. Ass'n</u>, 2007 U.S. Dist. LEXIS 21353 *4 (N.D. Cal.); <u>see</u> <u>Audette v. Longshoremen's and Warehousemen's Union</u>, 195 F.3d 1107, 1113 (9th Cir. 1999); <u>Madison v. Motion Picture Set Painters and Sign Writers Local 729</u>, 132 F. Supp. 2d 1244, 1252-54 (C.D. Cal. 2000) (concluding that a discrimination claim was preempted where plaintiff's prima facie case required reliance on the CBA and where it was almost certain that defendant's articulated non-discriminatory reason for its actions would also require reliance on the CBA).

In <u>Audette</u>, the Ninth Circuit held that a union member's gender discrimination and retaliation claims were preempted by federal law because the defendants could refute the plaintiff's prima facie case of discrimination and retaliation by offering a legitimate non-discriminatory reason for its employment decision based on a collective bargaining agreement.  <u>Audette</u>, 195 F.3d at 1113.  In

14

1  making this determination, the court distinguished between
2  "free-standing claim[s] of discrimination" and claims that
3  substantially depend on interpretation of the CBA.    Id.

4       Plaintiffs' FEHA claims are similar to the FEHA claims raised
5  in Audette.   As in Audette, the resolution of Plaintiffs'
6  discrimination claims turns on PG&E's offer of a "legitimate
7  nondiscriminatory reason" requiring interpretation of the CBA.
8  Plaintiffs concede that PG&E's failure to re-employ them was an
9  attempt "to save [PG&E] additional expense of employing these
10 plaintiffs since such re-employment would cause other employees'
11 positions to be reclassified and moved" in violation of the CBA.
12 (Compl. at ¶ 54.)   Thus, PG&E could refute Plaintiffs' age
13 discrimination claim by offering a legitimate non-discriminatory
14 reason for its employment decision based on the CBA.   Accordingly,
15 PG&E's motion to dismiss Plaintiffs' fourth claim is granted.
16 Plaintiffs are granted leave to amend to restate this claim under
17 § 301.

18      E.   Fifth Claim: Malice, Oppression and Fraud.

19      Citing Grieves v. Sup. Ct., 157 Cal. App. 3d 159, 163-4 (1984),
20 PG&E moves to dismiss Plaintiffs' fifth claim for malice, oppression
21 and fraud on the ground that it states a prayer for relief, not a
22 cause of action.   Plaintiffs characterize this claim as a claim for
23 fraud based upon representations PG&E made in connection with the
24 re-employment benefits and argue that it is not preempted because it
25 does not depend on any contractual provision of the CBA.    PG&E
26 replies that, to extent that Plaintiffs' claim states a fraud count,
27 the claim should be dismissed because Plaintiffs fail to meet the
28

1  pleading requirements of Rule 9(b) of the Federal Rules of Civil
2  Procedure.

3      "In order to establish intentional fraud under California law,
4  [plaintiffs] must prove (1) misrepresentation; (2) knowledge of
5  falsity; (3) intent to defraud, i.e., to induce reliance;
6  (4) justifiable reliance; and (5) resulting damage.'" <u>Conrad v.</u>
7  <u>Bank of America</u>, 45 Cal. App. 4th 133, 156 (1996) (quoting <u>Cicone v.</u>
8  <u>URS Corp.</u>, 183 Cal. App. 3d 194, 200 (1986)). Fraud requires the
9  plaintiff to show that he or she has "suffered consequential damages
10 . . . And the damages suffered must be referable to, and caused by,
11 the fraud." <u>Conrad</u>, 45 Cal. App. 4th at 159 (citations omitted).
12 "A promise to do something necessarily implies the intention to
13 perform, and where such intention is absent, there is an implied
14 misrepresentation of fact, which is actionable as fraud." <u>Id.</u>

15     Fraud claims are subject to Rule 9(b)'s requirement that "the
16 circumstances constituting fraud or mistake shall be stated with
17 particularity." This rule requires that claims of fraud include the
18 "who, what, when, where, and how" of the alleged misconduct. <u>Cooper</u>
19 <u>v. Pickett</u>, 137 F.3d 616, 627 (9th Cir. 1997). The averments must
20 be "specific enough to give defendants notice of the particular
21 misconduct . . . so that they can defend against the charge and not
22 just deny that they have done anything wrong." <u>Semegen v. Weidner</u>,
23 780 F.2d 727, 731 (9th Cir. 1985).

