Exhibit A

Daniel B. Beck, Esq., State Bar #63865
Mahsa Gholami, Esq., State Bar #235634
BECK LAW, P.C.
2681 Cleveland Avenue
Santa Rosa, CA 95403
Telephone:   (707) 576-7175
Facsimile:   (707) 576-1878

Attorney for Plaintiffs,
Thomas Knowles and Thomas Hicks

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS KNOWLES and THOMAS HICKS,<br><br>Plaintiffs,<br><br>v.<br><br>PACIFIC GAS & ELECTRIC COMPANY, DEANNA RADFORD, LOCAL UNION NUMBER 1245 OF INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, and DOES 2-20,<br><br>Defendants. | Case No.:  C-07-2284-CW<br><br>**VERIFIED AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, DISCRIMINATION IN EMPLOYMENT PURSUANT TO CAL. GOVT. CODE § 12940(a), and FRAUD.** |

Pursuant to the Court's Order Granting Defendant PG & E's Motion to Dismiss with Leave to Amend, dated November 29, 2007, Plaintiffs THOMAS KNOWLES and THOMAS HICKS amend their Complaint and allege as follows:

1.  Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 2-20, inclusive, and therefore, sue these Defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is negligently responsible in some manner for the occurrence herein alleged, and that Plaintiffs' injuries as herein alleged were proximately caused by the negligence of these Defendants.

*Knowles & Hicks v. PG & E, et al*                    1
Northern District Court of California, C-07-2284-CW
Amended Complaint

**Exhibit A**

1

2.   Plaintiffs Thomas Knowles and Thomas Hicks (hereinafter collectively called

3        "Plaintiffs") were employees of Defendant PACIFIC GAS & ELECTRIC COMPANY

4        (hereinafter called "Defendant PG & E") and DOES 2-10, and each of them during the

5        times relevant to this complaint. At all times herein mentioned, DOES 11-20, and each

6        of them, were the owners, managers, supervisors, or other management employees of

7        Defendant PG & E and were the supervisors of Plaintiffs.

8

9    3.   Defendant DEANNA RADFORD (hereinafter called "Defendant Radford") was an

10       employee of Defendant PG & E during the time relevant to this Complaint. Plaintiffs are

11       informed and believe and thereon allege that Defendant Radford worked in the Human

12       Resources division of Defendant PG & E's Santa Rosa office.

13   4.   Defendant LOCAL UNION NUMBER 1245 OF INTERNATIONAL BROTHERHOOD

14       OF ELECTRICAL WORKERS (hereinafter called "Defendant IBEW") entered into a

15       collective bargaining agreement with Defendant PG & E, applying to Operation,

16       Maintenance and Construction Employees. Defendant IBEW was the Plaintiffs' union.

17

18   5.   Until 1999, the Geysers were power plants operated by Defendant PG & E. Then, in

19       1999, a divestiture occurred, where the California Public Utility Commission placed an

20       obligation on Defendant PG & E to have a two (2) year Operation and Maintenance

21       period (hereinafter called "O & M period"). During this time, Defendant PG & E's

22       expertise were made available to whoever purchased the power plant.

23   6.   Defendant PG & E created a benefits package for all power generation employees

24       affected by the divestiture. The benefits package included a sixty (60) month right to re-

25       employment by Defendant PG & E. Plaintiffs were entitled to the benefits package

26       because they were affected by the divestiture as well and were by all definitions, power

27       generation employees.

28

*Knowles & Hicks v. PG & E, et al*                                    2
Northern District Court of California, C-07-2284-CW
Amended Complaint

7. Defendant PG & E, through their employee, Defendant Radford specifically told Plaintiffs that they had a 60 month right to re-employment, including preferential rights to employment. At all times, Plaintiffs were informed and believe, and thereon allege that they had a 60 month right to re-employment. Defendant Radford, expressly notified Plaintiffs that they were entitled to the 60 month right to re-employment.

8. Plaintiffs were promised a 60 month right to re-employment, and relied on this benefit. Following such oral agreement, Plaintiffs entered into Severance Agreements with Defendant PG & E. Plaintiffs were personally informed by Defendants PG & E and Radford that they were entitled to this benefit. Plaintiffs were also reminded of such 60 month time period by their supervisors, including TIMOTHY HOLLINGSHEAD. Before the ending of the 60 month time period, Plaintiffs elected to claim their employment with Defendant PG & E. Mr. Hollingshead was also aware of the benefits package, and would attest to the fact that Plaintiffs were persons entitled to such benefits.

9. Prior to the conclusion of the 60 month period, Plaintiffs communicated with Defendant Radford in order to claim their right to re-employment. Initially, Defendant Radford agreed that Plaintiffs had a 60 month right to re-employment. However, shortly thereafter, Defendant Radford and Defendant PG & E denied ever making such promise to Plaintiffs. Despite their promises and agreement with Plaintiffs, Defendant PG & E refused to honor the 60 month right to re-employment, informing Plaintiffs that they would not be re-employed. Defendant PG & E attempted to deny any communication or promise to Plaintiffs, insisting that no such right existed.

10. Plaintiffs immediately went to Defendant IBEW, requesting relief in response to Defendant PG & E's refusal to honor their right to re-employment. Defendant IBEW haphazardly denied Plaintiffs' request without any investigation, contending that this was an issue that Plaintiffs needed to handle with Defendant PG & E directly. Subsequently, Plaintiffs filed suit in state court, and the action was removed by Defendant PG & E to the federal court.

11. Plaintiffs were recently ordered to exhaust all administrative relief with Defendant IBEW before amending their complaint. Despite the fact that Plaintiffs initially did so and were denied by Defendant IBEW, Plaintiffs sent a second request for relief from their union. A true and accurate copy of this document is marked as **EXHIBIT ONE**, and incorporated by reference herein. No response was received to this second attempt to resolve the dispute informally. Plaintiffs have exhausted all administrative remedies available under the collective bargaining agreement, and are back in federal court to obtain relief.

12. Plaintiffs were entitled to all aspects of the benefits package. They were by all definitions persons entitled to such package, and they were affected by the divestiture. Plaintiffs were also expressly promised that they were entitled to a 60 month right to re-employment. Plaintiffs relied on such promises. All defendants, and each of them, are now denying that Plaintiffs have any such rights.

13. During all times relevant to this Complaint, Plaintiffs were employed by PG & E, being classified as Base Personnel employees for purposes of the O & M period. During all times relevant to this Complaint, Plaintiffs were entitled to the 60 month right to re-employment. (*see* **EXHIBIT TWO**, attached herein and incorporated by reference.)

14. This is an action to enjoin breach of a collective bargaining agreement pursuant to a collectively-bargained grievance machinery. This action arises under Section 301 of the Labor Management Relations Act of 1947, as amended (29 U.S.C. § 185). Jurisdiction is conferred upon this Court by the provisions of that section.

### FIRST CAUSE OF ACTION

### BREACH OF CONTRACT
**(Against Defendants PG & E and Radford)**

15. Plaintiffs incorporate by reference Paragraphs 1 through 14 of this Complaint as though fully set forth herein.

*Knowles & Hicks v. PG & E, et al.*                4
Northern District Court of California, C-07-2284-CW
Amended Complaint

16. In 1999, when the divestiture occurred, Plaintiffs and Defendant PG & E, represented by Defendant Radford, entered into an agreement, by which Plaintiffs agreed that in exchange for working during the two year O & M period as Base Personnel, Defendant PG & E would give them a 60-month right to re-employment. This agreement was made by Defendant Radford, on behalf of Defendant PG & E.

17. Plaintiffs worked during the O & M period, and were classified as Base Personnel employees. This classification also conferred upon Plaintiffs the entire benefits of the package given to all power generation employees under the CBA, which included rights to re-employment, and other monetary and employment benefits. *See* Exhibit Two, attached. Plaintiffs were, by all definitions, power generation employees and as such, entitled to the entirety of the benefits package given to such classified employees pursuant to a collective bargaining agreement between Defendant PG & E and Defendant IBEW. Furthermore, Plaintiffs were specifically promised that they would have the 60 month right to re-employment with Defendant PG & E. The agreement was followed by subsequent oral confirmations that both Plaintiffs would be entitled to the 60-month right to re-employment. This agreement caused Plaintiffs into entering into Severance Agreements with PG & E.

18. During the divestiture, Plaintiffs were promised a 60-month right to re-employment. This promise was conferred by oral agreement. Pursuant to such promise, Plaintiffs did not elect their rights until shortly before the 60-month period lapsed. Defendant PG & E and their employees, managers, and staff, including Defendant Radford, failed to honor their promises to Plaintiffs, and by failing to honor Plaintiffs' right to re-employment, Defendants PG & E and Radford breached their agreement. Defendants PG & E and Radford breached their oral agreement, as well as their subsequent confirmations to honor the 60 month right to re-employment. Defendants PG & E and Radford denied Plaintiffs their rights to the 60 month right to re-employment because they believed that Plaintiffs would eventually give up.

19. The divestiture also conferred upon Plaintiffs the entirety of the benefits package, since they were within the class of persons for which such benefits package was created. Mr. Hollingshead was also aware of such right, as evidenced by the Exhibit Two Declaration. Defendant PG & E and their employees, managers, and staff, including Defendant Radford, failed to honor the benefits package that Plaintiffs were entitled to receive, and by failing to honor such benefits, Defendants PG & E and Radford breached the oral agreement that included benefits from the collective bargaining agreement. Defendants PG & E and Radford breached their agreement, despite the fact that it was clear that Plaintiffs were qualified for the entirety of the benefits package. Defendants PG & E and Radford denied Plaintiffs their rights to the benefits package because they believed that Plaintiffs would eventually give up.

20. Within the 60-month time period, Plaintiffs asserted their rights under the benefits package and oral promises of their employer, and asked Defendants PG & E and Radford for re-employment. Plaintiffs requested that Defendants perform under the agreement. However, Defendants PG & E and Radford breached the agreement by refusing to honor the rights to re-employment to which Plaintiffs were entitled, and informed Plaintiffs that they would not be re-employed.

21. Plaintiffs have performed all the terms and conditions required of Plaintiffs by the terms of the agreement.

22. Within the allotted time, pursuant to the 60-month right to re-employment, Plaintiffs demanded that Defendants PG & E and Radford perform their promises under the parties' agreement, but Defendants PG & E and Radford refused and continue to refuse to perform under the agreement.

