LAFAYETTE & KUMAGAI LLP
GARY T. LAFAYETTE (State Bar No. 088666)
SUSAN T. KUMAGAI (State Bar No. 127667)
GLEN TURNER (State Bar No. 212417)
100 Spear Street, Suite 600
San Francisco, California 94105
Telephone:   (415) 357-4600
Facsimile:    (415) 357-4605
skumagai@lkclaw.com
gturner@lkclaw.com

STEPHEN L. SCHIRLE (State Bar No. 96085)
MARK H. PENSKAR (State Bar No. 77725)
DARREN P. ROACH (State Bar No. 159998)
77 Beale Street, B30A
P.O. Box 7442
San Francisco, California 94105
Telephone: (415) 973-6345
Facsimile: (415) 973-5520
dprc@pge.com

Attorneys for Defendants
PACIFIC GAS AND ELECTRIC COMPANY and DEANNA
RADFORD

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS KNOWLES and THOMAS HICKS,<br><br>Plaintiffs,<br><br>vs.<br><br>PACIFIC GAS & ELECTRIC COMPANY, DEANNA RADFORD, LOCAL UNION NUMBER 1245 OF INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, and DOES 2-20,<br><br>Defendants. | Case No. C 07-2284 CW<br><br>**DEFENDANTS PACIFIC GAS AND ELECTRIC'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION FOR ATTORNEY FEES**<br><br>Date:       June 26, 2008<br>Time:       2:00 p.m.<br>Location:  Courtroom 2<br>Judge:     Hon. Claudia Wilken<br><br>Amended Complaint Filed:  December 5, 2007 |

Pacific Gas and Electric Company ("PG&E") hereby requests the Court to take Judicial

Notice of its own record which contains the following severance agreements, pursuant to the

Federal Rules of Evidence, § 201, marked and attached hereto as:

1

DEFENDANTS PG&E's REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION FOR
ATTORNEY FEES
(Case No. C07-2284 CW)

1     Exhibit "A": Severance Agreement of Knowles and PG&E, July 2, 2001.

2     Exhibit "B": Severance Agreement of Hicks and PG&E, July 2, 2001.

3  The Court has previously taken judicial notice of these documents, as is noted in this Court's

4  November 29, 2007 Order Granting Defendant PG&E's Motion to Dismiss with Leave to

5  Amend, pp. 6:3-7:6.

6     PG&E also requests that the Court take judicial notice of the following documents:

7     Exhibit "C": "Laffey Matrix 2003-2008", URL http://www.usdoj.gov/usao/dc/Divisions/

8  Civil_Division/Laffey_Matrix_7.html, last viewed May 15, 2008 at 6:02 p.m.

9     Exh. D, Wikipedia entry on "Laffey Matrix," URL http://en.wikipedia.org/wiki/

10  Laffey_Matrix.

11     District Courts have taken judicial notice of websites and information contained therein

12  when that information is "capable of accurate and ready determination and not subject to

13  reasonable dispute." See, e.g., In re Amgen Inc. Securities Litigation, 2008 WL 999058, *7

14  (C.D.Cal. 2008) (taking judicial notice of information from State Department website); Synthes

15  (U.S.A.) v. G.M. dos Reis Jr. Ind. Com. De Equip. Medico, 2008 WL 81111, *2 (S.D.Cal. 2008)

16  (taking judicial notice of article posted on FDA website); Wible v. Aetna Life Ins. Co., 375

17  F.Supp.2d 956, 965 (C.D.Cal. 2005) (taking judicial notice of Amazon web pages for two books

18  and of the website of the American Academy of Allergy Asthma and Immunology).

19     Exhibit C comes from an official government website and contains an explanation of its

20  own methodology and citations to authority. It is readily verifiable. Similarly, all information in

21  Exhibit D comes from published citations available on the website and is readily verifiable.

22

23  Dated:  May 19, 2008                 LAFAYETTE & KUMAGAI LLP
                                        _/s/ Glen Turner_
24                                      GLEN TURNER
                                        Attorneys for Defendants
25                                      PACIFIC GAS & ELECTRIC COMPANY and
                                        DEANNA RADFORD
26

27

28
                                                                                    2

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

1

# CERTIFICATE OF SERVICE

I certify that a copy of this document was served electronically on May 19, 2008, on counsel of record in compliance with Federal Rule 5, Local Rule 5.6 and General Order 45, by use of the Court's ECF system.

/s/ *Glen Turner*
GLEN TURNER

N:\Documents\PGE\Know\Pldg\RJN - motion for attorney fees.doc

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

3

DEFENDANTS PG&E's REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION FOR ATTORNEY FEES
(Case No. C07-2284 CW)

EXHIBIT A





OCT 1 3 2006

SEVERANCE AGREEMENT AND RELEASE

This Severance Agreement and Release is made and entered into between Mr. THOMAS HICKS and the Pacific Gas and Electric Company (PG&E). Mr. HICKS and PG&E (collectively referred to as "the parties"), in their wish to compromise, resolve, settle, and terminate any dispute or claim between them with respect to Mr HICKS employment with PG&E and severance therefrom, have agreed as follows:

1.  Effective close of business, 5/7/2001 Mr. HICKS was laid off from PG&E employment.

2.  Within fourteen (14) calendar days after the effective date of this Severance Agreement and Release as determined in accordance with paragraph 14 of this agreement; PG&E shall pay to Mr. HICKS the amount of $67,520.59, less applicable deductions. Mr. HICKS understands he/she is responsible for paying any taxes on the amount paid to him/her pursuant to this Severance Agreement and Release. The parties understand and agree that the payment provided in this paragraph is in addition to, and does not affect, any payment and benefit to which Mr. HICKS may be otherwise entitled under PG&E's compensation, performance incentive, stock option, and other benefit programs.

