Daniel B. Beck, Esq. (SBN: 63865)
Mahsa Gholami, Esq. (SBN: 235634)
BECK LAW, P.C.
2681 Cleveland Avenue
Santa Rosa, CA 95403
Telephone:  (707) 576-7175
Facsimile:  (707) 576-1878

Attorneys for Plaintiffs,
Thomas Knowles and Thomas Hicks

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS KNOWLES and THOMAS HICKS,<br><br>Plaintiffs,<br><br>v.<br><br>PACIFIC GAS & ELECTRIC COMPANY, DEANNA RADFORD, and DOES 1-20.<br><br>Defendants. | Case No.:  C-07-2284-CW<br><br>**DECLARATION OF MAHSA GHOLAMI, ESQ. IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT PG & E'S MOTION FOR COSTS AND ATTORNEY FEES AND PLAINTIFFS' OBJECTION TO DEFENDANT PG & E'S REQUEST FOR JUDICIAL NOTICE**<br><br>Date: June 26, 2008<br>Time: 2:00 p.m.<br>Courtroom: 2<br>Judge: Honorable Claudia Wilken |

I, Mahsa Gholami, declare as follows:

1. I am an associate with Beck Law, P.C., and an attorney of record for plaintiffs in the above-entitled matter.

2. I am competent to testify as to the matters set forth herein. If called as a witness, I could and would testify as to the matters set forth below. I have knowledge of all the matters set forth below based on first-hand personal knowledge except for the matters alleged on information and belief, and so to those matters, I believe them to be true. I make this

*Knowles & Hicks v. PG & E, et al.*  1
United States District Court Case No.: C-07-2284 CW
Plaintiffs' Objection to Defendant PG & E's Request for Judicial Notice

declaration in support of Plaintiffs' Opposition to Defendant's Motion for Attorney Fees and Costs, as well as Defendant's Request for Judicial Notice.

3. Defendant PG & E has aggressively, in both written and oral communication, made it clear that they will not agree to arbitrate Plaintiffs' claims. PG & E insists that the matters are not arbitrable because they are independent from the Severance Agreements that Plaintiffs entered into. All of PG & E's moving papers, both in federal court and arbitration, confirm their adamant protest to any connection between the Severance Agreements and Plaintiffs' claims.

4. PG & E *still disagrees* with the arbitrability of these claims. PG & E left no choice for Plaintiffs but to file in federal court since they would not agree to arbitrate the disputes. Plaintiffs filed their action in federal court because that was their only choice. PG & E would not agree to arbitrate the disputes and insisted that the issues were unrelated to the Severance Agreements. It is unreasonable, improper, contradictory, and inappropriate for PG & E to ask the Court to apply a paragraph from a document when they have aggressively argued that another paragraph from that same document was inapplicable.

5. When Plaintiffs attempted to arbitrate the dispute, PG & E's counsel told my office that the case was not arbitrable. PG & E filed a Motion to Dismiss the Arbitration based on such belief. I received a copy of such Motion to Dismiss from PG & E's counsel, addressed to Arbitrator Norman Brand. A true and accurate copy of such motion is marked as **EXHIBIT 1**, and incorporated by reference herein.

6. Plaintiffs have expended much time and money in their efforts to fight for the rights that PG & E promised them. That is all they want. Despite PG & E's statements in their moving papers that "PG & E attempted to resolve this matter without resort to courts…" (see p. 7:14-15 of Defendant's Notice of Motion and Motion for Attorney Fees), this is not true. PG & E refused to negotiate or discuss informal resolutions. All they have done is twisted this case around, using their big-firm tactics to bully Plaintiffs out of their rights that they were promised and relied upon.