24     Plaintiffs' complaint alleges that an oral misrepresentation
25 was made by PG&E, through its employee, Defendant Radford.
26 Plaintiffs allege that PG&E and that PG&E never intended to honor
27 its oral agreement. Plaintiffs further allege that PG&E

28

intentionally and knowingly made the misrepresentation so Plaintiffs would continue working during the two-year O&M period.  As a result of their reliance on PG&E's misrepresentation, Plaintiffs allege that they suffered damages because they did not request re-employment until the sixty months had almost elapsed when they were told they did not have a sixty-month preferential re-employment benefit.

PG&E's motion to dismiss Plaintiffs' fifth claim is granted. Plaintiffs are given leave to amend to plead a fraud claim with the particularity required by Rule 9(b).

IV.  Severance Agreement Waiver

PG&E also claims that Plaintiffs waived their right to sue when they signed the Severance Agreement because they released all claims against PG&E including those based on oral contract or age discrimination under FEHA.  PG&E points to an integration clause in the Severance Agreement which provides: "This Severance Agreement and Release sets forth the entire agreement between the parties and fully supersedes any and all prior agreements or understanding between the parties pertaining to the subject matter of this Severance Agreement and Release."  (Exhs. C and D, ¶ 14.)  PG&E argues that the parol evidence rule bars any evidence that would vary or alter the integrated written agreement.

Plaintiffs do not deny signing the Severance Agreements.  They argue, however, that the Severance Agreements were adhesion contracts that were procedurally and substantially unconscionable. Plaintiffs also argue that the Severance Agreements do not cover the right to the preferential re-employment benefit.

1      Under California law, a contract provision is unenforceable due
2  to unconscionability only if it is both procedurally and
3  substantively unconscionable.  <u>Nagrampa v. MailCoups, Inc.</u>, 469 F.3d
4  1257, 1267 (9th Cir. 2006).  A contract is procedurally
5  unconscionable if it is a contract of adhesion.  <u>Circuit City</u>
6  <u>Stores, Inc. v. Adams</u>, 279 F.3d 889, 895 (9th Cir. 2002); <u>Flores v.</u>
7  <u>Transamerica Homefirst, Inc.</u>, 93 Cal. App. 4th 846, 853 (2002).  A
8  contract of adhesion is a "standardized contract, which, imposed and
9  drafted by the party of superior bargaining strength, relegates to
10 the subscribing party only the opportunity to adhere to the contract
11 or reject it."  <u>Armendariz v. Found. Health Psychcare Servs.</u>, 24
12 Cal. 4th 83, 113 (2000).

13     Under the procedural prong, the court focuses on two factors:
14 oppression and surprise.  <u>Id.</u>  "Oppression arises from an inequality
15 of bargaining power which results in no real negotiation and 'an
16 absence of meaningful choice.'"  <u>Id.</u>  Surprise involves the extent
17 to which the contract's terms are hidden in a prolix form contract,
18 generally written by the party who seeks to enforce the disputed
19 terms and who enjoys the superior bargaining position.  <u>Id.</u>
20 Substantive unconscionability focuses on the harshness and one-sided
21 nature of the substantive terms of the contract.  <u>A & M Produce Co.</u>
22 <u>v. FMC Corp.</u>, 135 Cal. App. 3d 473, 486-87 (1982).

23     Although both procedural and substantive unconscionability must
24 be present before a court will refuse to enforce a contract, "they
25 need not be present to the same degree."  <u>Armendariz</u>, 24 Cal. 4th at
26 114  "[T]he more substantively oppressive the contract terms, the
27 less evidence of procedural unconscionability is required to come to
28

1  the conclusion that the term is unenforceable, and vice versa." Id.

2      The Severance Agreements were drafted by PG&E, the party with

3  superior bargaining power.  However, immediately above the signature

4  lines, the Severance Agreements provide: "PLEASE READ CAREFULLY.

5  THIS SEVERANCE AGREEMENT AND RELEASE INCLUDES A RELEASE OF ALL KNOWN

6  AND UNKNOWN CLAIMS."  (Exh. A at 5.)  Plaintiffs do not allege that

7  they lacked a meaningful chance to negotiate the contracts' terms,

8  nor that they were told the terms were presented to them on a "take

9  it or leave it" basis.  Furthermore, the above-quoted release

10 provisions appear directly above Plaintiffs' signatures, in capital

11 letters; they were not hidden among voluminous legal terms.  Thus,

12 Plaintiffs do not state a claim that the Agreements were

13 procedurally unconscionable and there is no need to address

14 substantive unconscionability.

15     Plaintiffs contend that the Severance Agreements do not cover

16 their preferential re-employment rights.  PG&E responds that

17 Plaintiffs fail to cite language in the Severance Agreement that is

18 "reasonably susceptible to the meaning asserted by them."