23. Defendants have also denied Plaintiffs their rights to the benefits package, and refuse to perform, despite the fact that Plaintiffs were entitled to such package. Plaintiffs were classified as Base Personnel and as such, entitled to the benefits package put together by Defendant PG & E. The benefits package included a 60-month right to re-employment

with Defendant PG & E. Even if defendants argued that Plaintiffs were not entitled to the entire benefits package, Plaintiffs were expressly promised a 60 month right to re-employment. Plaintiffs detrimentally relied on such benefit, and as a result, waited until shortly before the 60-month time period to pursue their re-employment rights. Defendant PG & E breached its agreement with Plaintiffs. Defendant PG & E is refusing to honor Plaintiffs' rights to re-employment and rights under the benefits package.

24. As a direct, foreseeable and proximate result of Defendant PG & E's deliberate breach of the agreement, Plaintiffs have lost income, career opportunities, and other damages in an amount to be proven.

25. Separate from the benefits package, Defendant PG & E and its employees orally promised Plaintiffs that they would be entitled to a 60-month right to re-employment These oral assurances by Defendant PG & E and their employees were relied upon by Plaintiffs, all to their detriment.

26. Pursuant to their oral agreements, Defendant PG & E gave further assurances of Plaintiffs' 60-month right to re-employment. Plaintiffs detrimentally relied on such oral promises by Defendant PG & E and its employees. Defendant PG & E and its employees breached this oral agreement by refusing to re-employ Plaintiffs within the 60-month time period. As a direct and proximate result, Plaintiffs have incurred serious damages in an amount to be ascertained.

27. Further, Plaintiffs request that Defendant PG & E be ordered to confer upon Plaintiffs their right to preferential employment.

28. Defendant Radford represented to Plaintiffs that Plaintiffs had a 60 month right to re-employment with Defendant PG & E. When Plaintiffs attempted to claim such right, she confirmed her previous promise. However, Defendant Radford subsequently changed her story, and denied ever giving such right. By failing to honor her promise under the parties' oral agreement, Defendant Radford breached her agreement with Plaintiffs.

1    . Defendant Radford's breach of contract was within the scope of her employment with

2    Defendant PG & E. Through agency and/or respondeat superior theories of liability, her

3    breach and the resulting damages are further attributable to Defendant PG & E.

4

5                          SECOND CAUSE OF ACTION

6

7    BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
         (Against Defendants PG & E and Radford)

8

9    29. Plaintiffs incorporate by reference Paragraphs 1 through 28 of this Complaint as though

10       fully set forth herein

11

12   30. The parties' agreement and oral promise by Defendants PG & E and Deanna Radford,

13       discussed above, contained an implied covenant of good faith and fair dealing, which

         obligated all Defendants, and each of them, to perform the terms and conditions fairly

14       and in good faith, and refrain from doing any act that would prevent or impede Plaintiffs

15       from performing any and all of the conditions of the agreement that they agreed to

16       perform, or any act that would deprive Plaintiffs of the benefits of the contract.

17

18   31. Furthermore, because Plaintiffs were equally affected by the divestiture and were, by all

19       definitions, classified power generation employees, they were entitled to the entirety of

20       the benefits package that power generation employees received.

21

22   32. Plaintiffs performed all of the duties and conditions of their agreement.

23

24   33. Defendants PG & E and Radford knew that Plaintiffs had fulfilled all of their duties and

         conditions under the contract

25

26   34. Defendants PG & E and Radford breached the implied covenant of good faith and fair

27       dealing under the agreement by terminating Plaintiffs' employment intentionally, in bad

28       faith, and for reasons extraneous to the contract. All Defendants, and each of them,

         reaped the benefits of their contract, by having Plaintiffs work during the O & M period

However, when Plaintiffs attempted to lawfully obtain their right to re-employment, Defendants refused to honor the parties' agreement.

35. Plaintiffs had a 60 month right to re-employment pursuant to their employment with Defendant PG & E. Plaintiffs were orally promised that they would be entitled to such benefit by Defendant Radford, on behalf of Defendant PG & E. Plaintiffs relied on Defendants PG & E and Radford's promises and assurances to honor their agreement. Moreover, Plaintiffs were entitled to the benefits package given to power generation employees because their work was classified as such.

36. Defendants PG & E and Radford breached the implied covenant of good faith and fair dealing by acting in bad faith with the intent to frustrate Plaintiffs' enjoyment of their contractual rights. These Defendants are denying Plaintiffs their right to re-employment, despite their earlier promises. There is an implied covenant of good faith and fair dealing in every contract the neither party will do anything that will injure the right of the other to receive the benefits of the parties' agreement.

37. Defendants' bad faith conduct caused these Plaintiffs to lose the benefits of their contract, namely, to lose their employment with Defendant PG & E. Plaintiffs also lost all other monetary and employment benefits given pursuant to the benefits package.

38. As a proximate result of Defendants PG & E and Radford's breach of the implied covenant of good faith and fair dealing, Plaintiffs have suffered, and continue to suffer, losses in earnings and other employment benefits, and consequential economic damages in an amount to be proven.

## THIRD CAUSE OF ACTION

### DISCRIMINATION IN EMPLOYMENT – CALIFORNIA GOVERNMENT CODE § 12940(a)
**(Against Defendants PG & E and Radford)**

39. Plaintiffs incorporate by reference Paragraphs 1 through 38 of this Complaint as though fully set forth herein.

40. At all times relevant to this Complaint, Plaintiffs have been employed by Defendant PG & E. When Defendant PG & E created their benefits package, Plaintiffs should have been included as recipients of such package. Even arguing that they were not recipients of the entirety of the benefits package, Plaintiffs were definitely promised a 60 month right to re-employment with Defendant PG & E. Plaintiffs relied on this benefit and promise.

41. When Plaintiffs attempted to pursue their right to re-employment, they were told by Defendant PG & E that no such rights existed as far as these Plaintiffs were concerned. Furthermore, they were informed that they would not be entitled to re-employment with Defendant PG & E. Plaintiffs, who had relied on the benefits package and promises of their employer, were left without employment. Had Plaintiffs not been made promises by Defendant PG & E, promises on which they relied, Plaintiffs would have pursued their right to re-employment at an earlier time.

42. Plaintiffs were entitled to Defendant PG & E's benefits package, and in particular, the 60 month right to re-employment benefit. This is based on their job title, job description, and responsibilities following divestiture. Furthermore, Defendant PG & E specifically promised Plaintiffs that such right to re-employment for 60 months existed as far as Plaintiffs were concerned.

43. Defendant PG & E has engaged in discrimination in employment. Discovery is still continuing as to the extent of such discrimination. Plaintiffs are informed and believe and thereon allege that such discrimination was motivated by their age. Defendant PG & E has refused to honor their promises, pursuant to the benefits package contained in the CBA, only as far as these two Plaintiffs are concerned. Defendant PG & E's failure to honor their promises to Plaintiffs is not based on any good cause.

44. Both Plaintiffs are over forty years old, and Plaintiffs are informed and believe and thereon allege that their age was a motivating factor in Defendant PG & E's refusal to re-

employ Plaintiffs. . The Fair Employment & Housing Act protects employees over the age
of 40. (*see* Cal. Govt. §§ 12926(b), 12941(a)) Defendant PG & E, despite their promises
to Plaintiffs, has denied these Plaintiffs their right to re-employment. In doing the things
herein mentioned, Defendant PG & E discriminated against Plaintiffs in the conditions of
their re-employment. Defendant PG & E dismissed the duties and obligations they owed
these Plaintiffs, in violation of California Government Code § 12940.

45. As a direct and proximate result of the conduct of the defendants, and each of them,
Plaintiffs have suffered and will suffer economic loss and the violation of their statutory
or other constitutional rights and other damages as herein set forth.

46. Based on the foregoing, Plaintiffs filed claims with the Department of Fair Employment
and Housing and have received right to sue letters from it.

### FOURTH CAUSE OF ACTION

### BREACH OF DUTY OF REPRESENTATION
### (Against Defendant IBEW)

47. Plaintiffs incorporate by reference paragraphs 1 through 46 of this Complaint as though
fully set forth herein.

48. After Plaintiffs requested their right to preferential re-employment and were denied such
right by Defendants PG & E and Radford, Plaintiffs immediately went to their union
representative, Defendant IBEW. Plaintiffs explained that they had an oral agreement
providing them a 60 month right to re-employment with Defendant PG & E, that they
were denied this right, and that they needed relief.

49. Defendant IBEW denied Plaintiffs any remedy or relief, and instead, notified them that
they needed to deal with Defendant PG & E on their own. Subsequent to such
instruction, Plaintiffs filed suit against Defendants PG & E and Radford.

50. Defendant IBEW had a duty to serve the interests of Plaintiffs as members of the union, without hostility or discrimination toward them, to exercise their discretion with complete good faith and honesty, and to avoid arbitrary conduct.

51. By failing to investigate Plaintiffs' complaint, failing to provide administrative remedies, failing to communicate with Defendant PG & E regarding Plaintiffs' grievances, and failing to enforce the collective bargaining agreement, Defendant IBEW's conduct was arbitrary, discriminatory and in bad faith.

52. Following such breach of representation, Plaintiffs sent a second request to Defendant IBEW, requesting relief. A copy of this request was previously marked as Exhibit 1. Plaintiffs did not get a response to this second request. Despite the fact that Plaintiffs were entitled to a 60 month right to re-employment, Defendant IBEW has arbitrarily decided to ignore Plaintiffs' complaints and force Plaintiffs to pursue their relief against Defendant PG & E directly.

53. By quickly dismissing Plaintiffs' grievances before determining whether they were meritorious and by failing to enforce the CBA, Defendant IBEW's conduct was arbitrary, discriminatory and in bad faith. (29 U.S.C.A. § 159) Defendant IBEW breached their duty of representation towards Plaintiffs, and as such, it is liable to Plaintiffs in an amount to be proven. Further, Defendant IBEW breached their duty to investigate by quickly dismissing Plaintiffs and failing to take any action in response to Plaintiffs' grievance. Plaintiffs advised Defendant IBEW that they had been defrauded by PG & E, but Defendant IBEW did not even consider such grievance.