3.  Mr. HICKS represents that he/she does not have any pending claim, charge or action in or with any federal, state or local court or any administrative agency against PG&E, its officers, attorneys, agents, employees, subsidiaries, parent company, and affiliated companies.

4.  In consideration for the payment which PG&E shall provide Mr. HICKS under this Severance Agreement and Release, Mr. HICKS in behalf of his/herself, his/her heirs, estate, executors, administrators, successors, and assigns, releases and agrees to hold harmless PG&E, its officers, attorneys, agents, employees, assigns, subsidiaries, parent company, affiliated companies, and successors, from all actions, causes of action, claims, disputes, judgments, obligations, damages, liabilities of whatsoever kind and character, relating to Mr. HICKS employment with PG&E, including his/her employment severance and any action which led to the severance. Specifically, Mr. HICKS understands and agrees that the actions, causes of action, claims, disputes, judgments, obligations, damages, and liabilities covered by the preceding sentence include, but are not limited to, those arising under any federal, state, or local law, regulation, or order relating to civil rights (including employment discrimination on the basis of race, color, religion, age, sex, national origin, ancestry, physical handicap, medical condition, veteran status, marital status, and sexual orientation), wage and hour, labor, contract, or tort.

5.  Mr. HICKS understands and agrees that this Severance Agreement and Release extends to all claims of every nature and kind whatsoever, known or unknown, suspected or unsuspected, past or present, and all rights under Section 1542 of the California Civil Code are his/hereby expressly waived. Such section reads as follows:

A general release does not extend to claims which the creditor does not know or suspect to exist in his/her favor at the time of executing the release, which if known to his/her must have materially affected his/her settlement with the debtor.

6. Mr. HICKS agrees not to initiate, participate or aid, in any way, in any lawsuit or proceeding upon any claim released by him/her under this Severance Agreement and Release. Mr. HICKS understands and agrees that, if he/she violates his/her promise in the preceding sentence, he/she has engaged in a material breach of this Severance Agreement and Release. This paragraph, however, shall not prohibit Mr. HICKS from participating in an Equal Employment Opportunity Commission investigation or proceeding, if subpoenaed to do so by the Equal Employment Opportunity Commission. PG&E acknowledges that Mr. HICKS may be legally required to appear and testify at a deposition, court hearing or trial, or otherwise respond to a subpoena. In the event of any such request, Mr. HICKS shall notify PG&E Human Resources of such request.

7. Mr. HICKS represents and agrees that prior to signing this Severance Agreement and Release, he/she returned to PG&E all originals and copies of all files, memoranda, records, software, credit cards, identification cards, keys, and any other property of PG&E or its affiliates which he/she had in his/her possession, custody or control.

8. Mr. HICKS agrees not to use, disclose, publicize, or circulate any secret, confidential or proprietary information concerning PG&E, its subsidiaries, parent company, or affiliates, which has come to his/her attention during his/her employment with PG&E, unless his/her doing so is consistent with any rights he/she may have under any applicable whistleblower laws, is authorized in writing by PG&E's Human Resources Department or is required by law, including subpoena. Before making any legally-required disclosure, Mr. HICKS shall give PG&E as much advance notice as possible. Mr. HICKS further agrees that his/her violation of this paragraph shall constitute a material breach of this Severance Agreement and Release.

9. Mr. HICKS agrees that, if called upon to do so, he/she will cooperate with, and provide reasonable assistance to, PG&E to protect and further its lawful interests in all judicial, administrative, investigative, and legislative proceedings involving PG&E or any aspect of its operations. The parties agree that this paragraph does not affect Mr. HICKS's legitimate exercise of his/her rights under applicable whistleblower laws or his/her obligation to comply with all validly-issued court or administrative orders, including subpoenas. Mr. HICKS further agrees that his/her violation of this paragraph shall constitute a material breach of this Severance Agreement and Release.

10. Mr. HICKS understands and agrees that if he/she engages, or has engaged, in misconduct that would warrant his/her termination of employment under PG&E's employee conduct standards and the collective bargaining agreement's just cause standard, he/she shall forfeit his/her right to sign this Severance Agreement and Release.

11. Any dispute regarding any aspect of this Severance Agreement and Release, including its validity, interpretation, or any action which would constitute a violation of this Severance Agreement and Release (hereinafter referred to as an "arbitrable dispute") shall be resolved by an experienced arbitrator, selected by the parties in accordance with the rules of the American Arbitration Association. The fees of the arbitrator and the cost associated with producing a transcript of the proceedings shall be paid in equal shares by Mr. HICKS and PG&E. The parties agree that arbitration shall be the exclusive remedy for resolving arbitrable disputes and that the decision of the arbitrator shall be final and binding. The judgment rendered by the arbitrator on any award may be entered in any court having competent jurisdiction. The parties agree that this paragraph shall not apply to the lawful exercise of any right         Mr. HICKS may have under the Age Discrimination and Employment Act and that such matters shall be governed by the provisions of said Act.