*Knowles & Hicks v. PG & E, et al.*  2
United States District Court Case No.: C-07-2284 CW
Plaintiffs' Objection to Defendant PG & E's Request for Judicial Notice

7. PG & E's counsels' "billing" is also unreasonable. My office did the same type of work, yet did not incur even close to the fees that PG & E incurred. My office also had to bill for traveling. Our entire fees earned for the federal case <u>and the arbitration</u> do not come close to PG & E's demand for attorney fees. I do not find it appropriate or fair that PG & E needed five experienced attorneys from two law firms to defend this action. All of these fees are said to be earned for only reaching the Motion to Dismiss stage of the litigation. Further, PG & E's arguments and legal research were essentially duplicative from the arbitration proceedings, and therefore, PG & E did not really incur the fees they say they did. All they had to do was copy/paste their arguments from the arbitration and make some changes for the federal court. To double-bill for this now is inappropriate. Finally, Plaintiffs are regular workers and have seriously struggled to pay their fees in this action. Although PG & E hoped that they could bully Plaintiffs out of their claims, Plaintiffs did not give up. Having to pay over $70,000.00 in legal fees for work done in a Motion to Dismiss, before any depositions were even taken, is inequitable, especially since as stated above, PG & E already had many of these arguments and legal research from the arbitration proceedings.

8. PG & E has insisted that these claims have nothing to do with Plaintiffs' Severance Agreements. Now, and only because if benefits them, they want to use the Agreements to get their fees paid. They should not be permitted to contradict their arguments now.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on June 5, 2008 at Santa Rosa, California.

_____
Mahsa Gholami, Esq.
Beck Law, P.C.
Attorney for Plaintiffs

*Knowles & Hicks v. PG & E, et al.*    3
United States District Court Case No.: C-07-2284 CW
Plaintiffs' Objection to Defendant PG & E's Request for Judicial Notice

**EXHIBIT 1**


**Pacific Gas and
Electric Company**®

Darren P. Roach  77 Beale Street, B30A
Attorney at Law  San Francisco, CA 94105

Mailing Address:
P. O. Box 7442
San Francisco, CA 94120

415.973.6345
Fax: 415.973.5531

VIA FACSIMILE AND
REGULAR MAIL

June 8, 2007

American Arbitration Association
Arbitrator: Norman Brand
Case Manager: Teri Salazar
6795 North Palm Ave., 2nd Floor
Fresno, CA 93704

Re:   Thomas Knowles and Thomas Hicks v. Pacific Gas and Electric Company
      AAA No: 74 166 00039 07 TMS

## PG&E'S MOTION TO DISMISS ARBITRATION CLAIM OF THOMAS KNOWLES AND THOMAS HICKS

Dear Mr. Brand and Ms. Salazar:

**I.    INTRODUCTION**

In 1997, PG&E entered into a collectively-bargained letter agreement that provided extra employee benefits to certain IBEW employees affected by a power plant closure. Thomas Knowles and Thomas Hicks ("Claimants") were IBEW-represented employees in a job classification not within the scope of the letter agreement and not entitled to the extra benefits. Claimants sought these benefits, to no avail. In 2001, they each accepted a severance package worth more than $50,000, and they agreed to the terms of a Severance Agreement and Release (Ex. A-B) which released "all actions, causes of action, claims, disputes, judgments, obligations, damages, liabilities of whatsoever kind and character, relating to [claimants'] employment with PG&E, including his/her employment severance and any action which led to the severance," including claims for "employment discrimination on the race, color, religion, *age*. . . ."

In this arbitration, claimants seek the benefits provided in the 1997 letter agreement. They wish to use the arbitration clause in the Severance Agreement to pursue those benefits. But that clause is limited to arbitration of a provision of the Severance Agreement, and it does not apply to

Arbitration – Motion to Dismiss
6/8/2007
Page 2

require arbitration of other employment agreements. And the letter agreement does not contain a separate arbitration clause.

PG&E seeks to dismiss claimants' arbitrations claims[1] as follows:

1.  Claimants base jurisdiction to pursue arbitration on a contract clause contained in respective Severance Agreements.[2] However, they do not allege a breach of a substantive provision of that agreement. Claimants cannot use the arbitration clause of one agreement to challenge a contractual term in another agreement.