19     California law provides that a broad release of "each and every

20 claim" covers all claims within the scope of the language, absent

21 extrinsic evidence to the contrary.  Jefferson v. Cal. Dep't. of

22 Youth Auth., 28 Cal. 4th 299, 304-05 (2002).  California law also

23 provides that "courts may not dismiss on the pleadings when one

24 party claims that extrinsic evidence renders the contract

25 ambiguous."  A. Kemp Fisheries, Inc. v. Castle & Cooke, Inc., 852

26 F.2d 493, 497 n.2 (9th Cir. 1988) (interpreting Trident Center v.

27 Connecticut Gen. Life Ins., 847 F.2d 564, 569 (9th Cir. 1988).  The

28

                                   19

1  Trident court explained:

2      It matters not how clearly a contract is written, nor how
       completely it is integrated, nor how carefully it is
3      negotiated, nor how squarely it addresses the issue before
       the court: the contract cannot be rendered impervious to
4      attack by parol evidence.  If one side is willing to claim
       that the parties intended one thing but the agreement
5      provides for another, the court must consider extrinsic
       evidence of possible ambiguity.

6
   Id. at 569.
7
       The "inclusion of an integration clause in the written contract
8
   is but one factor in this analysis."  Sicor Ltd. v. Cetus Corp., 51
9
   F.3d 848, 859 (9th Cir. 1995) (addressing California law).
10
   Paragraph two of the Severance Agreement provides:
11
       "[T]he parties understand and agree that the payment
12     provided in this paragraph is in addition to and does not
       affect any payment and benefit to which [Plaintiffs] may
13     be otherwise entitled under PG&E's compensation,
       performance incentive, stock option and other benefits
14     programs."

15 (Severance Agreement ¶ 2 at 1.)  This paragraph could be construed

16 to mean that the waiver in the Severance Agreement does not apply to

17 the preferential re-employment benefit.  Therefore, PG&E's argument

18 that the claims must be dismissed on the basis of the waiver is

19 denied.

20 V.    Restating Preempted Claims Under § 301

21     When § 301 preempts a state law claim, that claim may be

22 effectively re-characterized as one brought under § 301 for breach

23 of the collective bargaining agreement.  Young, 830 F.2d at 997.

24 However, an "employee seeking a remedy for an alleged breach of the

25 collective bargaining agreement must attempt to exhaust any

26 exclusive grievance and arbitration procedures established by that

27 agreement before he may maintain a suit against . . . under 301(a)

28
                                    20

1  of the Labor Management Relations Act." <u>Clayton v. Int'l Union,</u>

2  <u>United Auto., Aerospace, and Agr. Implement Workers of Am.</u>, 451 U.S.

3  679, 681 (1981).  Moreover, in order for an employee to recover

4  under § 301, he must also show that his union breached its duty of

5  representation.  <u>Chauffeurs, Teamsters and Helpers, Local No. 391 v.</u>

6  <u>Terry</u>, 494 U.S. 558, 564 (1990).

7      The portions of the CBA and Letter Agreement submitted to the

8  Court do not include the grievance procedures to be pursued in the

9  case of an employee grievance.

10     The Supreme Court has held that actions under the LMRA are

11  governed by the six-month statute of limitations set out in § 10(b)

12  of the National Labor Relations Act.  <u>DelCostello v. Teamsters</u>, 462

13  U.S. 151, 163-164 (1983).  Claims outside of that six-month period

14  are subject to dismissal.  <u>Id.</u> at 155.  However, a statute of

15  limitations may be tolled under either the doctrine of equitable

16  tolling or the doctrine of equitable estoppel.  <u>Huseman v. Icicle</u>

17  <u>Seafoods, Inc.</u>, 471 F.3d 1116, 1120 (9th Cir. 2006).  Therefore, if

18  Plaintiffs file an amended complaint, they must allege the LMRA

19  claims are exhausted and timely, and if not, they must allege how

20  equitable tolling or equitable estoppel apply.  They must also

21  allege, if they can truthfully do so, that their union violated its

22  duty of fair representation.

23                          CONCLUSION

24     For the foregoing reasons, PG&E's motion to dismiss the

25  complaint under Rule 12(b)(6) (docket no. 13) is GRANTED and

26  Plaintiffs are granted leave to amend in accordance with this order.

27  If Plaintiffs file an amended complaint, they must do so within

28

                                21

1  twenty days of the date this Order.  If Plaintiffs do not file an

2  amended complaint within this time period, this complaint will be

3  dismissed for failure to prosecute.

4      IT IS SO ORDERED.

5  Dated: 11/29/07

                                          _____

6                                            CLAUDIA WILKEN
                                          United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28