54. Plaintiffs have exhausted their grievance procedure under the CBA. A true and accurate copy of the portion of the CBA that covers the grievance procedure is marked as **EXHIBIT THREE**, and incorporated by reference herein.

## FIFTH CAUSE OF ACTION

### FRAUD
(Against Defendants PG & E and Radford)

55. Plaintiffs incorporate by reference paragraphs 1 through 54 of this Complaint as though fully set forth herein.

56. Defendants PG & E and Radford entered into an agreement with Plaintiffs, orally promising to provide Plaintiffs with a 60 month right to re-employment. Defendants PG & E and Radford made this oral agreement in order to induce Plaintiffs into entering Severance Agreements.

57. Defendants PG & E and Radford had no intention of providing Plaintiffs with a 60 month right to re-employment, and made a material misrepresentation in order to force Plaintiffs to comply with what they wanted.  Initially, Defendant PG & E did not want to give Plaintiffs a 60 month right to re-employment. However, Plaintiffs pushed for this benefit and eventually, Defendants PG & E and Radford agreed to Plaintiffs' terms in order to make the problem go away and cause Plaintiffs to do what Defendant PG & E wanted during the O & M period.

58. Defendants PG & E and Radford represented to Plaintiffs that they would be entitled to a 60 month right to re-employment.  This was a misrepresentation because Defendants PG & E and Radford never intended to honor their agreement and knew from the moment they entered into the agreement that they had no intention of honoring it.  Defendants PG & E and Radford had knowledge of the falsity of such representation and made such misrepresentation with the intent to defraud Plaintiffs and cause them into entering into Severance Agreements and working during the O & M period

59. This misrepresentation was material since it caused Plaintiffs into entering Severance Agreements with Defendant PG & E and not requesting their re-employment rights until shortly before the 60 month period had elapsed.  In 2001, Plaintiffs entered into

1    Severance Agreements. Due to Defendants' misrepresentation, Plaintiffs were denied
2    their right to preferential re-employment with Defendant PG & E when they elected such
3    right shortly before the 60 month period had elapsed. A reasonable person would attach
4    importance to this material fact in determining his choice of action in such a transaction.
5    Further, Plaintiffs waited until shortly before the 60 month period had elapsed, and had
6    they not been defrauded, they would have elected for their right earlier; or in the
7    alternative, they would have never entered into the Severance Agreements. On or about
8    April 6, 2005, Plaintiffs requested that Defendant PG & E perform under the agreement,
     only to be told that they would not be entitled to re-employment rights.
9

10    60. Defendants PG & E and Radford made this representation with knowledge of its falsity.
11        They had no intention on performing the terms and conditions of their oral agreement.
12        The representation was made with the intent to induce Plaintiffs to act upon it, enter into
13        Severance Agreements, and work during the O & M period.
14

15    61  Plaintiffs entered into the Severance Agreements and worked during the O & M period in
16        "justifiable reliance" upon Defendants' PG & E and Radford's representation.
17

18    62. As a result of reliance upon the false representation, Plaintiffs have suffered damages in
19        an amount to be proven.

20    63. Defendants PG & E and Radford knew that Plaintiffs would not have sought, obtained,
21        and continued their employment had they known that Defendants were not intending to
22        fulfill their promise of re-employing Plaintiffs. Both Plaintiffs were employees of
23        Defendant PG & E for over twenty years, and had seniority rights. Defendants PG & E
24        and Radford did not want to honor such seniority rights, and hoping that Plaintiffs would
25        give up, denied Plaintiffs their given rights to re-employment.
26

27    64. In doing the acts herein alleged, Defendants PG & E and Radford acted with fraud,
28        causing Plaintiffs to lose their preferential rights to re-employment, accounting for a
         substantial amount of loss of earnings and benefits, in an amount to be proven. Further,

*Knowles & Hicks v. PG & E. et al.*                                    14
Northern District Court of California, C-07-2284-CW
Amended Complaint

1    Plaintiffs are entitled to punitive damages for such intentional and improper conduct in an

2    amount to be ascertained

3

4    <u>PLAINTIFFS HAVE EXHAUSTED THEIR</u>
    <u>ADMINISTRATIVE REMEDIES UNDER THE LMRA</u>

5

6    65. Plaintiffs incorporate by reference paragraphs 1 through 64 of this Complaint as though

7    fully set forth herein.

8

9    66. As discussed above, Plaintiffs have exhausted their administrative remedies for relief

10    from violation of their collective bargaining agreement. They have requested that their

11    union, Defendant IBEW, represent them in obtaining their 60 month right to re-

12    employment. This request was rejected twice, once shortly after Defendant PG & E

13    refused to honor their agreement and a second time recently. Defendant IBEW never

14    even bothered to investigate the oral agreement or the fraud by PG & E, and haphazardly

15    dismissed Plaintiffs' grievances.

16    67. Plaintiffs also attempted to resolve this matter informally with Defendant PG & E. A true

17    and accurate copy of such correspondence is marked as **EXHIBIT FOUR** and

18    incorporated by reference herein. Defendant PG & E failed to honor the parties'

19    agreement and refused to give Plaintiffs' preferential employment rights. After this,

20    Plaintiffs filed claims with the Department of Fair Employment and Housing, requesting

21    Right-To-Sue letters. DFEH provided them with such letters, and in such documentation,

22    advised Plaintiffs that they had one year from the date of the letter to file an action.

23    Plaintiffs did so, and filed an action against Defendant PG & E within the one year

24    limitation.

25    68. Although Plaintiffs exhausted their administrative remedies under the CBA, the issue of

26    timeliness is puzzling. Plaintiffs went to Defendant IBEW shortly after they were denied

27    their right to re-employment by PG & E. Defendant IBEW specifically told Plaintiffs

28    that they would need to deal with PG & E on their own. On or about January 24, 2006,

    Plaintiffs' counsel contacted PG & E with a demand to re-employ Plaintiffs (this

*Knowles & Hicks v. PG & E, et al*                    15
Northern District Court of California, C-07-2284-CW
Amended Complaint

document was previously marked as Exhibit 4). This request was denied. Plaintiffs did not file their civil action until they received Right-To-Sue letters from DFEH. Once they received said letters, Plaintiffs filed their action in August of 2006. This is just a little over 6 months from the date of the communication between Plaintiffs' counsel and PG & E. Plaintiffs understand that there is a 6 month statute of limitations, but are questioning *when* the statute officially began to run in this case. Assuming, arguendo, that the statute of limitations has run, Plaintiffs respectfully request that this Court toll the statute under the doctrine of equitable tolling or the doctrine of equitable estoppel.

69. Plaintiffs initially filed a civil action in superior court. Following this, Defendant PG & E's counsel notified Plaintiffs that they could not pursue an action in court because of the arbitration clause in the parties' agreement. This communication was made after Defendant PG & E had been served with and reviewed the contents of Plaintiffs' Complaint. There was no doubt as to what arguments and claims that Plaintiffs had at that time. Despite this, Defendant PG & E insisted that the parties were bound by an arbitration clause pursuant to the parties' Severance Agreements. In fact, Defendant PG & E's counsel warned Plaintiffs that if they did not dismiss their civil action and arbitrate the dispute, they would file a Motion to Compel Arbitration. Subsequently, the parties stipulated to dismiss the action without prejudice and pursue arbitration. A true and accurate copy of several communications from Defendant PG & E's counsel is marked as **EXHIBIT FIVE** and incorporated by reference herein.

70. All throughout this action, Defendant PG & E has acted in bad faith towards Plaintiffs. Defendant PG & E has attempted to "have their cake and eat it too." In arbitration, Defendant PG & E claimed that Plaintiffs' causes of action are not arbitrable and they must be exclusively handled at the federal level. Simultaneously, they argue in federal court that Plaintiffs' claims are bound by the Severance Agreement and cannot be argued in federal court.

71. Defendant PG & E was fully aware of the true facts of the situation, while Plaintiffs were ignorant of the true state of affairs. Defendant PG & E's conduct was intended to evoke Plaintiffs' reliance and said reliance was to the Plaintiff's prejudice and delay.

72. The statute of limitations may be tolled under the doctrine of equitable estoppel. [*Huseman v Icicle Seafoods, Inc.*, 471 F 3d 1116, 1120 (9th Cir. 2006).] Specifically the courts have held that, "conduct or representations by the defendant-employer which tend to lull the plaintiff into a false sense of security, can estop the defendant from raising the statute of limitations, on the general equitable principle that no man may take advantage of his own wrong." [*Atkins v Union Pac R.R.*, 685 F.2d 1146, 1149 (9th Cir. 1982)]

73. As discussed herein, Defendant PG & E expressly advised Plaintiffs that their exclusive remedy was arbitration. They notified Plaintiffs that if they did not dismiss their action, they would do so themselves. Defendants prevented Plaintiffs from filing suit by providing specific instruction to Plaintiffs. Plaintiffs placed actual and reasonable reliance on Defendant PG & E's conduct and representations.

74. Plaintiffs first approached their union regarding the Defendants' fraudulent promises. The union summarily dismissed their concerns, stating that it was not a union problem. After being haphazardly dismissed by the union, the misrepresentation from Defendant PG & E occurred. Defendant PG & E first informed Plaintiffs that their concerns are subject to arbitration. In reliance on this statement from Defendant PG & E, Plaintiffs dismissed their superior court action (without prejudice). Once in arbitration, Defendant PG & E argued that the action belongs exclusively in federal court, not arbitration. Following this and to protect their rights, Plaintiffs re-filed a complaint in federal court. In response, what does PG&E do? They move for dismissal on the grounds that the action belongs in arbitration and/or that it is preempted. Defendants' circular arguments were brought in bad faith and were a premeditated plan designed to bully, prejudice, delay and confuse Plaintiffs into losing any rights and protections they had against Defendants' deception. Defendants' conduct and representations lulled the Plaintiffs into

a false sense of security and therefore, they are estopped from raising the statute of
limitations. Defendants should not benefit from their own wrongful conduct and delay.