Mr. HICKS understands and agrees that, if he/she initiates a proceeding, other than an arbitration proceeding as described above, to set aside or challenge the validity of this Severance Agreement and Release, he/she shall repay to PG&E the payment he received under this Severance Agreement and Release concurrent with his/her initiation of the proceeding. Mr. HICKS's failure to make the prescribed repayment shall be a basis for rejecting his attempt to set aside or challenge the validity of this Severance Agreement and Release. Mr. HICKS further understands and agrees that, if his/her attempt to set aside or challenge the validity of this Severance Agreement and Release is rejected, he/she shall pay to PG&E any loss, cost, damage, or expense, including, without limitation, attorney's fees PG&E incurred in the proceeding, within seven (7) calendar days from the final decision rejecting his/her attempt. Further, not withstanding the foregoing, if Mr. HICKS obtains against a monetary judgment or settlement against PG&E for a claim released by him/her under this Severance Agreement and Release, the payment he/she received under this Agreement shall be deducted from any such judgment or settlement. The parties agree that this paragraph shall not apply to the lawful exercise of any right Mr. HICKS may have under the Age Discrimination and Employment Act and that such matters shall be governed by the provisions of said Act.

12. Mr./Ms. HICKS agrees that, if he/she engages in a material breach of this Severance Agreement and Release, he/she shall repay to PG&E the payment he/she received under this Severance Agreement and Release within seven (7) calendar days upon written demand by PG&E. The parties agree that this paragraph shall not apply to the lawful exercise of any right Mr. HICKS may have under the Age Discrimination and Employment Act and that such matters shall be governed by the provisions of said Act.

13. This Severance Agreement and Release shall not be considered an admission of liability or a violation of any applicable contract, law, rule, regulation, or order of any kind.

14. Mr. HICKS understands and agrees that all claims he/she may have arising under the Age Discrimination in Employment Act before he/she signs this Severance Agreement and Release are covered by paragraphs 4 and 5 of this Severance Agreement and Release and that his/her waiver of those age discrimination claims is an integral part of the release aspect of this agreement. Therefore, consistent with the Older Workers Benefit Protection Act, Mr. HICKS states that he/she was informed that, when given this Severance Agreement and Release, he/she could take up to 45 calendar days to consider its provisions. Mr. HICKS was also advised that he/she may elect to sign this Severance Agreement and Release before the expiration of the 45-day consideration period, but is under no obligation to shorten the period. Mr. HICKS further understands that, if he/she signs this Severance Agreement and Release by affixing his/her signature and date in the "EMPLOYEE," "*Social Security*," and "DATE" sections of this agreement below, he/she may revoke it within seven (7) calendar days of the agreement's execution. To revoke this Severance Agreement and Release, Mr. HICKS must submit to the local Human Resources Department, a signed statement to that effect by close of business of the seventh (7th) day. If Mr. HICKS does not timely submit a revocation, this Severance Agreement and Release shall become effective on the eighth (8th) day after the date entered in the "DATE" section below.

15. This Severance Agreement and Release sets forth the entire agreement between the parties and fully supersedes any and all prior agreements or understandings between the parties pertaining to the subject matter of this Severance Agreement and Release. This Severance Agreement and Release, however, shall not affect any right either party has or may have against the other regarding Worker's Compensation claims and Supplemental Benefit payments made for those claims. The parties agree that this Severance Agreement and Release may not be modified or canceled in any manner except by a writing signed by Mr./Ms HICKS and an authorized PG&E official. If any provision of this release is found to be unenforceable, all other provisions will remain fully enforceable.

16. Mr. HICKS states that he/he/she has read this Severance Agreement and Release in its entirety, that he/she has been given the necessary time to consider its contents, that he/he/she fully understands its terms, that he/she has been advised that he/he/she should consult legal counsel of his/her choosing, that the only promises made to him/his/her to sign are those stated herein, and that he/he/she is signing this Severance Agreement and Release voluntarily.

4

PLEASE READ CAREFULLY. THIS SEVERANCE AGREEMENT AND RELEASE
INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.

_Arlene Lee_

PACIFIC GAS AND ELECTRIC COMPANY

EMPLOYEE

549883618

Social Security

7/2/01

DATE

6/25/01

DATE

EXHIBIT B



SEVERANCE AGREEMENT AND RELEASE

This Severance Agreement and Release is made and entered into between Mr. THOMAS KNOWLES and the Pacific Gas and Electric Company (PG&E). Mr. KNOWLES and PG&E (collectively referred to as "the parties"), in their wish to compromise, resolve, settle, and terminate any dispute or claim between them with respect to Mr. KNOWLES employment with PG&E and severance therefrom, have agreed as follows:

1. Effective close of business, 5/7/2001 Mr. KNOWLES was laid off from PG&E employment.

2. Within fourteen (14) calendar days after the effective date of this Severance Agreement and Release as determined in accordance with paragraph 14 of this agreement, PG&E shall pay to Mr. KNOWLES the amount of $58,183.24, less applicable deductions. Mr. KNOWLES understands he/she is responsible for paying any taxes on the amount paid to him/her pursuant to this Severance Agreement and Release. The parties understand and agree that the payment provided in this paragraph is in addition to, and does not affect, any payment and benefit to which Mr. KNOWLES may be otherwise entitled under PG&E's compensation, performance incentive, stock option, and other benefit programs.

3. Mr. KNOWLES represents that he/she does not have any pending claim, charge or action in or with any federal, state or local court or any administrative agency against PG&E, its officers, attorneys, agents, employees, subsidiaries, parent company, and affiliated companies.