2.  Similarly, the arbitration clause permits the parties to challenge only a provision of the Severance Agreement.

3.  The Severance Agreement specifically prohibits claims for discrimination, including age discrimination. Claimants released these claims in signing the Severance Agreement.

4.  The claims are preempted by the Labor Management Relations Act, and can only be maintained, if at all, in federal court. All claims arising out of their employment are covered by a collective bargaining agreement and can only be resolved by a federal court.

5.  The claims are barred by applicable statutes of limitations.

Additionally, PG&E seeks recovery of the amount paid in severance. If the arbitrator finds that a claim is beyond the scope of the arbitration clause, then claimants have materially breached the Severance Agreement.

Finally, if the claimants filed a civil action in 2007, as indicated in written communication, then PG&E requests an appropriate order ensuring the parties are not simultaneously litigating the same claims in two forums.

PG&E files this motion in accordance with the Employment Rules and Mediation Procedures, amended and effective July 1, 2006.

II.    STATEMENT OF FACTS

A.    Knowles' and Hicks' Employment Was Governed By The Terms And Conditions Of A Collective Bargaining Agreement

Knowles and Hicks, Fleet Maintenance Mechanics, were members of the IBEW bargaining unit. The terms and conditions of their employment were governed by a collectively-bargained agreement between PG&E and the IBEW. Ex. D (excerpts). This agreement established and

---

[1] PG&E assumes claimants' claims are articulated in their January 12 claim and March 21, 2007 letter (Ex. E-F).
[2] The Severance Agreements are exactly the same, except that Knowles received $58,183.24 in severance, and Hicks received $67,520.59. For this reason, the Severance Agreements are often referred to in singular fashion.

Arbitration – Motion to Dismiss
5/8/2007
Page 3

acknowledged the IBEW as the exclusive representative "with respect to rates of pay, hours of employment and other conditions of employment" for all positions in the bargaining unit. *Id.*, §2.1.

As part of labor relationship, PG&E and the IBEW often enter into letter agreements. These letter agreements become part of and are enforceable as part of the collective bargaining agreement. *Id.*, §400.4.

**B.  Claimants Seek Enhanced Employment Benefits, But These Benefits Were Extended Only To Certain Employees In The Steam Generation Classification, Not Fleet Maintenance Classification**

Claimants refer to benefits – particularly 60-month preferential reemployment rights – provided only because of a union letter agreement.

The PG&E-IBEW collective bargaining agreement provides qualified laid off employees a 30-month period to seek rehire on a preferential basis. Ex. D, § 206.13. In a letter agreement, certain employees were granted an additional 30 months – 60 months total – to seek preferential rights to reemployment. The letter agreement provided additional benefits. Ex. C.

The scope of the Letter Agreement 97-53 is limited in two important respects:

- The Letter Agreement applied to only Steam Generation and Hydro Generation employees. Fleet Maintenance employees were never Generation employees and were never encompassed within the scope of employees entitled to the benefits. The introduction of the agreement notified employees that "This agreement applies to the Title 200 Steam Generation...and Hydro Generation employees." This was explained again in a written question-and-answer communication:

    Who is Eligible?

    To be eligible to participate in the [severance] Plan, you must be a regular employee who is represented by IBEW 1245, *in the Generation line of progression*, and located at the plant to be sold. This agreement applies to *Title 200 Steam Generation...and Hydro Generation* employees. Ex. C, Attachment 3 (italics added).

- The Letter Agreement does not contain an arbitration clause.

The Letter Agreement was finalized in *April 1997*, four years before claimants – for consideration – agreed to a release of all claims relating to their employment.