75. Defendants' fraudulent conduct, misrepresentations, and deception, as described above,
directly induced the Plaintiffs to delay initiating timely legal proceedings, within the six-
month statute of limitations as set out in § 10(b) of the National Labor Relations Act,
preserving the Plaintiff's claims against the Defendants. As such, Defendants are
estopped from their reliance, if any, on the statute of limitations

76. Further, the CBA is silent as to what steps Plaintiffs are to take after the union denies
their grievance. This ambiguity caused confusion for Plaintiffs and caused them not to
know what specific action they were required to take next. Defendant IBEW never
explained or advised Plaintiffs what actions they could pursue after being denied by their
union. Defendant PG & E, on the other hand, advised Plaintiffs that their exclusive
remedy was arbitration, a contention that they now adamantly deny. Any delay in this
case caused by Plaintiffs is excusable as discussed herein.

77. Equitable tolling "focuses on whether there was excusable delay by the plaintiff" and
"may be applied if, *despite all due diligence,* a plaintiff is unable to obtain vital
information bearing on the existence of his claim" [*see Huseman, supra* at p. 1120] In
*Huseman,* the court found that the "absolute lack of any effort [on Mr. Huseman's] part
to inquire about available options defeats his equitable tolling claim." (p. 1120) This
situation is distinguishable from the case at bar since here, Plaintiffs made substantial
efforts to determine their available remedies. Here, Plaintiffs have not "slept on their
rights," but instead, have "been prevented from asserting them" by Defendants. (*see
Huseman, supra* at p. 1120) The procedural history of this case, coupled with PG & E's
deceptive and chaotic responses to Plaintiffs' grievances, make it evident that Plaintiffs
have demonstrated the requisite due diligence for equitable tolling.

78. In *Spietz v. Kaiser Aluminum and Chemical Corp.* [(1987) 672 F.Supp. 1368], the
plaintiff argued the Relation-Back Doctrine in response to the statute of limitations issue.

This rule requires that in order for an amendment to relate back to the date of the original pleading, the claim asserted in the amended pleading must have arisen out of the same transaction set forth in the original pleading, the added party shall have received adequate notice of the pending action and will not suffer prejudice in defending its interest because of the late filing, and that the added party knew or should have known that, but for the error of the plaintiff, the action would have named him as a defendant originally. Notification of the institution of an action is not required to be formal notice. (*Id.; see also Korn v. Royal Caribbean Cruise Line, Inc.*, 724 F.2d 1397 (9th Cir.1984))

In *Spietz*, the court found that the Relation-Back Doctrine applied and allowed the amended complaint to go forward despite the timeliness issue. Here, Defendants PG & E and Radford have been aware of this action since the beginning. Defendant IBEW knew or should have known of the action since they were notified by Plaintiffs about the breach of contract, and advised Plaintiffs to seek relief on their own against Defendant PG & E. The claims being asserted in this amended complaint arise out of the same transaction set forth in the original pleading. Further, Defendant IBEW will not suffer prejudice in defending its interest because the action is filed at this time. Therefore, the Relation-Back Doctrine should apply in response to the statute of limitations issue in this case.

Plaintiffs will suffer damages legally and proximally caused by Defendants if relief is not granted.

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1. Recovery for loss of earnings for Plaintiff Thomas Hicks;
2. Recovery for loss of earnings for Plaintiff Thomas Knowles;
3. Recovery for loss of future earning capacity for Plaintiff Thomas Hicks;
4. Recovery for loss of future earning capacity for Plaintiff Thomas Knowles;
5. Restitution in the amount of Defendants' unjust enrichment;
6. That the Court order Defendant PG & E to re-employ Plaintiffs with preferential rights and former classification, based on Plaintiffs' seniority;

7. That the Court order Defendant PG & E to confer upon Plaintiffs all rights under the benefits package given to power generation employees;

8. Punitive damages against Defendants PG & E and Deanna Radford;

9. For an award of interest, including prejudgment interest, at the legal rate;

10. For mental and emotional distress damages;

11 Attorneys' fees and costs of suit; and

12. For such other and further relief that the court may deem proper.

Dated: December 5, 2007

BECK LAW, P.C.

By_____
Mahsa Gholami, Esq.
Attorney for Plaintiffs

*Knowles & Hicks v. PG & E, et al.*    20
Northern District Court of California, C-07-2284-CW
Amended Complaint

**VERIFICATION (CCP Section 446)**

1

2

3    I, THOMAS KNOWLES, declare:

4    I am a Plaintiff in this matter; I have read the foregoing **AMENDED COMPLAINT,** and

5    know the contents thereof; the same is true of my own personal knowledge, except as to those

6    matters which are therein stated on my information and belief, and as to those matters, I believe

7    them to be true.

8    I declare under penalty of perjury under the laws of the State of California that the

9    foregoing is true and correct.

10    Executed on this 3RD day of December, 2007, in Middletown, California.

11

12

13                                                            Thomas Knowles

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VERIFICATION (CCP Section 446)**

1

2

3        I, THOMAS HICKS, declare:

4        I am a Plaintiff in this matter; I have read the foregoing **AMENDED COMPLAINT**, and

5    know the contents thereof; the same is true of my own personal knowledge, except as to those

6    matters which are therein stated on my information and belief, and as to those matters, I believe

7    them to be true.

8        I declare under penalty of perjury under the laws of the State of California that the

9    foregoing is true and correct.

10        Executed on this __3__ day of _DECEMBER_, 2007, in _Middletown_, California.

11

12

13                                                                    Thomas Hicks

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 1



**beck|law** PC

www.becklaw.net

2681 Cleveland Avenue
Santa Rosa, CA 95403

tel 707.576.7175
fax 707.576.1878

November 26, 2007

*Via Certified & U.S. Mail*
Director, HR Service Center
245 Market Street
San Francisco, California, 94105

   Re: *Knowles and Hicks v. PG&E, et al.*
     *No. District of CA Case No.: C-07-2284-JCS*
     *Local Union No. 1245*
     *International Brotherhood of Electrical Workers*

To Whom It May Concern:

This correspondence shall serve as Mr. Knowles and Mr. Hicks' official written request for enforcement of their promised sixty month right of reemployment with PG&E. Mr. Knowles and Mr. Hicks make this *second and final* request, despite the fact that when they initially approached the union, (*within the time frame specified within the collective bargaining agreement and prior to commencement of this action*), they were unequivocally told that this was not a union issue and that they had to pursue their grievances on their own. Based on the union's position, they had no choice but to file the above-referenced action.

Until 1999, the Geysers were power plants operated by PG&E. In 1999, a divestiture occurred, placing a requirement on PG&E by the California Public Utility Commission for a two year Operation and Maintenance period ("O & M period"), where PG&E's expertise were to be made available to whoever purchased the power plant.

Thomas Knowles and Thomas Hicks worked at PG&E and were classified as Base Personnel employees for purposes of the two year O & M period. PG&E put together a benefits package for the power generation employees affected by the divestiture. Although this package was initially only offered to Power Generation Department

425 Market Street, Suite 2200, San Francisco, CA 94104   415.243.9197
U.S. Bank Plaza, 980 9th Street, 16th Floor, Sacramento, CA 95814   916.448.9441

employees, Mr. Knowles and Hicks eventually negotiated a 60 month right to re-employment benefit.

Mr. Knowles and Mr. Hicks were affected by the divestiture and were orally promised a 60 month right to re-employment by PG & E. Their supervisor Timothy Hollingshead, can attest to the fact that they worked at a PG & E power generation plant, reported to a power generator supervisor, and should have been included in the benefits package given to power generation employees. Further, Mr. Hollingshead can attest to the fact that Mr. Knowles and Mr. Hicks were entitled to a 60 month right to re-employment.

Mr. Knowles and Mr. Hicks entered into a written severance agreement following the oral agreement to provide a 60 month right to re-employment. That severance agreement did not contain the entirety of the parties' agreement. They relied on such agreement and did not attempt to pursue their right until shortly before the 60 months had expired.

Initially, when they requested re-employment, PG & E's employee, Deanna Radford, confirmed that Mr. Knowles and Mr. Hicks had such right. However, after speaking to her superiors and considering the cost/benefit analysis of fulfilling their promises, Ms. Radford turned around and denied such agreement. PG & E does not want to keep their agreement with Mr. Knowles and Mr. Hicks and is attempting to intimidate them out of this action. Mr. Knowles and Mr. Hicks came to the union right after such rejection, only to be denied assistance by the union and told to pursue this issue on their own.

Please also be advised that to successfully bring this lawsuit against PG & E under section 301 of the Labor Management Relations Act, it may become necessary to add the union to this action as additional defendants.

This written demand is made pursuant to the terms and conditions of the collective bargaining agreement, section 102.3, which details union members' grievance procedures. Your response is requested no later than **December 3, 2007**. If no response is received, we will assume that you have rejected our claim and will proceed accordingly.

Very truly yours,

BECK LAW, P.C.

By: _James V. Sansone_
      James V. Sansone, Esq.

cc:    Clients

EXHIBIT 2

I, TIMOTHY HOLLINGSHEAD, declare as follows:

1.     I am competent to testify as to the matters set forth herein. If called as a witness, I could and would testify as to the matters set forth below. I have knowledge of all the matters set forth below based on first-hand personal knowledge except for the matters alleged on information and belief, and so to those matters, I believe them to be true. I make this declaration in support of Thomas Hicks and Thomas Knowles re-employment rights of 60 months from the last day of work.

2.     Until 1999, the Geysers were power plants operated by PG & E. I was a Department Head at that time. Then, in 1999, the divestiture occurred, placing a requirement on PG & E by the California Public Utility Commission for a two year O & M period (Operation and Maintenance period) (1999-2001), where PG & E's expertise were to be made available to whoever purchased the power plant. (California Public Utilities Commission Code section 363)

3.     Thomas Hicks and Thomas Knowles worked at PG & E and were classified as Base Personnel employees for purposes of the two year O & M period, as deemed by the Purchase and Sales Agreement filed with the C.P.U.C. by PG & E. (a copy of the pertinent portion of the Purchase and Sales Agreement is attached as **Exhibit A**, and incorporated by reference herein) I acted as a liaison between Calpine and PG & E until the end of the O & M period in 2001. I have known Mr. Hicks and Mr. Knowles for over fifteen years, and from approximately 1991 through 1999, I acted as their Department Head. From 1999 through 2001, I was the Geyser's liaison, and being in the O & M group, we continued our work relationship.