4. In consideration for the payment which PG&E shall provide Mr. KNOWLES under this Severance Agreement and Release, Mr. KNOWLES in behalf of his/herself, his/her heirs, estate, executors, administrators, successors, and assigns, releases and agrees to hold harmless PG&E, its officers, attorneys, agents, employees, assigns, subsidiaries, parent company, affiliated companies, and successors, from all actions, causes of action, claims, disputes, judgments, obligations, damages, liabilities of whatsoever kind and character relating to Mr. KNOWLES' employment with PG&E, including his/her employment severance and any action which led to the severance. Specifically, Mr. KNOWLES understands and agrees that the actions, causes of action, claims, disputes, judgments, obligations, damages, and liabilities covered by the preceding sentence include, but are not limited to, those arising under any federal, state, or local law, regulation, or order relating to civil rights (including employment discrimination on the basis of race, color, religion, age, sex, national origin, ancestry, physical handicap, medical condition, veteran status, marital status, and sexual orientation), wage and hour, labor, contract, or tort.

5. Mr. KNOWLES understands and agrees, that this Severance Agreement and Release extends to all claims of every nature and kind whatsoever, known or unknown, suspected or unsuspected, past or present, and all rights under Section 1542 of the California Civil Code are his/hereby expressly waived. Such section reads as follows:

A general release does not extend to claims which the creditor does not know or suspect to exist in his/her favor at the time of executing the release, which if known to his/her must have materially affected his/her settlement with the debtor.

6. Mr. KNOWLES agrees not to initiate, participate or aid, in any way, in any lawsuit or proceeding upon any claim released by him/her under this Severance Agreement and Release. Mr. KNOWLES understands and agrees that, if he/she violates his/her promise in the preceding sentence, he/she has engaged in a material breach of this Severance Agreement and Release. This paragraph, however, shall not prohibit Mr. KNOWLES from participating in an Equal Employment Opportunity Commission investigation or proceeding, if subpoenaed to do so by the Equal Employment Opportunity Commission. PG&E acknowledges that Mr. KNOWLES may be legally required to appear and testify at a deposition, court hearing or trial, or otherwise respond to a subpoena. In the event of any such request, Mr. KNOWLES shall notify PG&E Human Resources of such request.

7. Mr. KNOWLES represents and agrees that prior to signing this Severance Agreement and Release, he/she returned to PG&E all originals and copies of all files, memoranda, records, software, credit cards, identification cards, keys, and any other property of PG&E or its affiliates which he/she had in his/her possession, custody or control.

8. Mr. KNOWLES agrees not to use, disclose, publicize, or circulate any secret, confidential or proprietary information concerning PG&E, its subsidiaries, parent company, or affiliates, which has come to his/her attention during his/her employment with PG&E, unless his/her doing so is consistent with any rights he/she may have under any applicable whistleblower laws, is authorized in writing by PG&E's Human Resources Department or is required by law, including subpoena. Before making any legally-required disclosure, Mr. KNOWLES shall give PG&E as much advance notice as possible. Mr. KNOWLES further agrees that his/her violation of this paragraph shall constitute a material breach of this Severance Agreement and Release.

9. Mr. KNOWLES agrees that, if called upon to do so, he/she will cooperate with, and provide reasonable assistance to, PG&E to protect and further its lawful interests in all judicial, administrative, investigative, and legislative proceedings involving PG&E or any aspect of its operations. The parties agree that this paragraph does not affect Mr. KNOWLES's legitimate exercise of his/her rights under applicable whistleblower laws or his/her obligation to comply with all validly-issued court or administrative orders, including subpoenas. Mr. KNOWLES further agrees that his/her violation of this paragraph shall constitute a material breach of this Severance Agreement and Release.

10. Mr. KNOWLES understands and agrees that if he/she engages, or has engaged, in misconduct that would warrant his/her termination of employment under PG&E's employee conduct standards and the collective bargaining agreement's just cause standard, he/she shall forfeit his/her right to sign this Severance Agreement and Release.

11. Any dispute regarding any aspect of this Severance Agreement and Release, including its validity, interpretation, or any action which would constitute a violation of this Severance Agreement and Release (hereinafter referred to as an "arbitrable dispute") shall be resolved by an experienced arbitrator, selected by the parties in accordance with the rules of the American Arbitration Association. The fees of the arbitrator and the cost associated with producing a transcript of the proceedings shall be paid in equal shares by Mr. KNOWLES and PG&E. The parties agree that arbitration shall be the exclusive remedy for resolving arbitrable disputes and that the decision of the arbitrator shall be final and binding. The judgment rendered by the arbitrator on any award may be entered in any court having competent jurisdiction. The parties agree that this paragraph shall not apply to the lawful exercise of any right Mr. KNOWLES may have under the Age Discrimination and Employment Act and that such matters shall be governed by the provisions of said Act.

Mr. KNOWLES understands and agrees that, if he/she initiates a proceeding, other than an arbitration proceeding as described above, to set aside or challenge the validity of this Severance Agreement and Release, he/she shall repay to PG&E the payment he received under this Severance Agreement and Release concurrent with his/her initiation of the proceeding. Mr. KNOWLES's failure to make the prescribed repayment shall be a basis for rejecting his attempt to set aside or challenge the validity of this Severance Agreement and Release. Mr. KNOWLES further understands and agrees that, if his/her attempt to set aside or challenge the validity of this Severance Agreement and Release is rejected, he/she shall pay to PG&E any loss, cost, damage, or expense, including, without limitation, attorney's fees PG&E incurred in the proceeding, within seven (7.) calendar days from the final decision rejecting his/her attempt. Further, not withstanding the foregoing, if Mr. KNOWLES obtains against a monetary judgment or settlement against PG&E for a claim released by him/her under this Severance Agreement and Release, the payment he/she received under this Agreement shall be deducted from any such judgment or settlement. The parties agree that this paragraph shall not apply to the lawful exercise of any right Mr. KNOWLES may have under the Age Discrimination and Employment Act and that such matters shall be governed by the provisions of said Act.