PG&E agreed to enhanced benefits for Steam Generation employees because it was concerned that skilled and knowledgeable personnel would leave the Company, which could have adversely affected its ability to safely operate the plant. PG&E attempted to ward off a "brain drain" of institutional knowledge. Ex. C.

Arbitration – Motion to Dismiss
5/8/2007
Page 4



Steam Generation refers to employees who help with the generation of power. In contrast, Knowles and Hicks were Fleet Mechanics in the General Services Department, not in the Steam Generation line of progression.

C. **Claimants Voluntarily Accepted A Severance Package After PG&E Sold The Geysers Plant**

Claimants were last employed at a power plant outside Santa Rosa, called the Geysers plant. In 1995, PG&E initiated plans to divest itself of electric generation assets. This led to Letter Agreement 97-53.

In 1999, PG&E sold the Geysers plant. As a condition of sale, PG&E was required to operate and maintain the plant for a two-year transition period. Claimants remained employed during this transition period. In 2001, they decided to accept a severance that paid more than $50,000 to each in exchange for a release of claims. Specifically, they agreed to "compromise, resolve, settle, and terminate any dispute or claim with PG&E." The release encompassed all claims, including claim for breach of contract and discrimination. Claimants agreed to release and hold PG&E harmless from any action relating to their employment, and to waive all claims, known or unknown, existing at the time they executed the agreements, including discrimination claims. Ex. A-B, ¶¶ 3-4. Claimants also agreed, "not to initiate, participate or aid, in anyway, in any lawsuit or proceeding upon any claim released by him/her...." *Id.*, ¶6.

Claimants accepted the severance and, to the best of PG&E's knowledge, elected to work for Calpine, the successor owner of the Geysers plant. They first contacted PG&E regarding employment in 2006.

### III. LEGAL ANALYSIS

Section A argues why contract principles prohibit arbitration. Section B argues preemption under the Labor Management Relations Act. Sections C-E argue further limitations on claimants' rights to pursue arbitration.

A. **The Severance Agreement Is An Unambiguous Written Contract. The Arbitration Clause Permits Arbitration Of Disputes Arising Out Of That Agreement, Not Arbitration Of All Claims Arising Out Of Employment**

  1. **Claimants' Allegations Are Beyond The Scope Of The Arbitration Clause In The Severance Agreement**

Claimants assert three claims,[2] but none of them dispute a provision of a Severance Agreement. An arbitration clause determines the scope of an arbitration, and an arbitrator may consider only disputes that are encompassed by an arbitration agreement. A party is not required to arbitrate any dispute it has not agreed to arbitrate. *See Balandran v. Labor Ready, Inc.* (2004) 124

---

[2] According to claimants' submissions (Ex. E-F), they allege breach of contract, breach of covenant of good faith and fair dealing, and age discrimination.

Arbitration – Motion to Dismiss
6/8/2007
Page 5

Cal.App.4th 1095, 1112; *Erickson, Arbuthnot, et. al v. 100 Oak St.* (1983) 35 Cal. 3d 312, 323. See Cal. Code Civ. Proc. §1286.2(a)(4).

Arbitration agreements are interpreted by assigning a plain meaning to the terms, in doing so construing words as they are understood in their ordinary and popular sense. Cal. Civil Code §1644; *Shell Oil Co. v. Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715. The construction given to a contract must effectuate the mutual intention of the parties as it existed at the time of contracting. That intent is derived from the language of the contract, and if the language is clear and explicit and does not invoke an absurdity, then it controls interpretation. Cal. Civil Code §1636; *WDT Winchester v. Nilsson* (1994) 27 Cal.App.4th 516.

In claimants' case, the parties did not agree to arbitrate disputes arising out of the employment relationship. To the contrary, the parties agreed to limit arbitration to:

> "Any dispute regarding any aspect of *this Severance Agreement and Release*, including *its* validity, interpretation, or any action which would constitute a violation of this [Agreement]." Ex. A-B, ¶11 (italics added).