4.     There was a benefits package put together for power generation PG & E employees affected by divestiture. Initially, this package was only offered to Power Generation Department employees. However, eventually a modified version included fleet and material employees. It is my position that all employees affected by the divestiture would receive a 60 month right to re-employment by PG & E. Everything in their agreements were the same, except for the fact that some power generation employees also received monetary compensation as an addition to their package. The 60 month right to re-employment was given to all affected employees.

Declaration of Timothy Hollingshead

5.    There is no doubt in my mind that Mr. Hicks and Mr. Knowles are entitled to the 60 month right to re-employment. They were required to work during the two year O & M period as Base Personnel. In Exhibit A, under the Schedule of Base Personnel (2.1.1), it states that "2 Garage Personnel" are defined as base personnel. Mr. Hicks and Mr. Knowles were the 2 garage personnel referred to in this section of the Agreement. The power generation employees and fleet and material employees were always given the same 60 month right to re-employment.

6.    Although PG & E has never stated that Mr. Hicks and Mr. Knowles were power generation employees, it is my opinion and position that they should be classified as power generation employees as well. This opinion is based, in part, by PG & E's own definition in their filing of the Purchase and Sale Agreement between PG & E and Calpine. (Exhibit A) Specifically, the "base personnel" for the O & M period *must* be power generation employees. (see Exhibit A, Article 1, under definition of Base Personnel) By including Garage and Materials Personnel in the schedule of Base Personnel, by PG & E's own definition, Mr. Hicks and Mr. Knowles are power generation employees.

Mr. Hicks and Mr. Knowles maintained all fleet equipment at the plant, specifically for power generation. They worked at a PG & E power generation plant, reported to a power generator supervisor, and were considered power generation employees in all regards. In my opinion, they should be classified as power generation employees, and are entitled to the additional monetary compensation as designated for power generation employees.

8.    Based on my experience and knowledge of the circumstances around this matter, I am confident that both Mr. Hicks and Mr. Knowles were given the right to re-employment for a period of *60 months*. Mr. Hicks and Mr. Knowles detrimentally relied on this promise by PG & E and attempted to pursue their right within the 60 month time period. PG & E has been unwilling to honor their agreement, even though Mr. Hicks and Mr. Knowles are clearly entitled to the 60 month time period for re-employment. If nothing else, Mr. Hicks and Mr. Knowles deserve this right in fairness and reliance on PG & E's representations to them.

Declaration of Timothy Hollingshead

1     I declare under penalty of perjury under the laws of the State of California that the

2    foregoing is true and correct, and that this declaration was executed on 3-21-2006 at

3    Mendocino, California

4

5                      Timothy Hollingshead

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Declaration of Timothy Hollingshead

# EXHIBIT "A"

OPERATION AND MAINTENANCE AGREEMENT

This OPERATION AND MAINTENANCE AGREEMENT ("Agreement") is made and entered into as of _____, 199_, by and between [OWNER], a _____ ("Owner), and PACIFIC GAS AND ELECTRIC COMPANY, a California corporation ("PG&E").

## BACKGROUND

A.    Concurrently herewith, Owner has purchased certain assets constituting the generating facility known as the Sonoma County Units at the Geysers from PG&E pursuant to a Purchase and Sale Agreement between Owner and PG&E dated as of even date herewith (the "Purchase Agreement"). The generating facility and any other Assets (as defined in the Purchase Agreement) constituting tangible real and personal property conveyed to Owner pursuant to the terms of the Purchase Agreement are referred to herein as the "Generating Facility".

B.    Section 363 of the California Public Utilities Code requires that, in connection with the sale of the Generating Facility, PG&E enter into an agreement with Owner for a period of not less than two years pursuant to which PG&E will operate and maintain the Generating Facility (subject to the exceptions set forth in Section 363 of the California Public Utilities Code).

C.    In accordance with Section 363 of the California Public Utilities Code, Owner desires to retain the services of PG&E for operation and maintenance of the Generating Facility, and PG&E is willing to perform such services, all upon the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants, undertakings and conditions set forth below, each of Owner and PG&E hereby agrees as follows:

## ARTICLE 1
## DEFINITIONS

1.1    Defined Terms. The following terms when used in this Agreement (or in the Schedules, Appendices or Exhibits to this Agreement) with initial letters capitalized have the meanings set forth below:

Absent Personnel. "Absent Personnel" has the meaning set forth in Section 2.1.6 "Absent Personnel".

Additional Personnel. "Additional Personnel" means    certain job categories listed on Schedule 2.1.3. Notwithstanding anything hereunder to the contrary, subcontractors and their personnel, including employees, agents and representatives, will not be deemed to constitute Additional Personnel.

Affiliate. "Affiliate" of a Person means any other Person that: (i) directly or indirectly controls the specified Person; or (ii) is controlled by or is under direct or indirect common control with the specified Person. For the purposes of this definition, "control" when used with respect to any specified Person, means the power to direct the management or policies of the specified Person, directly or indirectly, whether through the ownership of voting securities, partnership or limited liability company interests, by contract or otherwise; provided, however, that a contract between a Person and any supplier of fuel or power purchaser does not, by itself, constitute "control" for the purposes of this definition.

Agreement. "Agreement" means this Operation and Maintenance Agreement, together with the Schedules and Exhibits herein.

Base Fee. "Base Fee" has the meaning set forth in Section 6.1 "Base Fee".

Base Personnel. "Base Personnel" means, collectively, the personnel listed on Schedule 2.1.1 by job category. Notwithstanding anything herein to the contrary, subcontractors and their personnel, including employees, agents and representatives, and Non-Power Gen Personnel will not be deemed to constitute Base Personnel.

Business Day. "Business Day" means a day other than Saturday, Sunday or a day on which: (i) banks are legally closed for business in the State of California; or (ii) PG&E is closed for business.

CBAs. "CBAs" means, collectively, the following collective bargaining agreements, as in existence from time to time, between PG&E and the unions representing PG&E's employees: (i) the Agreement Between PG&E and Local Union No. 1245 of International Brotherhood of Electrical Workers Affiliated with American Federation of Labor Congress of Industrial Organizations Applying to Operation, Maintenance and Construction Employees; and (ii) the Agreement Applying to Professional and Technical Employees Between Engineers and Scientists of California IFPTE (AFL-CIO) and PG&E.

Closing Date. "Closing Date" has the meaning set forth in the Purchase Agreement.

Code of Conduct. "Code of Conduct" has the meaning set forth in Section 13.16.3 "Code of Conduct".

Commencement Date. "Commencement Date" means the Closing Date.

## PG&E PERSONNEL AND SERVICES

From and after the Commencement Date, PG&E will provide operation and maintenance services as described in this Article 2 "PG&E Personnel and Services", at and under the direction and instruction of Owner, on the terms and conditions, in accordance with the standards and for the compensation and/or reimbursement as herein set forth.

### 2.1     Personnel

2.1.1 Base Personnel. PG&E will provide and make available to Owner at the Generating Facility the Base Personnel.

2.1.2 Requested Personnel. PG&E will provide and make available to Owner at the Generating Facility the Requested Personnel, as requested by Owner within 45 days after the date Owner executes the Purchase Agreement and as amended or modified from time to time, with the consent of PG&E, on 30 days' written notice to PG&E by Owner.

2.1.3 Additional Personnel. PG&E will use Commercially Reasonable Efforts to make available to Owner Additional Personnel at the Generating Facility, in quantities and for periods of time, as requested by Owner in accordance with Section 4.3 "Request for Additional Personnel".

2.1.4 PG&E Personnel. All PG&E employees assigned by PG&E on a permanent or temporary basis to perform PG&E's obligations under this Agreement will be qualified to perform their assigned duties, and will remain the employees of PG&E or its Affiliates, and, subject to the CBAs, PG&E will be solely responsible for, and possess sole authority over, the management, direction and control over such employees, including all matters relating to such employees' working hours, schedules, working conditions, rates of compensation and all other terms and conditions of their employment. Owner acknowledges that the terms and conditions of employment of substantial numbers of the personnel provided and/or made available to Owner by PG&E under this Agreement are governed by the CBAs, and neither PG&E nor any employee of PG&E will be required by the terms hereof to take any action in violation of any CBA. The Parties intend that they will not be considered joint employers of any PG&E employees.

2.1.5 Responsibility for Workplace Health and Safety. Subject to Section 3.6 "Generating Facility", and in accordance with PG&E's customary practices and at the expense of Owner under Section 6.4 "Workplace Health and Safety", PG&E will be responsible for: (i) the workplace health and safety of PG&E Personnel at the Generating Facility, including (a) taking those precautions (such as providing personal protective equipment) that PG&E determines in its sole discretion should be taken to provide a safe workplace at the Generating Facility for PG&E Personnel, and (b) providing general, specific and environmental training to PG&E Personnel; and (ii) complying with the CBAs

## SCHEDULE OF BASE PERSONNEL

1.  10 Supervisors (one of which will be a safety supervisor)

2.  50 Operators

3.  36 Maintenance Personnel

4.  2 Materials Personnel

5.  4 Chemical Technicians

6.  2 Plant Clerks

7.  2 Garage Personnel

If Owner acquires the Sonoma County Units and the Lake County Units, the combined Base
Personnel will be:

1.  10 Supervisors (one of which will be a safety supervisor)

2.  60 Operators

3.  40 Maintenance Personnel

4.  2 Materials Personnel

5.  4 Chemical Technicians

6.  3 Plant Clerks

7.  2 Garage Personnel

SCHEDULE 6.2

## SCHEDULE OF LABOR RATES

### 1999 LABOR RATES

| Job Category | Straight Time | 1.5x Overtime | 2.0x Overtime |
|---|---|---|---|
| Operator | $50.70 | $65.24 | $79.79 |
|     Second Shift | $52.93 | $68.13 | $83.33 |
|     Third Shift | $55.14 | $70.34 | $84.22 |
| 2. Supervisor | $60.59 | $72.35 | $77.35 |
| 3. Maintenance Personnel | $50.11 | $64.48 | $78.65 |
| 4. Materials Personnel | $44.39 | $57.09 | $69.79 |
| 5. Helper | $40.14 | $51.59 | $63.04 |
| 6. Chemical Technician | $47.41 | $61.00 | $70.58 |
| 7. Design Engineer | $57.19 | $74.22 | $91.25 |
| 8. Design Drafter | $45.69 | $59.18 | $72.67 |
| 9. Plant Clerk | $46.24 | $59.48 | $72.72 |
| 10. Garage Personnel | $49.51 | $63.71 | $77.91 |
| 11. Non-Power Gen Personnel | PG&E's internal standard rate | PG&E's internal standard rate | PG&E's internal standard rate |

EXHIBIT 3

**101.12  ADOPTION**

Regular employees will be allowed up to 8 hours of time off with pay (as necessary) for court appearances in connection with child adoption procedures.  Such time may be taken in increments of one hour or more   (Amended 1-1-88 )

### TITLE 102  GRIEVANCE PROCEDURE

**102.1  STATEMENT OF INTENT - NOTICE**

The provisions of this Title have been amended and supplemented from time to time  Company and Union have now revised and consolidated this Title in its entirety to provide a concise procedure for the resolution of disputes

It is the intent of both Company and Union that the processing of disputes through the grievance procedure will give meaning and content to the Collective Bargaining Agreement.