12. Mr./Ms. KNOWLES agrees that, if he/she engages in a material breach of this Severance Agreement and Release, he/she shall repay to PG&E the payment he/she received under this Severance Agreement and Release within seven (7) calendar days upon written demand by PG&E. The parties agree that this paragraph shall not apply to the lawful exercise of any right Mr. KNOWLES may have under the Age Discrimination and Employment Act and that such matters shall be governed by the provisions of said Act.

13. This Severance Agreement and Release shall not be considered an admission of liability or a violation of any applicable contract, law, rule, regulation, or order of any kind.

14. Mr. KNOWLES understands and agrees that all claims he/she may have arising under the Age Discrimination in Employment Act before he/she signs this Severance Agreement and Release are covered by paragraphs 4 and 5 of this Severance Agreement and Release and that his/her waiver of those age discrimination claims is an integral part of the release aspect of this agreement. Therefore, consistent with the Older Workers Benefit Protection Act, Mr. KNOWLES states that he/she was informed that, when given this Severance Agreement and Release, he/she could take up to 45 calendar days to consider its provisions. Mr. KNOWLES was also advised that he/she may elect to sign this Severance Agreement and Release before the expiration of the 45-day consideration period, but is under no obligation to shorten the period. Mr. KNOWLES further understands that, if he/she signs this Severance Agreement and Release by affixing his/her signature and date in the "EMPLOYEE," "*Social Security,*" and "DATE" sections of this agreement below, he/she may revoke it within seven (7) calendar days of the agreement's execution. To revoke this Severance Agreement and Release, Mr. KNOWLES must submit to the local Human Resources Department, a signed statement to that effect by close of business of the seventh (7th) day. If Mr. KNOWLES does not timely submit a revocation, this Severance Agreement and Release shall become effective on the eighth (8th) day after the date entered in the "DATE" section below.

15. This Severance Agreement and Release sets forth the entire agreement between the parties and fully supersedes any and all prior agreements or understandings between the parties pertaining to the subject matter of this Severance Agreement and Release. This Severance Agreement and Release, however, shall not affect any right either party has or may have against the other regarding Worker's Compensation claims and Supplemental Benefit payments made for those claims. The parties agree that this Severance Agreement and Release may not be modified or canceled in any manner except by a writing signed by Mr./Ms KNOWLES and an authorized PG&E official. If any provision of this release is found to be unenforceable, all other provisions will remain fully enforceable.

16. Mr. KNOWLES states that he/he/she has read this Severance Agreement and Release in its entirety, that he/she has been given the necessary time to consider its contents, that he/he/she fully understands its terms, that he/she has been advised that he/he/she should consult legal counsel of his/her choosing, that the only promises made to him/his/her to sign are those stated herein, and that he/he/she is signing this Severance Agreement and Release voluntarily.

4

PLEASE READ CAREFULLY. THIS SEVERANCE AGREEMENT AND RELEASE
INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.

_Arlene Lee_
PACIFIC GAS AND ELECTRIC COMPANY

_Tom Knowles_
EMPLOYEE

558727505
Social Security

7/6/01
DATE

6-29-01
DATE

** TOTAL PAGE.13 **

EXHIBIT C

# UNITED STATES ATTORNEY'S OFFICE
## FOR THE DISTRICT OF COLUMBIA

555 4TH STREET, NW
WASHINGTON, DC 20530
(202) 514-7566

SEARCH

HOME

U.S. ATTORNEY

ABOUT US

DIVISIONS

COMMUNITY
PROSECUTION

PROGRAMS
FOR YOUTH

VICTIM WITNESS
ASSISTANCE

PARTNERSHIPS

PRESS RELEASES

EMPLOYMENT

ESPAÑOL

CONTACT US

LINKS

SITE MAP

## LAFFEY MATRIX 2003-2008

| Experience | 03-04 | 04-05 | 05-06 | 06-07 | 07-08 |
|---|---|---|---|---|---|
| 20+ years | 380 | 390 | 405 | 425 | 440 |
| 11-19 years | 335 | 345 | 360 | 375 | 390 |
| 8-10 years | 270 | 280 | 290 | 305 | 315 |
| 4-7 years | 220 | 225 | 235 | 245 | 255 |
| 1-3 years | 180 | 185 | 195 | 205 | 215 |
| Paralegals & Law Clerks | 105 | 110 | 115 | 120 | 125 |

Years (Rate for June 1 - May 31, based on prior year's CPI-U)

**Explanatory Notes**

1   This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia. The matrix is intended to be used in cases in which a "fee-shifting" statute permits the prevailing party to recover "reasonable" attorney's fees. See, e.g., 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412 (b) (Equal Access to Justice Act). The matrix does not apply in cases in which the hourly rate is limited by statute. See 28 U.S.C. § 2412(d)