Claimants do not allege breach of the Severance Agreement. Ex. E-F. More specifically, in their one-page arbitration claim, claimants allege PG&E breached "contractual obligations re: promised employment benefits and preferential rights to reemployment." Ex. D, pg. 1. But this claim is a reference to a letter agreement – which contains no arbitration clause – not to the Severance Agreement. The Severance Agreement promised no employment benefit but only monetary sum. Ex. A-B, ¶2.

Accordingly, claimants' contract claim is beyond the scope of the Severance Agreement. A contrary interpretation would unreasonably broaden the plain meaning of the agreement to permit a claim for nearly any grievance arising out of employment. This interpretation would be an impermissibly expansive reading of the arbitration clause in paragraph 11.

2. **Claimants Cannot Rely On The Arbitration Clause In The Severance Agreement To Assert A Breach Of A Separate Contract (Letter Agreement)**

This argument is closely similar to the argument above. Claimants make no reference to this letter agreement in their one-page claim (Ex. D) or in their March 28, 2007 letter. Ex. E. This is because the Letter Agreement does not contain an arbitration clause. Claimants instead attempt to use the Severance Agreement's arbitration clause to arbitrate a term of the Letter Agreement. This attempt is beyond the scope of the precise language of the Severance Agreement. ¶11. It is also not supported by any statute or case law.

3. **Claimants Provide No Basis To Arbitrate A Breach Of Oral Contract Claim**

a. **Claimants Cannot Allege The Elements Of An Oral Contract**

Claimants' March 21, 2007 letter refers to an alleged oral agreement. They allege that a human resources advisor formed an oral contract, even though the HR advisor (assuming *arguendo* she

Arbitration – Motion to Dismiss
5/8/2007
Page 6

ever spoke to claimants) immediately corrected her earlier statement and told claimants she made a mistake. Accepting these facts as true for this motion, her statements did not form an oral contract. A contract requires parties capable of contracting, the parties' consent, and sufficient consideration. Cal. Civil Code § 1550. In claimants' factual scenario, the HR advisor was not requested to or authorized to contract on behalf of the Company. Claimants also did not attempt to obtain mutual assent to an agreement. Cal.Civil Code §§1565, 1580; *In re First Capital Life Ins. Co.* (1995) 34 Cal. App. 4th 1283 (a meeting of the minds is essential to form a contract). Further, no consideration was provided for a promise. *Murphy v. T. Rowe Price Prime Res. Fund* (9th Cir. 1993) 8 F.3d 1420 (An oral agreement is not enforceable without consideration).

    b.    **The Severance Agreement Does Not Permit Arbitration Of A Separate Breach Of Oral Contract Claim**

The Severance Agreement's arbitration clause limits arbitration to disputes as to the written contract. The scope of the arbitration clause does not encompass claims based on a separate and distinct oral contract. A plain reading of contract language prohibits arbitration of this claim.

    c.    **The Parties Specifically Agreed That The Severance Agreement Was The Entire Agreement, That It Fully Superseded Prior Agreements, And That It Could Not Be Modified By An Alleged Oral Contract**

The oral contract claim is not enforceable, and any reliance on alleged oral contracts is unreasonable, because the parties agreed that the Severance Agreement could only be modified by a writing. Paragraph 15 of the Severance Agreement specifically states (emphasis added):

> This Severance Agreement and Release sets forth the entire agreement between the parties and fully supersedes all prior agreements or understandings between the parties pertaining to the subject matter of this Severance Agreement and Release. . . . The parties agree that this [Agreement] may not be modified or canceled in any manner except by a *writing* signed by [claimant] and an authorized PG&E official.

In the following paragraph (¶16), claimants agreed, "that the only promises made to him/his/her to sign are those stated herein. . . ."

A plain reading of unambiguous contract language prohibits the arbitration of an independent oral contract claim.