The parties are in agreement with the policy expressed in the body of our nation's labor laws that the mutual resolution of disputes through a collectively bargained grievance procedure is the hallmark of competent industrial self-government.  Therefore, apart from those matters that the parties have specifically excluded by way of Section 102.2, all disagreements shall be resolved within the scope of the grievance procedure

Union agrees to provide grievant(s) with a copy of any settlement reached at the grievant's last known address   Such copy shall be sent by certified, U S  mail, or handed to the grievant, within 30 calendar days of the signing of the settlement.

**102.2  GRIEVANCE SUBJECTS**

Disputes involving the following enumerated subjects shall be determined by the grievance procedures established herein:

(a)    Interpretation or application of any of the terms of this Agreement, including exhibits thereto, letters of agreement, and formal interpretations and clarifications executed by Company and Union.

(b)    Discharge, demotion, suspension or discipline of an individual employee.

(c)    Disputes as to whether a matter is proper subject for the grievance procedure.

**102.3  TIME LIMITS**

(a)    **Filing**

It is the intent of Company, Union and the employees that timely filed grievances shall be settled promptly   *(i)* A *local* grievance is timely filed when submitted by the Union Business Representative or his/her alternate (hereinafter either is referred to as "Business Representative") in writing on the form adopted for such purpose to the *Director, HR Service Center, 245 Market Street, San Francisco* or his/her alternate (hereinafter either is referred to as "Human Resources Advisor"); or *(ii)* a *Business Manager grievance is timely filed when submitted by Union's Business Manager to Company's Industrial Relations Manager* (iii) within the following time periods:  (Amended 1-1-00)

(1)  A grievance which involves the discharge of an employee must be filed not later than 14 calendar days after the employee is notified in writing of the discharge   Whether or not a grievance is filed, Company shall, at Union's request, state in writing the reasons therefore within two workdays of such request  (Amended 1-1-91)

(2)  A grievance which does not involve the grievant's discharge must be filed not later than 30 calendar days after the date of the action complained of, or the date the employee became aware of the incident which is the basis for the grievance, whichever is later.  The Company shall, at Union's request, state in writing the reason for an employee's discipline, demotion or suspension within seven calendar days of receipt of such request by Union.

*(3)  Business Manager grievances which may be filed pursuant to (a)(ii) above shall concern contractual interpretation matters which have system-wide or classification wide implications  Business Manager grievances shall not involve an employee's discharge, demotion, discipline, promotion, demotion or transfer. (Added 1-1-00)*

(b)    Steps One Through Five Extension of Time Limits

Either the Company or Union members of any of the Committees provided for in each of the following grievance Steps One through Five may, if they agree that further determination of fact is required, request an extension of time which may be granted by the other.  In no event shall any extension by either or both parties exceed one additional time period provided for at the step where the extension is granted

9

102.4  FINALITY

The resolution of a timely grievance at any of the steps provided herein shall be final and binding on the Company, Union and the grievant.  A resolution at a step below Step Five, while final and binding, is without prejudice to the position of either party, unless mutually agreed to otherwise.

(a)      If an employee has been demoted, disciplined or dismissed from Company's service for alleged violations of a Company rule, practice or policy and Company finds upon investigation that such employee did not violate a Company rule, practice or policy as alleged, Company shall reinstate the employee and pay the employee for all time and benefits lost thereby plus interest on such reinstated pay in the amount of 7 1/2% annum.

(b)      In the event of a "continuing grievance" as set forth in Section 102.9 and Attachment A, a retroactive wage adjustment shall be made as provided therein.

(c)      Provided further that nothing contained herein shall restrict or inhibit the parties or the Board of Arbitration from reducing the amount of a retroactive wage adjustment to an otherwise successful grievant where, in their absolute discretion, the equities of the situation do not call for the employee to receive a full retroactive wage adjustment.

102.5  ADJUSTMENTS

Company will make a reasonable effort to effectuate remedies provided for in a grievance settlement within 30 calendar days of such settlement.

102.6  STEPS

### STEP ONE

### SHOP STEWARDS

Except for disputes involving an employee's discharge, demotion, suspension, discipline or qualifications for promotion or transfer, the initial step in the adjustment of a grievance shall be a discussion between Union's shop steward (or grievant or Business Representative if no shop steward is assigned to the work area) and the foreman or other immediate supervisor directly involved.  The foreman and shop steward may discuss the grievance with the general foreman or other supervisor of corresponding authority.  The purpose of such discussion shall be to reach a satisfactory disposition of the grievance but shall not waive or delay the filing requirements set forth in Section 102.3 above.  Discussions shall be at such time and place as not to interfere with the work then in progress.  (Amended 1-1-91)

Shop stewards shall be employees of Company, and Union may designate as many shop stewards as it deems necessary for the proper administration of its affairs and for the administration of the provisions of this Agreement.

### STEP TWO

### LOCAL INVESTIGATING COMMITTEE

Immediately following the filing of a timely grievance, a Local Investigating Committee will be established.  The Committee will be composed of the Human Resources *Advisor*, the Business Representative, the exempt supervisor whose decision is involved in the grievance, and the shop steward representing the department involved.  (Amended 1-1-*00*)

(1)  The Human Resources *Advisor* and Business Representative will arrange for meetings of the Committee at times and places convenient for the persons involved.  (Amended 1-1-*00*)

(2)  The Committee shall meet as soon as reasonably possible and shall make a full and complete investigation of all of the factors pertinent to the grievance.  If necessary to gain all of the information required to resolve the grievance, the Committee may hold investigative interviews with other persons involved in the dispute.  Except for good cause to the contrary, the grievant shall be permitted to be present during these interviews.  The grievant will not be a party to the disposition of the grievance, nor is the grievant's concurrence required for the Committee to reach a settlement of the grievance.  Grievant, however, does have the right to point out the existence of other facts or witnesses favorable to grievant's case.

Notwithstanding the foregoing prohibition, with the written consent of the Union's Business Manager, or designee, the members of the Local Investigating Committee may include the grievant where such employee is also the shop steward representing the department involved in the grievance.  In this limited situation, the shop steward/grievant may be a party to the disposition of the grievance.  (Amended 1-1-91)

(3) (a)  Within 30 calendar days following the filing of a grievance which does not concern an employee's qualifications for promotion or transfer (except as provided in the next paragraph for Inter-regional or General Office Departmental prebids or transfer applications), or the employee's demotion, suspension or termination of employment, the Local Investigating Committee shall prepare a report of its findings, which shall include: (i) a mutually agreed-to brief narration of all the events and factors involved in the dispute, and (ii) the Committee's mutually agreed-to findings with respect thereto.  If the Committee has reached an agreeable

EXHIBIT 4



**beck | law** PC

www.becklaw.net

2681 Cleveland Avenue
Santa Rosa, CA 95403

tel 707.576.7175
fax 707.576.1878
                    24 January 2006

Pacific Gas and Electric Company
Human Resources Service Center-Job Bidding Team
P.O. Box 770000, N3Y
San Francisco, CA 94177
Attention: Mr. Bill Meyer

Dear Mr. Meyer,

Our firm has been retained by Thomas Hicks and Thomas Knowles as it pertains to their
re-employment with Pacific Gas and Electric Company.

In this regard I have attached the said applications by Thomas Hicks and Thomas
Knowles together with the Notice of Workforce Reduction showing that their last day of
work was 5-07-2001.

Mr. Hicks' Reemployment Notification and attachment is affixed as Exhibit 1 and Mr.
Knowles' Reemployment Notification and attachment is affixed as Exhibit 2.

As part of their decision making, both Mr. Hicks and Mr. Knowles met with Tim
Hollingshead acting plant manager at the Geysers and Deanna Radford of Human
Resources. At that meeting also present was Larry McDowell. It was explained to my
clients, that the re-hire timetable for the re-employment rights was to be 60 months from
the last day of work. In fact, my Clients were given the Re-employment Notification as
part of their package which clearly shows that the period of time to be "not in excess of
60 continuous months [and] shall be entitled to Preferential Rehire..."

In accordance thereto, my clients are formally submitting their Reemployment
Notification is attached as Exhibits 1 and 2.

Should you wish to question either Tim Hollingshead or Larry McDowell to confirm the
statements made on behalf of PG&E that the re-hire rights were to extend 60 months, do
not hesitate to do so.

My Clients have detrimentally relied on that representation, made decisions to work for
Calpine at the Geysers as a result, and now wish to pursue their rights for reemployment
which was represented to them as being at their disposal.

425 Market Street, Suite 2200, San Francisco, CA 94104   415.243.9197
U.S. Bank Plaza, 980 9th Street, 16th Floor, Sacramento, CA. 95814   916.448.9441

If , for some reason, PG&E refuses to honor their reemployment, then my Client's will take the appropriate steps in order to enforce the agreements for which they detrimentally relied on at the time that PG&E was selling the Geysers to Calpine and attempting to entice personnel to remain at the Geysers such as my Clients Thomas Hicks and Thomas Knowles

We will await your prompt response.

Very truly yours,

BECK LAW, P.C.