2   This matrix is based on the hourly rates allowed by the District Court in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*. 746 F.2d 4 (D.C. Cir. 1984). *cert. denied*, 472 U.S. 1021 (1985) It is commonly referred to by attorneys and federal judges in the District of Columbia as the "Laffey Matrix" or the "United States Attorney's Office Matrix." The column headed "Experience" refers to the years following the attorney's graduation from law school. The various "brackets" are intended to correspond to "junior associates" (1-3 years after law school graduation), "senior associates" (4-7 years). "experienced federal court litigators" (8-10 and 11-19 years), and "very experienced federal court litigators" (20 years or more) *See Laffey*, 572 F. Supp. at 371

3   The hourly rates approved by the District Court in *Laffey* were for work done principally in 1981-82. The Matrix begins with those rates. See *Laffey*, 572 F. Supp. at 371 (attorney rates) & 386 n 74 (paralegal and law clerk rate) The rates for subsequent yearly periods were determined by adding the change in the cost of living for the Washington, D.C. area to the applicable rate for the prior year, and then rounding to the nearest multiple of $5 (up if within $3 of the next multiple of $5). The result is subject to adjustment if appropriate to ensure that the relationship between the highest rate and the lower rates remains reasonably constant. Changes in the cost of living are measured by the Consumer Price Index for All Urban Consumers (CPI-U) for Washington-Baltimore. DC-MD-VA-WV, as announced by the Bureau of Labor Statistics for May of each year

4   Use of an updated *Laffey* Matrix was implicitly endorsed by the Court of Appeals in *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc) The Court of Appeals subsequently stated that parties may rely on the updated *Laffey* Matrix prepared by the United States Attorney's Office as evidence of prevailing market rates for litigation counsel in the Washington, D.C. area. See *Covington v. District of Columbia*. 57 F.3d 1101, 1105 & n. 14, 1109 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1115 (1996) Lower federal courts in the District of Columbia have relied upon the updated *Laffey* Matrix when determining whether fee awards under fee-shifting statutes are reasonable. See, e.g., *Blackman v. District of Columbia*, 59 F. Supp. 2d 37, 43 (D.D.C. 1999); *Jefferson v. Milvets System Technology, Inc.*, 986 F. Supp. 6, 11 (D.D.C. 1997); *Ralph Hoar & Associates v. Nat'l Highway Transportation Safety Admin.*, 985 F. Supp. 1, 9-10 n 3 (D.D.C. 1997); *Martini v. Fed. Nat'l Mtg Ass'n*, 977 F. Supp. 482. 485 n 2 (D.D.C. 1997); *Park v. Howard University*. 881 F. Supp. 653, 654 (D.D.C. 1995).

**Last Updated on 05/05/2008**

Department of Justice | USAGov | USA | Privacy Policy | PSN | PSN Grants | www.regulations.gov | Legal Policies and Disclaimers | DOJ/Kids

EXHIBIT D

*Your **continued donations** keep Wikipedia running!*

# Laffey Matrix

From Wikipedia, the free encyclopedia

The **Laffey Matrix** is a fee schedule used by many United States courts for determining the proper hourly rates for professional legal work.

## Contents

- 1 Overview
  - 1.1 Attorney fee reasonable hourly rates
  - 1.2 Calculation
- 2 Adjusted Laffey Matrix
  - 2.1 Supported by experts
- 3 References
- 4 See also

# Overview

More than one methodology may used in calculating the applicable Laffey rate, yielding somewhat different results. Courts in the United States look to the Laffey Matrix when they award attorneys' fees under a fee-shifting statute, such as the Civil Rights Attorney's Fees Awards Act.

## Attorney fee reasonable hourly rates

Guidelines for reasonable hourly rates for attorneys were set by a federal court in *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354, 371 (D.D.C. 1983), who ruled that hourly rates for attorneys practicing civil law in the Washington, DC metropolitan area could be categorized by years in practice and adjusted yearly for inflation.

The Office of the United States Attorney in the Department of Justice (DOJ) has crafted its own rules for its version of the Laffey Matrix. (US Attorney's Office, District of Columbia 2005)

After scrutinizing the DOJ's methodology of setting and adjusting hourly rates for the Matrix, reviewing recent court decisions, and contacting an expert economist, a Maryland law firm, and a number of attorneys in the Baltimore-Washington area and around the country have successfully urged courts to utilize an adjusted Adjusted Laffey Matrix. (Snider & Associates 2004)

Some California courts have accepted this methodology. In Re HPL Technologies, Inc. Securities Litigation, 366 F.Supp.2d 912, 921 (N. Dist. Cal. 2005). See also "It is the practice of the undersigned judge, however, to rely on official data to determine appropriate hourly rates, not on an attorney's self-proclaimed rates or declarations regarding hourly rates charged by law firms. One reliable official source for rates that vary by experience levels is the Laffey matrix used in the District of Columbia."

Garnes v. Barnhardt, 2006 U.S. Dist. LEXIS 5938 (N. Dist. Cal. 2006).

## Calculation

"The initial estimate of a reasonable attorney's fee "--the so-called lodestar fee--" [sic] is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." Sexcius v. District of Columbia, 839 F. Supp. 919, 921 (D.D.C. 1993) [*4] (quoting Blum v. Stenson, 465 U.S. 886, 888, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984)) aff'd Covington v. District of Columbia, 313 U.S. App. D.C. 16, 57 F.3d 1101 (D.C. Cir. 1995) (Covington II ). Hensley v. Eckerhart, 461 U.S. 424 (1983).