Claimants seem to suggest that it is enough that they unilaterally believed in the existence of an oral contract, but contract law is to the contrary and holds that the subjective intent of a party cannot create an enforceable contract. *T.M. Cobb Co. v. Sup. Ct.* (1984) 36 Cal.3d 273.

Arbitration – Motion to Dismiss
5/8/2007
PG&E Page 7

4. **Claimants' Age Discrimination Claim Is Barred By Release Language In The Severance Agreement, And Is Not Within The Scope Of Claims That Are Subject To Arbitration[4]**

AAA lacks jurisdiction to hear claimants' age discrimination because claimants specifically released the claim and because the claim is beyond the scope of the arbitration clause. The right to arbitrate a claim is waived by a release of a claim. *Gustafson v. State Farm Mut. Auto. Ins. Co.* (1973) 31 Cal.App.3d 361, 365.

Claimants received more than $50,000 consideration in exchange for the release of discrimination claims:

> In consideration for the payment which PG&E shall provide [claimant] ... [claimant] releases and agrees to hold harmless PG&E...from all actions, causes of actions...relating to [claimant's] employment with PG&E, including his/her employment severance and any action which led to the severance. Specifically, [claimant] understands and agrees that...the preceding sentence include...those arising under any federal, state, or local law, regulation, or order relating to civil rights (including employment discrimination based on race, color, religion, age...)

This clause includes age discrimination among the released claims.

On the other hand, if claimants allege the discrimination claim is not part of the released claims, then their claim is not related to any written agreement, is not within the scope of an arbitration clause, and, for these reasons, still cannot be considered an arbitrable claim. In short, they cannot allege the claim is outside the terms of the Severance Agreement but still compel contractual arbitration.

5. **Claimants' Breach Of Covenant Of Good Faith And Fair Dealing Claim Exceeds The Scope Of The Severance Agreement, Because The Parties Did Not Agree To Arbitrate Implied-In-Law Claims**

The parties never agreed to arbitrate implied claims for the covenant of good faith and fair dealing. It is an assertion of a right implied by law, for which there is a remedy, but it is not included in the parties agreement of what could be pursued in arbitration.

B. **Claims Are Preempted By Section 301 Because Each Claim Requires Analysis Of A Collective Bargaining Agreement**

Plaintiffs seek benefits provided by a union Letter Agreement, not by the Severance Agreement. Because Knowles and Hicks were members of a collective bargaining unit, and the terms and conditions of employment were governed by the PG&E-IBEW agreement, resolution of the

---

[4] Claimants did not assert a claim for age discrimination claim in their one-page claim in January 2007. It was first asserted in their March 21, 2007 letter.

claims require analysis of the collective bargaining agreement. The claims are preempted by Section 301 of the Labor Management Relations Act.

1. **Section 301 Preemption Principles**

When the basis of an employee's claims against his employer involves an alleged violation of a collective bargaining agreement, that claim is cognizable only under Section 301,[5] and all remedies not properly pursued in federal court are barred. *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103 (1962). The United States Supreme Court held:

> [T]he preemptive force of Section 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and labor organization. Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of Section 301. *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23 (1983).

Section 301's preemptive force extends beyond contract claims to any claim the resolution of which needs the interpretation of a collective bargaining agreement. *Humble v. Boeing*, 305 F.3d 1004, 1007 (9th Cir. 2002); *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 220 (1985).

Section 301 preemption applies even if – as in Knowles' and Hicks' case – a claim does not make reference to a collective bargaining agreement. Under the "artful pleading" doctrine, a claimant may not avoid Section 301 preemption by avoiding reference to the collective bargaining agreement:

> [I]f an employee attempts to escape application of Section 301 by alleging only state violations – when in fact the claims implicate the [CBA] – the employee will be subject to the artful pleading doctrine which 'requires that the state law complaint be recharacterized as one arising under the collective bargaining agreement. The case may then be adjudicated under the appropriate federal law.' [citation omitted]. In this way, an employee subject to a [CBA] will not be able to avoid the application of federal laws by filing only state claims. *Laws v. Calmat* (9th Cir. 1988) 852 F.2d 430, 432, *overruled on other grounds, Cramer v. Consol. Freightways* (9th Cir. 2001) 255 F.3d 683, 691-692.