By: Daniel B. Beck, Esq.

:nn
cc: Thomas Hicks
cc: Thomas Knowles

Form JB-3003

## REEMPLOYMENT NOTIFICATION - IBEW PHYSICAL BARGAINING UNIT EMPLOYEES

Name: _Thomas R. Hicks_     Date: _12-20-06_

SS# _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_     Home Phone(_707_) _987-0621_

Current Mailing Address: _P.O. Box 462_

_Middletown_    _CA_    _95461_
City    State    Zip Code

Regular employees with one continuous year of service who have been laid off for lack of work for a period not in excess of 60 continuous months shall be entitled to Preferential Rehire under the provisions of Section 206.13/306.14 of the Physical Labor Agreement.

Please indicate the Bidding Unit(s) and Department in which you will accept re-employment. Check the appropriate box(es). Please note that if you decline a job offer in an area/department you have checked, your re-employment rights will end.

Company will contact you by calling the last telephone number furnished. If you cannot be reached by telephone, you will be forwarded a notice by certified mail to the last mailing address you furnished. You must report any changes in your phone number or address immediately by calling (415) 973-3767. If you have future changes to your selections below, you must submit a new form. To obtain a new form, contact the HR Service Center at (415) 973-2363 and select option 5.

### BIDDING UNITS (see Supplement to Title 205)

| 1 8 15 | 2 9 16 | ☒ 3 10 17 | 4 11 18 | 5 12 19 | 6 13 | 7 14 |

### DEPARTMENTS

**MATERIALS DISTRIBUTION**
- Warehouse Operations
- DeCoto Pipe Yard and Plant
- Machine Shop
- Electric and Utility

**GENERAL SERVICES**
- ☒ Garage
- Warehouse
- Building Service
- Miscellaneous

**ACCOUNTING AND COMPUTER OPERATIONS**
- Customer Accounting

**GAS SYSTEM MAINTENANCE/GAS SYSTEM OPERATIONS**
- Maintenance
- Operations

**CUSTOMER SERVICES**
- Customer Services

**WATER**
- Water Department

**ELECTRIC**
- Office
- Transmission and Distribution
- Meter
- Maintenance
- Operating
- Clerical-Hydro

**STEAM GENERATION & NUCLEAR POWER GENERATION**
- Operating
- Electrical Maintenance
- Mechanical Maintenance
- Technical Maintenance
- Clerical
- Operating (DCPP)
- Electric Maintenance (DCPP)
- Mechanical Maintenance (DCPP)
- Technical Maintenance (DCPP)
- Clerical (DCPP)

**GAS**
- Transmission and Distribution
- Steam Heat
- Service
- Measurement and Control
- Plant Maintenance
- Gas Meter Repair Facility

Rev. 8/14/2000
(s:\cibt\rehirepool\rehiren.doc

Case 4:07-cv-0226   -W    Document 49    Filed 12/05/   7    Page 43 of 56 Form JB-3003

GENERAL CONSTRUCTIC    PROMOTION-DEMOTION GEOGRA    7    EAS SYSTEMWIDE

CLERICAL SERVICES
- [ ] 0)    Systemwide

GAS CONSTRUCTION
- [ ] 0)    Construction Operation, promotion-demotion area systemwide
- [ ] 1)    Humboldt and North Bay Divisions
- [ ] 2)    Drum and Sacramento
- [ ] 3)    Shasta, DeSabla and Colgate
- [ ] 4)    San Francisco and Peninsula
- [ ] 5)    East Bay
- [ ] 6)    Stockton
- [ ] 7)    San Jose and Coast Valleys
- [ ] 8)    Technical Classifications, promotion-demotion area systemwide
- [ ] 9)    San Joaquin

LINE CONSTRUCTION
- [ ] 1)    Humboldt, North Bay and San Francisco Divisions
- [ ] 2)    Shasta, DeSabla, Colgate, Drum and Sacramento
- [ ] 3)    San Joaquin and Stockton
- [ ] 4)    San Jose and Coast Valleys
- [ ] 5)    Paint Section: Humboldt, North Bay, San Francisco, Drum Sacramento, Shasta, DeSabla, Stockton, Colgate and East Bay
- [ ] 6)    Paint Section: Coast Valleys, San Jose, and San Joaquin
- [ ] 7)    East Bay

FLEET MANAGEMENT
- [ ] 1)    Humboldt and North Bay Divisions
- [ ] 2)    Shasta, DeSabla and Colgate
- [ ] 3)    Sacramento, Drum and Stockton
- [ ] 4)    East Bay
- [ ] 5)    Coast Valleys, San Francisco and San Jose
- [ ] 6)    San Joaquin
- [ ] 7)    General Construction Davis Service Center
- [ ] 8)    Field Mechanical Inspectors and Working Foreman B's promo/demo systemwide

STATION, SUBSTATION, AND HYDRO CONSTRUCTION
- [ ] 1)    North Bay and Humboldt Divisions
- [ ] 2)    Shasta
- [ ] 3)    East Bay
- [ ] 4)    San Francisco
- [ ] 5)    Coast Valleys and San Jose
- [ ] 6)    San Joaquin and Stockton
- [ ] 7)    Technical Classifications, promotion-demotion area systemwide

DO YOU WANT TO BE CONSIDERED FOR PART TIME EMPLOYMENT?    [ ] YES    [X] NO

_Thomas R Hicks_
Name

_1-20-06_
Date

_____
Signature

Please mail completed form to:    Pacific Gas and Electric Company
Human Resources Service Center – Job Bidding Team
P.O. Box 770000, N3Y
San Francisco, CA 94177

Date Received    _____
Date Entered    _____
Entered By    _____

Rev. 8/14/2000
{s:\cibt\rebimool\-shies-.doc



## NOTICE TO EMPLOYEE OF
## CHANGE IN RELATIONSHIP

(Termination Notice Pursuant to Section 1089 of
the California Unemployment Insurance Code)

NAME:  THOMAS HICKS          SSN: 549883618

Your employment status has changed for the following reason:

### Work Force Reduction

As a result of the foregoing change in your employment status, you have the right to file for
unemployment insurance benefits with the California Employment Development Department
(EDD).  While your eligibility for benefits will ultimately be determined by the EDD, your
eligibility date is synonymous with your last day worked 5/7/2001.  Your compensated
decision-making period will expire on 5/7/2001.

Print Name Of PG&E Company Representative ___J. W. Delaney___

Signature_____    Date___6/20/01___
     (PG&E Representative)

Form JB-3003

**REEMPLOYMENT NOTIFICATION - IBEW PHYSICAL BARGA... G UNIT EMPLOYEES**

Name: _Thomas O. Knowles_          Date: _1-20-06_

SS# _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_          Home Phone(_707_) _987-3626_

Current Mailing Address: _P.O. Box 764_

_Middletown_          _CA._          _95461_
       City          State          Zip Code

Regular employees with one continuous year of service who has been laid off for lack of work for a period not in excess of 60 continuous months shall be entitled to Preferential Rehire under the provisions of Section 206.13/306.14 of the Physical Labor Agreement.

Please indicate the Bidding Unit(s) and Department in which you will accept re-employment. Check the appropriate box(es). Please note that if you decline a job offer in an area/department you have checked, your re-employment rights will end.

Company will contact you by calling the last telephone number furnished. If you cannot be reached by telephone, you will be forwarded a notice by certified mail to the last mailing address you furnished. You must report any changes in your phone number or address immediately by calling (415) 973-3767. If you have future changes to your selections below, you must submit a new form. To obtain a new form, contact the HR Service Center at (415) 973-2363 and select option 5.

**BIDDING UNITS** (see Supplement to Title 205)

| 1 8 15 | 2 9 16 | ☒ 3 10 17 | 4 11 18 | 5 12 19 | 6 13 | 7 14 |
|---|---|---|---|---|---|---|

**DEPARTMENTS**

**MATERIALS DISTRIBUTION**
- Warehouse Operations
- DeCoto Pipe Yard and Plant
- Machine Shop
- Electric and Utility

**ACCOUNTING AND COMPUTER OPERATIONS**
- Customer Accounting

**CUSTOMER SERVICES**
- Customer Services

**ELECTRIC**
- Office
- Transmission and Distribution
- Meter
- Maintenance
- Operating
- Clerical-Hydro

**GAS**
- Transmission and Distribution
- Steam Heat
- Service
- Measurement and Control
- Plant Maintenance
- Gas Meter Repair Facility

**GENERAL SERVICES**
- ☒ Garage
- Warehouse
- Building Service
- Miscellaneous

**GAS SYSTEM MAINTENANCE/GAS SYSTEM OPERATIONS**
- Maintenance
- Operations

**WATER**
- Water Department

**STEAM GENERATION & NUCLEAR POWER GENERATION**
- Operating
- Electrical Maintenance
- Mechanical Maintenance
- Technical Maintenance
- Clerical
- Operating (DCPP)
- Electric Maintenance (DCPP)
- Mechanical Maintenance (DCPP)
- Technical Maintenance (DCPP)
- Clerical (DCPP)

1

Case 4:07-cv-022⸹___ W     Document 49     Filed 12/05/__ 7     Page 46 of 56

Form JB-3003

GENERAL CONSTRUCTION     PROMOTION- DEMOTION GEOGRAPHICAL AREAS - SYSTEMWIDE

**CLERICAL SERVICES**
- ☐ 0)  Systemwide

**GAS CONSTRUCTION**
- ☐ 0)  Construction Operation, promotion-demotion area systemwide
- ☐ 1)  Humboldt and North Bay Divisions
- ☐ 2)  Drum and Sacramento
- ☐ 3)  Shasta, DeSabla and Colgate
- ☐ 4)  San Francisco and Peninsula
- ☐ 5)  East Bay
- ☐ 6)  Stockton
- ☐ 7)  San Jose and Coast Valleys
- ☐ 8)  Technical Classifications, promotion-demotion area systemwide
- ☐ 9)  San Joaquin

**LINE CONSTRUCTION**
- ☐ 1)  Humboldt, North Bay and San Francisco Divisions
- ☐ 2)  Shasta, DeSabla, Colgate, Drum and Sacramento
- ☐ 3)  San Joaquin and Stockton
- ☐ 4)  San Jose and Coast Valleys
- ☐ 5)  Paint Section: Humboldt, North Bay, San Francisco, Drum Sacramento, Shasta, DeSabla, Stockton, Colgate and East Bay
- ☐ 6)  Paint Section: Coast Valleys, San Jose, and San Joaquin
- ☐ 7)  East Bay