Normally, a prevailing party must establish a reasonable hourly rate, usually with affidavits and other evidence of the market rate. Kling v. Department of Justice, MSPB Dkt. No. AT075299048 (July 22, 1980)). "Affidavits are a particularly appropriate means of establishing the reasonableness of the amount of fees claimed. Kling, supra. A reasonable hourly rate may also be established by affidavits from other attorneys in the community with similar experience stating the rates that they charge fee-paying clients in similar cases. See Montreuil v. Department of the Air Force, 55 M.S.P.R. 685, 690-91 (1992) (citing Swanson v. Defense Logistics Agency, 35 M.S.P.R. 115, 119 (1987)).

In addition to affidavits and prior fee settlements, the Laffey Matrix is very useful as a guide to Market Rate attorney fees for the Baltimore / Washington area. The Laffey Matrix has been cited as good evidence of the Market Rate for attorneys practicing in federal employment arbitration matters. See Department of Health and Human Services, Social Security Administration and AFGE, 93 FLRR 1-4011 (1993); Department of the Treasury, Internal Revenue Service, Washington, DC and NTEU, 93 FLRR 1-1283, 48 FLRA No. 100, 48 FLRA 931 (1993); Hatfield v. Garrett, 90 FEOR 1046 (EEOC 1989).Laffey v. Northwest Airlines, Inc., 572 F.Supp. 354, 371 (D.D.C. 1983); Save Our Cumberland Mountains v. Hodel, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc).

Regarding the "updated version of the Laffey matrix," the Court in McDowell v. District of Columbia, Civ. A. No. 00-594 (RCL), LEXSEE 2001 U.S. Dist. LEXIS 8114 (D.D.C. June 4, 2001) stated in part:

"Plaintiffs may point to such [*9] evidence as an updated version of the Laffey matrix or the U.S. Attorney's Office matrix, or their own survey" to demonstrate the prevailing market rates in the community. n5 Covington II, 57 F.3d at 1109. Moreover, the plaintiffs may supplement any matrix that has been offered with "evidence of recent fees awarded by the court." Id. "Finally, the defendants may challenge plaintiff attorneys' market data, in an effort to show that the submitted market rates are inaccurate." Id. at 1110; see also Covington v. District of Columbia, 839 F. Supp. 894, 898 (D.D.C. 1993) (Covington I) (permitting defendants a chance to persuade court on what prevailing market rates are) aff'd Covington II, 313 U.S. App. D.C. 16, 57 F.3d 1101; Cf. Oil and Chemical Workers, 2001 WL 427287, at *7 (allowing the defendant to propose alternate methods of compensation for attorneys who did not meet the other factors for receiving compensation).

n5 The matrix may be found in Laffey v. Northwest Airlines, Inc., 572 F. Supp. 354 (D.D.C. 1983)

Here, while the plaintiffs do not give an updated Laffey matrix, they do cite the matrix. n6 (Plaintiffs' Motion for fees at 3). Moreover, plaintiffs also supplement their motion by presenting cases that show an increase in the Laffey scale. For example, the plaintiffs attached Dorsett to show an increase of fees to $

280 per hour. (Plaintiffs' Unpublished Cases); Dorsett v. District of Columbia, No. 00- 212, slip op. (D.D.C. Sep. 12, 2000). The plaintiffs also included Wingfield to justify a fee award of $ 335 per hour. n7 (Plaintiffs' Notice of Supp. Case); Wingfield v. District of Columbia, No. 00-121, slip op. at 6 (D.D.C. Apr. 13, 2001). Finally, recent cases such as Salazar have justified an award of $ 444 per hour and $ 369 per hour based on an updated version of the Laffey matrix. Salazar v. District of Columbia, 123 F. Supp. 2d 8, 13 (D.D.C. 2000)."

The Court in Salazar approved an updated version of the Laffey matrix, which is provided as Exhibit 1 hereto. The Laffey matrix is computed by multiplying a base hourly rate by an Adjustment Factor. The updated Laffey matrix uses more accurate, recent base hourly rates and a more accurate Adjustment Factor. The updated Laffey matrix has been cited with approval. See, e.g., McDowell v. District of Columbia, Civ. A. No. 00-594 (RCL), LEXSEE 2001 U.S. Dist. LEXIS 8114 (D.D.C. June 4, 2001) citing Salazar v. District of Columbia, 123 F. Supp. 2d 8, 13 (D.D.C. 2000).

# Adjusted Laffey Matrix

The Adjusted Laffey Matrix (utilizing the LSC CPI) is an appropriate and best measure for hourly rates for federal administrative proceedings. Usually, if no normative billing rate is available for attorneys, a reasonable hourly rate can be established by affidavits, past awards or evidence of reasonable rates in the community such as the Adjusted Laffey Matrix.

In Laffey v. Northwest Airlines, 241 U.S. App. D.C. 11, 746 F.2d 4 (D.C. Cir. 1984), the D.C. Circuit devised a matrix that established a standard hourly rate for attorneys in "the Baltimore-Washington area." See Elouise Pepion Cobell, V. Gale A. Norton, Secretary of the Interior, Civil Action Number 96-1285 (RCL), 2002 U.S. Dist. LEXIS 21726 (D.C.Cir. November 12, 2002). The D.C. Circuit has since declared that updated versions of the matrix, which adjust the rates annually for inflation, may be relied on as evidence of the prevailing market rate for attorneys in the community. Covington, 57 F.3d at 1109.