*Laws* was confirmed in *Young v. Anthony's Fish and Grotto's, Inc.* (9th Cir. 1987) 830 F.2d 993, 997, in which the plaintiff did not reveal that her employment is governed by a collective bargaining agreement. *Id.* The court looked to the terms of the collective bargaining agreement and ruled that because the subject matter of the complaint was a job position covered by the

---

[5] Section 301 of the LMRA provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).

bargaining agreement, the oral agreement alleged could only be effective as part of the CBA. Therefore, "the collective bargaining agreement controls and the claim is preempted." *Id.*

Section 301 also prevents a plaintiff's "artful" attempts to avoid preemption by making reference to other contracts. *Young v. Anthony's Fish and Grotto's, Inc.* (9th Cir. 1987) 830 F.2d 993, 997, 1001 (oral contract); *Abreu v. Svenhard's Swedish Bakery*, 208 Cal.App.3d at 1453 (oral, written and implied contract). *See also, Aguilera v. Pirelli Armstrong Tire Corp.* (9th Cir. 2000) 223 F.3d 1010, 1015-16.

### 2. All Claims Are Preempted Because The PG&E-IBEW Collective Bargaining Agreement Is Necessary To Resolve Each Claim

#### a. Breach Of Contract Claim

Claimants seek benefits based on the PG&E-IBEW agreement and Letter Agreement. By placing at issue the terms of the collective bargaining agreement, the rights and liabilities of the parties are a product of that agreement, and this claim is preempted by Section 301. 29 U.S.C. §185; *Allis-Chalmers Corp.*, 471 U.S. at 210; *Abreu*, 208 Cal. App. 3d at 1452-53.

#### b. Breach Of The Covenant Of Good Faith And Fair Dealing Claim

A breach of covenant claim is equivalent to a claim for breach of a contractual obligation. *Foley v. Interactive Data Corp.* (1988) 47 Cal. 3d 654, 690, 696, 700. The claim is preempted just as a breach of contract claim. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. at 218-19; *Levy v. Skywalker Sound*, 108 Cal.App.4th at 763, 766 (preempted contract claims included breach of covenant claim). Allowing a plaintiff to recast contract claims as implied covenant claims would allow them to evade Section 301. *Young v. Anthony's Fish Grotto*, 830 F.2d at 1001.

#### c. Age Discrimination Claim

Discrimination claims are rarely preempted by Section 301, but they are not immune from preemption. Claimants' discrimination claim is an example of a preempted claim.

In *Audette v. ILWU* (9th Cir. 1999) 195 F.3d 1107, the plaintiffs alleged breach of a settlement agreement because they were denied sought after job status. An issue was whether benefits were denied because of gender discrimination and retaliation. *Id.* at 1113. In this context, the state law claim was not a free-standing discrimination claim but was substantially dependent of proving a violation of the agreement. The claim was preempted. *Id.*

A determining factor is whether the discrimination claim turns largely on interpretation of a collective bargaining agreement. If it does it must be litigated in federal court as a Section 301 claim. Preemption analysis does not depend on the label a plaintiff assigns a claim, but whether interpretation of the CBA is central to the claim. *Allis-Chalmers v. Lueck* (1985) 471 U.S. 202, 211; *Lingle v. Norge Div. Of Magic Chef, Inc.* (1988) 486 U.S. 399, 406.