**FLEET MANAGEMENT**
- ☐ 1)  Humboldt and North Bay Divisions
- ☐ 2)  Shasta, DeSabla and Colgate
- ☐ 3)  Sacramento, Drum and Stockton
- ☐ 4)  East Bay
- ☐ 5)  Coast Valleys, San Francisco and San Jose
- ☐ 6)  San Joaquin
- ☐ 7)  General Construction Davis Service Center
- ☐ 8)  Field Mechanical Inspectors and Working Foreman B's promo/demo systemwide

**STATION, SUBSTATION, AND HYDRO CONSTRUCTION**
- ☐ 1)  North Bay and Humboldt Divisions
- ☐ 2)  Shasta
- ☐ 3)  East Bay
- ☐ 4)  San Francisco
- ☐ 5)  Coast Valleys and San Jose
- ☐ 6)  San Joaquin and Stockton
- ☐ 7)  Technical Classifications, promotion-demotion area systemwide

DO YOU WANT TO BE CONSIDERED FOR PART TIME EMPLOYMENT?     ☐ YES     ☒ NO

*Tom Knowles*
_____
Name

*1-20-06*
_____
Date

_____
Signature

*Please mail completed form to:*     Pacific Gas and Electric Company
                                      Human Resources Service Center – Job Bidding Team
                                      P.O. Box 770000, N3Y
                                      San Francisco, CA  94177

Date Received  _____
Date Entered   _____
Entered By     _____

Rev. 8/14/2000
/s:\jbt\rehirepool\rehirep.doc



## NOTICE TO EMPLOYEE OF
## CHANGE IN RELATIONSHIP

(Termination Notice Pursuant to Section 1089 of
the California Unemployment Insurance Code)

NAME: THOMAS KNOWLES        SSN: 558727505

Your employment status has changed for the following reason:

### Work Force Reduction

As a result of the foregoing change in your employment status, you have the right to file for
unemployment insurance benefits with the California Employment Development Department
(EDD). While your eligibility for benefits will ultimately be determined by the EDD, your
eligibility date is synonymous with your last day worked 5/7/2001. Your compensated
decision-making period will expire on 5/7/2001.

Print Name Of PG&E Company Representative ___J.M. Delacruz_____

Signature_____    Date__6/20/01_____
    (PG&E Representative)

**EXHIBIT 5**



*Pacific Gas and Electric Company°*

RECEIVED
OCT 1 3 2006

Darren P. Roach
Attorney at Law

77 Beale Street, B30A
San Francisco, CA 94105

*Mailing Address:*
P. O. Box 7442
San Francisco, CA 94120

415 973 6345
Fax: 415 973 5531

October 11, 2006

VIA FACSIMILE 707.576.1878 AND
US MAIL

Daniel Beck, Esq.
BECK LAW P.C.
2681 Cleveland Avenue
Santa Rosa, CA 95403

Re:   Knowles and Hicks v. Pacific Gas and Electric Company. et al.

Dear Mr. Beck:

PG&E is in receipt of a civil action filed on behalf of plaintiffs Thomas Knowles and Thomas Hicks in San Francisco Superior Court. The core of the civil action alleges PG&E breached contractual obligations regarding promised employment benefits, including potential preferential rights to reemployment

PG&E is initiating communication because this civil action is in violation of severance agreements executed by Knowles and Hicks. As part of a lay off in 2001, both former employees were offered, accepted, and executed severance agreements in which, in exchange for certain promises, they each received a severance sum in excess of $50,000. In exchange for this sum, Knowles and Hicks agreed to several promises, including the following:

- The agreement resolved any dispute between the employees and PG&E with respect to their employment and severance there from.
- They agreed to release and hold harmless PG&E and its employees from all claims relating to their employment. This included a release of claims for discrimination. The agreement contained an express waiver of any rights under California Civil Code section 1542.
- They agreed not to initiate any lawsuit or proceeding against PG&E. They also agreed that any dispute regarding any aspect of the agreement shall be resolved through contractual arbitration.
- Plaintiffs agreed to repay the severance settlement sum in the case of a material breach of the agreement.

By initiating a civil action, Knowles and Hicks are in violation of a material term of the severance agreements.

Daniel Beck, Esq
October 11, 2006
Page 2

PG&E's position is that these claims are without merit, but if they are pursued at all then plaintiffs exclusive remedy is arbitration, not a civil action. If they choose to maintain this action, PG&E will seek costs associated with having to defend a civil action, and will exercise its rights to demand return of all severance sums paid to Knowles and Hicks. For your reference, copies of the severance agreements are attached. Please call at your earliest convenience to discuss this issue.

Very truly yours,

Darren P. Roach

DPR/as

Enclosures

CALENDARED
10/31/06



Pacific Gas and
Electric Company®

Darren P. Roach        77 Beale Street, B30A
Attorney at Law        San Francisco. CA 94105

Mailing Address:
P. O. Box 7442
San Francisco, CA 94120

415.973.6345
Fax: 415.973.5531

October 11, 2006

VIA FACSIMILE 707.576.1878,
ELECTRONIC MAIL,
AND US MAIL

Mahsa Gholami, Esq.
Beck Law, P.C.
2681 Cleveland Avenue
Santa Rosa, CA 95403

Re:    Knowles and Hicks v. Pacific Gas and Electric Company, et al.

Dear Ms. Gholami:

This will confirm our discussions of October 16, 2006. Plaintiffs indicated receipt of copies of
severance agreements, and they are considering PG&E's request to dismiss with prejudice all
claims in the civil complaint and to submit the claims to contractual arbitration.

While plaintiffs are considering this request, they will provide PG&E an extension of time to
respond to the civil complaint. The parties agree that PG&E's response is currently due on
October 31, 2006.

Thank you for your cooperation, and I look forward to a timely response regarding contractual
arbitration. Please contact me immediately if you believe there are any misunderstandings are
reached in this letter.

Very truly yours,

Darren P. Roach

DPR

Enclosures


*Pacific Gas and
Electric Company*°

Darren P. Roach          77 Beale Street, B30A
Attorney at Law          San Francisco, CA 94105

Mailing Address:
P. O. Box 7442
San Francisco, CA 94120

415.973.6345
Fax: 415.973.5531

October 16, 2006                          VIA FACSIMILE 707.576.1878,

Mahsa Gholami, Esq.
Beck Law, P.C.
2681 Cleveland Avenue
Santa Rosa, CA 95403

Re:    Knowles and Hicks v. Pacific Gas and Electric Company, et al.

Dear Ms. Gholami:

PG&E's current understanding is that plaintiffs are conferring regarding a response to the request
to voluntary dismiss with prejudice all claims and, if desired, to submit those claims to
contractual arbitration. PG&E requests a conference with you on Monday to discuss plaintiffs'
decision, so that PG&E has time to prepare and file petition to compel arbitration, if necessary.
Thank you for your continued cooperation.

Very truly yours,

Darren P. Roach

DPR



*Pacific Gas and
Electric Company*®



Darren P. Roach    77 Beale Street, B30A
Attorney at Law    San Francisco, CA 94105

*Mailing Address:*
P. O. Box 7442
San Francisco, CA 94120

415 973 6345
Fax: 415 973.5531

October 16, 2006                                    VIA FIRST CLASS MAIL


Mahsa Gholami, Esq.
Beck Law, P.C.
2681 Cleveland Avenue
Santa Rosa, CA  95403

    Re:   <u>Knowles and Hicks v. Pacific Gas and Electric Company, et al.</u>

Dear Ms. Gholami:

This letter serves as notice that, should plaintiffs fail to agree to dismiss the civil claims with prejudice and to submit any claims to arbitration, PG&E will file a motion to dismiss and a petition to compel arbitration  9 U.S.C. §4.

Very truly yours,

Darren P. Roach

DPR/as

Enclosure:  Proof of Service

CERTIFICATE OF SERVICE BY MAIL – FEDERAL

I, the undersigned, state that I am a resident of the United States and am employed in the City and County of San Francisco; I am over the age of eighteen (18) years and not a party to the within cause; my business address is 77 Beale Street, San Francisco, California 94105; I am familiar with the practice of Pacific Gas and Electric Company ("PG&E") for the collection and processing of items for mailing; in the ordinary course of business such items would be deposited with the United States Postal Service that same day; and on the date set out below true copies of the following:

CORRESPONDENCE DATED OCTOBER 16, 2006,
REGARDING SERVE NOTICE OF INTENTO TO FILE
MOTION TO DISMISS AND COMPEL ARBITRATION

were sealed in envelopes, addressed as follows, and placed for collection and mailing on that date following PG&E's ordinary business practices:

Mahsa Gholami
BECK LAW, P.C.
2681 Cleveland Avenue
Santa Rosa, CA 95403

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed October 16, 2006 at San Francisco, California

ANNABEL STRIPLIN

PROOF OF SERVICE

CASE NAME:          *Thomas Knowles and Thomas Hicks vs. PG&E, et al.*

COURT and CASE NO.:     C-07-02284-CW

DOCUMENT NAME:     Plaintiffs' Amended Summons and Amended Complaint

I declare as follows:

I am over the age of 18 years and not a party to the above-entitled action or proceeding; that my business name and address is: 2681 Cleveland Avenue, Santa Rosa, CA 95403.

On **December 5, 2007**, I caused to be served said document on the following parties involved as follows:

Darren P. Roach, Esq.                          Susan Kumagai, Esq.
Pacific Gas & Electric                          Lafayette & Kumagai LLP
P.O. Box 7442                                       100 Spear Street, Suite 600
San Francisco, CA 94120                    San Francisco, CA 94105
(415) 973-5531, fax                             (415) 357-4605, fax


__XX__ BY MAIL: I caused each such envelope above, with postage thereon fully prepaid, to be placed in the United States mail at Santa Rosa, CA. (CCP §1013(a)(1)).


__XX__ VIA FACSIMILE TRANSMISSION. (CCP §1013)


*Kimala Krchnavi*
Kimala Krchnavi, Paralegal