## Supported by experts

Michael Kavanaugh is an economist from Batavia, Ohio. Dr. Kavanaugh holds a Ph.D. in economics from the University of Cincinnati (1975) and a B.A. in economics form Xavier University (1970). He has taught economics at the University of Cincinnati and at Northern Kentucky University. He has worked as a natural resource and environmental economist for a variety of clients, including the U.S. Department of Justice, the U.S. Environmental Protection Agency, environmental groups and private industry for over 20 years. He has been qualified as an expert in Federal court on financial and economic matter on a number of occasions. He is the economist credited by the D.C. Circuit in the Salazar case. His explanation of the advantages of the Adjusted Laffey Matrix is as follows:

The Laffey matrix was updated to 1988-1989 rates in connection with the Save Our Cumberland Mountains v. Hodel, 857 F.2d 1516 (D.C. Cir. 1988) (en banc) litigation. The Consumer Price Index for U.S. City Average, Legal Service Fees ("Legal Services Index") maintained by the U.S. Department of Labor, Bureau of Labor Statistics is a better measure of the change in prices for legal services in Washington, D.C., than the Consumer Price Index for Washington, D.C., Maryland, Virginia, All Items ("DC Merto CPI"). He has reviewed both the update to the Laffey matrix which uses the Legal Services Index to bring 1988-1989 rates forward to present, and the update referred to as the United States Attorneys' Office Laffey matrix, which utilizes the DC Metro CPI to bring 1981-1982 rated forward to present.

Both the Legal Services Index and the DC Metro CPI are readily available and are maintained by the U.S. Department of Labor, Bureau of Labor Statistics. The underlying data are collected by the U.S. Department of Commerce, Census Bureau as part of its quinquennial census and its annual surveys. Economists use as specific an index as possible to determine changes in prices in a part of an industry, such as here changes of prices in legal services in the Baltimore- Washington area. To measure changes in an industry's prices, it is far preferable to use a specific index rather than a broad index.

The Legal Services Index is a national index that includes the metropolitan Baltimore- Washington, D.C., area. Adjusting the Laffey matrix with a national index assumes that the rate of change of prices for legal services is about the same everywhere. This is not the same thing as prices being the same everywhere. Even if prices differ in different places, the rate of change in prices is likely to be about the same. With resource mobility and the ability to communicate easily over distances, this is a plausible assumption. While it is possible for prices for the same good or service to change at different rates in different places, this is most likely to happen for goods or services for which there is only a local market because their transport is expensive relative to their value (e.g., fast food) or because communication is difficult.

The market for legal services in federal litigation in the Baltimore- Washington, D.C. area is not a local market. Therefore, it would be more appropriate to use the Legal Services Index, which captures supply and demand factors particular to the legal services market as well as inflation, as compared to the Baltimore-Washington Metro CPI, which chiefly captures inflation effects.

The Laffey matrix prepared by Dr. Kavanaugh is preferable to the United States Attorneys' Office Laffey matrix for an additional reason. The Adjusted Laffey matrix updated is based on observations from 1988-1989, whereas the United States Attorneys' Office Laffey matrix uses 1981-1982 rates as a base. In general, the more contemporary the observations, the less possibility exists for forecasting errors. Thus, the Adjusted Laffey matrix is more likely to be an accurate forecast of rates because it applies an index to more recent observations to bring rates forward to the present as contrasted to the United States Attorneys' Office Laffey matrix which uses an index to bring forward much earlier observations.

Another method is to adjust for local costs of wages to lawyers and paralegals. The Laffey Matrix can be adjusted for local costs using the Bureau of Labor Statistics data on wages paid to lawyers (occupation code 23-1011) and paralegals (occupation code 23-2011) for primary metropolitan statistical areas in each state (http://www.bls.gov).

Here is what the hourly rate Matrix looks like for June 1, 2006 to May 31, 2007 for D.C., 5 cities in California, Hartford, CT and New York City after adjustments are made for local labor costs.

| Experience | D.C. | Sacramento | San Francisco | Los Angeles | Orange County | San Diego | Hartford | New York City |
|---|---|---|---|---|---|---|---|---|
| 20+ years | $425 | $323 | $434 | $434 | $434 | $361 | $378 | $421 |
| 11-19 years | $375 | $285 | $383 | $383 | $383 | $319 | $334 | $371 |
| 8-10 years | $305 | $232 | $311 | $311 | $311 | $259 | $271 | $302 |
| 4-7 years | $245 | $186 | $250 | $250 | $250 | $208 | $218 | $243 |
| 1-3 years | $205 | $156 | $209 | $209 | $209 | $174 | $182 | $203 |

| Paralegals | $120 | $113 | $134 | $118 | $146 | $115 | $118 | $121 |
|------------|------|------|------|------|------|------|------|------|

This will need to be adjusted when the May CPI figures are available and the Laffey Matrix is updated by the US Attorney's Office and also when the BLS makes new wage data available.

## References

- US Attorney's Office, District of Columbia (2005), *Laffey Matrix 2003-5*, <http://www.usdoj.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_4.html>. Retrieved on August 17, 2006
- Snider & Associates (2004), *Adjusted Laffey Matrix*, <http://www.sniderlaw.com/laffey.html>. Retrieved on August 17, 2006

## See also

- Attorney's fee

Retrieved from "http://en.wikipedia.org/wiki/Laffey_Matrix"
Categories: Legal costs

- This page was last modified on 16 March 2008, at 03:48.
- All text is available under the terms of the GNU Free Documentation License. (See **Copyrights** for details.)
Wikipedia® is a registered trademark of the Wikimedia Foundation, Inc., a U.S. registered 501(c)(3) tax-deductible nonprofit charity.