In the current litigation, claimants' only basis for discrimination is a failure to confer benefits provided in a labor agreement. In their March 21 letter (Ex. F, pg. 4), they allege discrimination because, "PG&E has refused to honor their promises, pursuant to the benefits package," and in doing so, "PG&E discriminated against Claimants in the conditions of their re-employment." Central to the claim is the interpretation of labor contracts to determine benefits afforded to plaintiffs. Like in *Audette*, claimants made a collectively-bargained agreement essential to claim resolution. The claim specifically intertwines the terms of a labor contract with the discrimination allegations, and for this reason should be preempted.

C.  **Claimants' Section 301 Claim Is Barred By A Six-Month Statute Of Limitations**

Plaintiffs cannot state a Section 301 claim. The statute of limitations for Section 301 claims is six months. *Del Costello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 172 (1983). Claimants are not clear on when the alleged violation occurred, but it occurred before they each received a right-to-sue notice from the Department of Fair Employment and Housing. Claimants said they received these notices by April 2006, meaning that more than six months passed without filing a Section 301 claim.

D.  **The Request For Punitive Damages Do Not State A Cause Of Action**

It is unclear whether claimants present a separate cause of action for punitive damages in their March 21, letter (it was asserted in a prior court complaint). If asserted as a separate claim, the claim is improper. *Grieves v. Sup. Ct.* (1984) 157 Cal.App.3d 159, 163-64 ("There is no cause of action for punitive damages. Punitive or exemplary damages are remedies available to a party who can plead and prove the facts and circumstances set forth in Civil Code section 3294... Punitive damages are merely incident to a cause of action, and can never constitute the basis thereof.")

E.  **PG&E Is Entitled To Recover The Severance Money Paid To Claimants Because They Violated The Severance Agreement**

At the initial case management conference, the arbitrator reserved the question whether claimants violated paragraph 11 of the Severance Agreement that "if [claimant] initiates a proceeding, other than an arbitration proceeding as described above, to set aside or challenge the validity of this Severance Agreement and Release, he/she shall repay to PG&E the payment he received...." If found that claimants have initiated a claim in violation of paragraph 11, then an immediate order of repayment is warranted. Repayment is also warranted under paragraph 6, if found that claimants "initiate[d]...any lawsuit or proceeding upon any claim released by him/her under this Severance Agreement...."

F.  **Claimants Should Not Be Permitted To Litigate The Same Action In Two Forums**

Claimants written communications indicated they would file a civil action, possibly as a means of protecting legal rights. If they filed a civil action for the same violations as alleged in this arbitration, and if necessary, then PG&E requests an order that does not require the parties to simultaneously litigate the civil claim and the arbitration.

Arbitration – Motion to Dismiss
5/8/2007
Page 11

## IV. CONCLUSION

Claimants do not seek to enforce any term of the Severance Agreement and Release. They want the benefits of a Letter Agreement. They left employment and agreed to the Severance Agreement knowing they were not receiving benefits of the Letter Agreement.

The only reason the Severance Agreement is relied upon is because it contains an arbitration clause while the Letter Agreement does not. They are seeking in arbitration what was provided to others in a contract that does not have an arbitration clause. The arbitrator should prohibit this attempt and rule that the current claims are outside the jurisdiction of the AAA arbitration procedures.

PG&E reserves the right to seek judicial review of a decision. *Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 83-86.

Very truly yours,

Darren P. Roach

Enclosures

### EXHIBITS

| | |
|---|---|
| Exhibit A | Thomas Knowles – PG&E Severance Agreement (June 29, 2001) |
| Exhibit B | Thomas Hicks – PG&E Severance Agreement (June 25, 2001) |
| Exhibit C | PG&E – IBEW Letter Agreement, R3-97-53-PG&E (April 14, 1997) |
| Exhibit D | Excerpts of Collective Bargaining Agreement between PG&E and Local Union No. 1245 of the International Brotherhood of Electrical Workers |
| Exhibit E | Knowles' and Hicks' claim for arbitration (Jan. 12, 2007) |
| Exhibit F | Knowles' and Hicks' letter (March 28, 2007). |