1   LAFAYETTE & KUMAGAI LLP
    GARY T. LAFAYETTE (State Bar No. 088666)
2   SUSAN T. KUMAGAI (State Bar No. 127667)
    GLEN E. TURNER (State Bar No. 212417)
3   100 Spear Street, Suite 600
    San Francisco, California 94105
4   Telephone:   (415) 357-4600
    Facsimile:    (415) 357-4605
5   skumagai@lkclaw.com
    gturner@lkclaw.com
6
    STEPHEN L. SCHIRLE (State Bar No. 96085)
7   MARK H. PENSKAR (State Bar No. 77725)
    DARREN P. ROACH (State Bar No. 159998)
8   77 Beale Street, B30A
    P.O. Box 7442
9   San Francisco, California 94105
    Telephone: (415) 973-6345
10  Facsimile: (415) 973-5520
    dprc@pge.com
11
    Attorneys for Defendants
12  PACIFIC GAS AND ELECTRIC COMPANY and DEANNA
    RADFORD
13

14              UNITED STATES DISTRICT COURT

15          FOR THE NORTHERN DISTRICT OF CALIFORNIA

16

| | |
|---|---|
| 17  THOMAS KNOWLES and THOMAS HICKS, | Case No. C 07-2284 CW |
| 18               Plaintiffs, | **DEFENDANT PACIFIC GAS AND ELECTRIC COMPANY'S** |
| 19  vs. | **COMPENDIUM OF DOCUMENTS IN SUPPORT OF ITS REPLY TO PLAINTIFF'S OPPOSITION TO** |
| 20  PACIFIC GAS AND ELECTRIC | **DEFENDANT'S MOTION FOR COSTS AND ATTORNEY FEES** |
| 21  COMPANY, DEANNA RADFORD, and DOES 1-20, | |
| 22               Defendant. | Date:      N/A |
| 23 | Time:      N/A<br>Location:  Courtroom 2<br>Judge:     Hon. Claudia Wilken |
| 24 | |
| 25 | Amended Complaint Filed:  Dec. 5, 2007 |

26       In its reply memorandum to this motion defendant Pacific Gas and Electric Company

27  ("PG&E") has referenced several pleadings submitted earlier in this proceeding. For the

                                                                                    1

28

1    convenience of the Court and of plaintiffs' counsel, PG&E attaches the referenced pages of those

2    pleadings hereto as Attachment A to this compendium of documents.  This is not an attempt to

3    submit evidence or present argument.

4

5    DATED:  June 12, 2008                    LAFAYETTE & KUMAGAI LLP

6
                                             /s/ Glen Turner
7                                            GLEN TURNER
                                             Attorneys for Defendants
8                                            PACIFIC GAS & ELECTRIC COMPANY
                                             and DEANNA RADFORD
9

10

11                          **CERTIFICATE OF SERVICE**

12
         I certify that a copy of this document was served electronically on June 12, 2008, on
13    counsel of record in compliance with Federal Rule 5, Local Rule 5.6 and General Order 45, by
      use of the Court's ECF system.
14

15                                           /s/ Glen Turner
                                             GLEN TURNER
16

17

18

19

20

21

22

23

24

25

26

27                                                                              2

28    NDANT PACIFIC GAS AND ELECTRIC COMPANY'S COMPENDIUM OF DOCUMENTS IN
      SUPPORT OF ITS REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR
      COSTS AND ATTORNEY FEES
      Case No. C 07-2284 CW

1

**ATTACHMENT A**

2

**COMPENDIUM OF DOCUMENTS**

3

4

TABLE OF CONTENTS

5

6

DOCUMENT                                                                 Page Cited

7

8

*Defendant PG&E's Motion to Dismiss Plaintiff's Complaint*
*July 30, 2007, Pages 9-11* ............................................................. 6, 13

9

*Plaintiffs' Opposition to Defendants' Motion to Dismiss*
*August 23, 2007, Pages 12-14* ......................................................... 6

10

*Plaintiffs' Amended Complaint*

11

*December 5, 2007, Paragraphs 56-61* ............................................. 6, 7

12

*Order Granting Defendant PG&E's Motion to Dismiss With Leave to Amend*
*November 29, 2007, Page 15* ........................................................... 12

13

*Order Granting Defendant PG&E's Motion to Dismiss Without Leave to Amend*

14

*May 5, 2008, Page 16* ..................................................................... 12

15

*PG&E's Counterclaim For Breach of Contract Against Counter*
*Defendants Thomas Knowles & Thomas Hicks* ................................ 12

16

*PG&E's Reply to Opposition to Motion to Dismiss Complaint*

17

*August 30, 2007, Pages 6-11* .......................................................... 13

18

19

20

21

N:\Documents\PGE\Know\Pldg\Mot for atty fees\Compendium of documents.doc

22

23

24

25

26

27

3

28

NDANT PACIFIC GAS AND ELECTRIC COMPANY'S COMPENDIUM OF DOCUMENTS IN
SUPPORT OF ITS REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR
COSTS AND ATTORNEY FEES
Case No. C 07-2284 CW

Defendant PG&E's
Motion to Dismiss Plaintiff's Complaint
Filed July 30, 2007
Pages 9-11

1    legitimate, non-discriminatory reason for its actions if it could show they were done pursuant to

2    the terms of the CBA); Madison v. Motion Picture Set Painters and Sign Writers Local 729, 132

3    F.Supp.2d 1244, 1254, 1259 (C.D.Cal. 2000) (finding plaintiffs' race discrimination claims under

4    FEHA pre-empted by section 301 when defendant could offer a legitimate, non-discriminatory

5    reason for its actions if it could show they were done pursuant to the CBA).

6           The important principle to consider is whether plaintiffs, who are masters of their

7    complaint, chose to frame the discrimination claim so that it turns on interpretation of a collective

8    bargaining agreement. Preemption analysis does not turn on the label a plaintiff assigns a claim

9    but whether interpretation of the agreement is central to the claim. Allis-Chalmers, 471 U.S. at

10   211; Lingle, 486 U.S. at 406.

11          Here, plaintiffs' only basis for discrimination is an alleged breach of a labor agreement.

12   Central to plaintiffs' claim is the denial of a 60-month reemployment preference. Id., 44-45.

13   They allege PG&E failed to honor its promises and in so doing, "discriminated against plaintiffs

14   in the conditions of their reemployment." (Id., ¶ 47-48.) PG&E's denial of benefits was based

15   upon the CBA which did not include plaintiffs within the scope of those employees entitled to

16   increased reemployment rights. Plaintiffs' allegations and PG&E's reasons for denial benefits

17   are all intertwined with the terms of the CBA.

18          In sum, plaintiffs' claim of age discrimination against PG&E is based on an alleged denial

19   of reemployment benefits allegedly due plaintiffs under the CBA. Therefore, interpretation of

20   the CBA is required in order to resolve plaintiffs' age discrimination claim, and the claim is

21   preempted under section 301 of the LMRA.

22       **B.    Plaintiffs Waived Their Right To Sue Pursuant To The Severance
               Agreements**
23

24          Plaintiffs claim that they were wrongfully denied employment benefits to which they

25   were entitled under the CBA. However, even if, *arguendo*, plaintiffs' position is correct, which

26   PG&E denies, they waived their rights to any such employment benefits by entering into

27   Severance Agreements with PG&E.

28   ///

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

9

In California, "[t]erms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement." C.C. § 1856(a). See, also, C.C. § 1625 ("The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument.")

Further, the parole evidence rule "generally prohibits the introduction of any extrinsic evidence, whether oral or written, to vary, alter or add to the terms of an integrated written instrument." The rule applies to any type of contract, and its purpose is to make sure that the parties' final understanding, deliberately expressed in writing, shall not be changed. Iconix at 977, quoting Casa Herrera, Inc. v. Beydoun, 32 Cal.4th 336, 343 (2004).

In the current case, the Severance Agreement entered into between each plaintiff and PG&E contained an integration clause as follows:  the Agreement "sets forth the entire agreement between the parties and fully supersedes any and all prior agreements or understandings between the parties. . . ." (Ex. C-D, ¶ 14.[7])

By entering into the Severance Agreements, plaintiffs also released PG&E from all obligations, liabilities, and claims of any kind relating to the plaintiffs' employment with PG&E. (Ex. C-D, ¶¶ 4-6; see, also, Id. at ¶ 16 ("PLEASE READ CAREFULLY.  THIS SEVERANCE AGREEMENT AND RELEASE INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS").  Plaintiffs released claims for discrimination, including based on age; and/or any claim or obligation for any employment benefits, including preferential reemployment rights, based on the CBA and/or alleged oral agreement.  (Id.) (See also Linsley v. Twentieth Century Fox Film Corp., 75 Cal.App.4th 762, 769 (1999) ("A release of unlawful discrimination claims under the FEHA under the circumstances present here was fully enforceable.")).

---

[7] A district court ruling on a motion to dismiss may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiffs'] pleading." Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998) (citation omitted), superseded by statute on other grounds as recognized in Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676 (9th Cir. 2006).  In addition, defendant requests the court take judicial notice of the Severance Agreements attached to defendant's counter-claim filed herewith.

10

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
TELEPHONE (415) 357-4600
FAX (415) 357-4605

1   Further, the Severance Agreement voided any oral agreement that may have been entered

2   into after the signing of the Severance Agreement. Specifically, the signators to the Severance

3   Agreement expressly "agree[d] that this Severance Agreement and Release may not be modified

4   or canceled in any manner except by a writing signed by [plaintiff] and an authorized PG&E

5   official." Ex. C-D, ¶ 15. Such a clause nullifies any subsequent oral modification of the contract.

6   See, C.C. § 1698 ("Unless the contract otherwise expressly provides, a contract in writing may be

7   modified by an oral agreement supported by new consideration.") (Emphasis added) Marani v.

8   Jackson, 183 Cal.App.3d 695, 704 (1986) ("A contract in writing may be subsequently modified

9   by an oral agreement only if (i) the written contract does not contain an express provision

10  requiring that modification be in writing") (citation omitted).

11  The Severance Agreements superseded and replaced any alleged oral agreement made

12  prior to or after the execution of the payments. Further, plaintiffs expressly agreed to release all

13  claims against PG&E by entering into the Severance Agreements. Therefore, plaintiffs' claims

14  herein have been waived by them and they should be dismissed.

15  **C.   Plaintiffs' "Specific Performance" Count and "Malice, Oppression and Fraud" Count are Mispled Damage Prayers and Not Claims.**

16

17  Finally, plaintiffs improperly denominated certain prayers for relief as "claims."

18  Specifically, plaintiffs' Count Two is for "Specific Performance" and their Count Five is for

19  "Malice, Oppression and Fraud." Neither count states a cause of action. Rather, each count is a

20  prayer for relief.

21  Count Two for specific performance does not state a cause of action under California law.

22  See Harara v. ConocoPhillips Co., 377 F.Supp.2d 779, 796, (N.D. Cal. 2005), citing 5 Witkin,

23  California Procedure, Pleading § 740 (4th ed. 1997) ("Specific performance is a form of

24  contractual relief, not an independent claim."). Similarly, as to Count Five, "[t]here is no cause

25  of action for punitive damages. Punitive or exemplary damages are remedies. . . . Punitive

26  damages are merely incident to a cause of action, and can never constitute the basis thereof."

27  Grieves v. Sup. Ct., 157 Cal.App.3d 159, 163-4 (1984).

28  ///

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

11

**Plaintiffs' Opposition to
Defendants' Motion to Dismiss
Filed August 23, 2007
Pages 12-14**

Here, Plaintiffs are claiming that the Severance Agreements are ambiguous and were not integrated written instruments. The 60 month right to re-employment does not alter or contradict the Severance Agreements. It was only an additional term of the parties' agreement. [*see Masterson v. Sine* (1968) 68 C2d 222, 225; *Bionghi v. Metropolitan Water Dist. of So. Calif.* (1999) 70 CA4th 1358, 1364; *Pacific State Bank v. Greene* (2003) 110 CA4th 375, 379] The Severance Agreements were not a final expression of the parties' agreement. Both parties understood that the 60 month right to re-employment would be part of their agreement.

Even if Defendant PG & E claims that their written agreement was final and complete, it was only final and complete with respect to a particular term, rather than the agreement in its entirety. In such a situation, the parol evidence rule bars extrinsic evidence *only as to those matters determined to be partially integrated.* [*see Masterson v. Sine* (1968) 68 C2d 222, 225; see also *Wallis v. Farmers Group, Inc.* (1990) 220 Cal.App.3d 718, emphasis added] Although parol evidence cannot be offered to *contradict* the terms of even a partially integrated writing [*Esbensen v. Userware Int'l, Inc.* (1992) 11 CA 4th 631, 638], "*extrinsic evidence may be used to prove elements of the agreement not reduced to writing.*" [*see Hayter Trucking, Inc. v. Shell Western E & P, Inc.* 18 CA4th 1, 14, emphasis added]

Defendant PG & E quotes *Casa Herrera, Inc. v. Beydoun* in support of their argument that the parol evidence rule "generally prohibits the introduction of any extrinsic evidence." [(2004) 32 Cal.4th 336, 343] However, *Casa Herrera, Inc.* also says that such rule "does *not prohibit* the introduction of extrinsic evidence to explain the meaning of a written contract if the meaning urged is one to which the written contract terms are reasonably susceptible." [*Id.*, emphasis added]

Defendant PG & E laboriously argues that Plaintiffs agreed to be bound by the severance agreement, that Plaintiffs understood each and every clause contained therein, and that Plaintiffs released all "known and unknown claims" when they entered into such agreement. Several terms of the Severance Agreements are vague and ambiguous, and require interpretation. The Court can consider whether the contract, considered in its entirety, is unduly conscionable. [*see Allan v. Snow Summit, Inc.* (1996) 51 C.A.4th 1375] Among the factors accorded great weight in determining whether the contract meets the adhering party's reasonable expectations is notice. Here, Plaintiffs were induced to enter the Severance Agreements because they were promised that they would get their 60 month right to re-employment. They did not enter into the

*Knowles & Hicks v. PG & E, et al.*                                          12
United States District Court Case No.: C-07-2284
Plaintiffs' Opposition to Motion to Dismiss

1   agreements until such condition was met. Plaintiffs did not have the notice required because as

2   far as they were concerned, their right to re-employment was guaranteed. [Id.]

3       After determining that a contract is an adhesion contract, analysis as to its enforceability

4   is required. "[A] contract of adhesion is fully enforceable according to its terms [citations]

5   *unless* certain other factors are present which, under established legal rules-legislative or

6   judicial-operate to render it otherwise." [Id., *quoting from Graham v. Scissor-Tail, Inc.*, 28

7   Cal.3d 807, 819-820, emphasis added] Factors which may preclude enforcement of an adhesion

8   contract are as follows: First, when the contract "does not fall within the *reasonable expectations*

9   of the weaker or 'adhering' party [Plaintiffs], and, even if it does, second-a principle of equity

10  applicable to all contracts generally, when the contract is, considered in its context, ... *unduly*

11  *oppressive or 'unconscionable.'"* [Id., *quoting from Graham v. Scissor-Tail, Inc.*, 28 Cal.3d 807,

12  819-820, emphasis added] The Severance Agreements were adhesion contracts that left

13  Plaintiffs without the requisite notice or reasonable expectations that they were entitled to

14  receive. The Agreements' "release of all known and unknown claims" is unduly oppressive and

15  unconscionable.

16      California Civil Code § 1542 states in its entirety: "A general release *does not extend* to

17  claims which the creditor does not know or suspect to exist in his or her favor at the time of

18  executing the release, which if known by him or her must have materially affected his or her

19  settlement with the debtor." (emphasis added) Here, Plaintiffs were promised a 60 month right

20  to re-employment and justifiably relied on such agreement when they entered into the Severance

21  Agreements. The "release of all known *and unknown* claims" clause does not extend to claims

22  that Plaintiffs did not know or suspect to exist at the time of executing the release. At that point,

23  Plaintiffs believed that they were already receiving the 60 month right to re-employment, so any

24  "release of all claims" related to other benefits or claims, not their right to re-employment.

25      The mere use of the phrase "unknown claims" in a release does not itself suffice to

26  discharge unknown claims; rather, there must be evidence apart from the words of the release to

27  indicate the parties intended to cover unknown claims. [*see Casey v. Proctor* (1963) 59 C2d 97,

28  109-113] Even an enforceable release is subject to ordinary contract defenses, such as lack of

    consideration, lack of mutual assent, fraud, or undue influence. A release may also be ruled

    unenforceable to the extent the alleged releaser (Plaintiffs) were under a misapprehension, not

    due to their own neglect, as to the nature and scope of the release, and this misapprehension was

*Knowles & Hicks v. PG & E, et al.*                    13
United States District Court Case No : C-07-2284
Plaintiffs' Opposition to Motion to Dismiss

1    induced by misconduct of the releasee (PG & E). [*see Casey v. Proctor* (1963) 59 Cal.2d 97,

2    103; *see also Raynale v. Yellow Cab Co.*, 115 Cal. App. 90 (fraud); *Meyer v. Haas*, 126 Cal. 560

3    (misrepresentation as to the contends of the release); *Mairo v. Yellow Cab Co.*, 208 Cal.350; *M.*

4    *G. Chamberlain & Co. v. Simpson*, 173 Cal.App.2d 263, 276 (deception); *Jordan v. Guerra*, 23

5    Cal.2d 469 ('overreaching')] Here, Plaintiffs are claiming fraud, malice, and oppression against

6    Defendant PG & E.

7        Defendant PG & E's agreement is unconscionable and one-sided. Read literally, it

8    prevents Plaintiffs from ever challenging the agreement, even if Plaintiffs do not receive what

9    they were promised in the agreement since any challenge or dispute to the agreement is suddenly

10   a "breach." Such circular and self-serving wording is unconscionable and fails to provide

11   Plaintiffs with notice.

12       Plaintiffs were induced to enter into the Severance Agreements because they were orally

13   promised that they would receive the 60 month right to re-employment just like all of the power

14   generation employees. This was because for all purposes of the divestiture, they were treated as

15   power generation employees. Initially, they did not receive the 60 month right to re-employment

16   and because of that, they did not sign the Severance Agreements. Once such right was

17   eventually given, they agreed to sign the Agreements.

18       As discussed above, not all terms of the parties' agreement were reduced to writing. The

19   issue of the Plaintiffs' right to re-employment is silent in the Severance Agreements. It was

20   orally promised to Plaintiffs prior to entering into the Severance Agreements, and Plaintiffs

21   should be permitted to prove such agreement before a trier of fact Such ruling is improper at

22   this point in the action, before any discovery has commenced, in a Motion to Dismiss. The

23   determination of the facts and circumstances of this case should not be left up to the trier of fact,

     not decided by a Motion to Dismiss.

24   ////

25   ////

26

27

28

*Knowles & Hicks v. PG & E, et al.*                14
United States District Court Case No.: C-07-2284
Plaintiffs' Opposition to Motion to Dismiss

**Plaintiffs' Amended Complaint
Filed December 5, 2007
Paragraphs 56-61**

### FIFTH CAUSE OF ACTION

#### FRAUD
#### (Against Defendants PG & E and Radford)

55. Plaintiffs incorporate by reference paragraphs 1 through 54 of this Complaint as though fully set forth herein

56. Defendants PG & E and Radford entered into an agreement with Plaintiffs, orally promising to provide Plaintiffs with a 60 month right to re-employment. Defendants PG & E and Radford made this oral agreement in order to induce Plaintiffs into entering Severance Agreements.

57. Defendants PG & E and Radford had no intention of providing Plaintiffs with a 60 month right to re-employment, and made a material misrepresentation in order to force Plaintiffs to comply with what they wanted. Initially, Defendant PG & E did not want to give Plaintiffs a 60 month right to re-employment. However, Plaintiffs pushed for this benefit and eventually, Defendants PG & E and Radford agreed to Plaintiffs' terms in order to make the problem go away and cause Plaintiffs to do what Defendant PG & E wanted during the O & M period.

58. Defendants PG & E and Radford represented to Plaintiffs that they would be entitled to a 60 month right to re-employment. This was a misrepresentation because Defendants PG & E and Radford never intended to honor their agreement and knew from the moment they entered into the agreement that they had no intention of honoring it. Defendants PG & E and Radford had knowledge of the falsity of such representation and made such misrepresentation with the intent to defraud Plaintiffs and cause them into entering into Severance Agreements and working during the O & M period.

59. This misrepresentation was material since it caused Plaintiffs into entering Severance Agreements with Defendant PG & E and not requesting their re-employment rights until shortly before the 60 month period had elapsed. In 2001, Plaintiffs entered into

Severance Agreements. Due to Defendants' misrepresentation, Plaintiffs were denied their right to preferential re-employment with Defendant PG & E when they elected such right shortly before the 60 month period had elapsed. A reasonable person would attach importance to this material fact in determining his choice of action in such a transaction. Further, Plaintiffs waited until shortly before the 60 month period had elapsed, and had they not been defrauded, they would have elected for their right earlier; or in the alternative, they would have never entered into the Severance Agreements. On or about April 6, 2005, Plaintiffs requested that Defendant PG & E perform under the agreement, only to be told that they would not be entitled to re-employment rights.

60. Defendants PG & E and Radford made this representation with knowledge of its falsity. They had no intention on performing the terms and conditions of their oral agreement. The representation was made with the intent to induce Plaintiffs to act upon it, enter into Severance Agreements, and work during the O & M period.

61. Plaintiffs entered into the Severance Agreements and worked during the O & M period in "justifiable reliance" upon Defendants' PG & E and Radford's representation.

62. As a result of reliance upon the false representation, Plaintiffs have suffered damages in an amount to be proven.

63. Defendants PG & E and Radford knew that Plaintiffs would not have sought, obtained, and continued their employment had they known that Defendants were not intending to fulfill their promise of re-employing Plaintiffs. Both Plaintiffs were employees of Defendant PG & E for over twenty years, and had seniority rights. Defendants PG & E and Radford did not want to honor such seniority rights, and hoping that Plaintiffs would give up, denied Plaintiffs their given rights to re-employment.

64. In doing the acts herein alleged, Defendants PG & E and Radford acted with fraud, causing Plaintiffs to lose their preferential rights to re-employment, accounting for a substantial amount of loss of earnings and benefits, in an amount to be proven. Further,

*Knowles & Hicks v. PG & E, et al*                                14
Northern District Court of California, C-07-2284-CW
Amended Complaint

Order Granting Defendant PG&E's
Motion to Dismiss With Leave to Amend
Filed November 29, 2007
Page 15

making this determination, the court distinguished between
"free-standing claim[s] of discrimination" and claims that
substantially depend on interpretation of the CBA. Id.

Plaintiffs' FEHA claims are similar to the FEHA claims raised
in Audette. As in Audette, the resolution of Plaintiffs'
discrimination claims turns on PG&E's offer of a "legitimate
nondiscriminatory reason" requiring interpretation of the CBA.
Plaintiffs concede that PG&E's failure to re-employ them was an
attempt "to save [PG&E] additional expense of employing these
plaintiffs since such re-employment would cause other employees'
positions to be reclassified and moved" in violation of the CBA.
(Compl. at ¶ 54.) Thus, PG&E could refute Plaintiffs' age
discrimination claim by offering a legitimate non-discriminatory
reason for its employment decision based on the CBA. Accordingly,
PG&E's motion to dismiss Plaintiffs' fourth claim is granted.
Plaintiffs are granted leave to amend to restate this claim under
§ 301.

    E.    Fifth Claim: Malice, Oppression and Fraud.

Citing Grieves v. Sup. Ct., 157 Cal. App. 3d 159, 163-4 (1984),
PG&E moves to dismiss Plaintiffs' fifth claim for malice, oppression
and fraud on the ground that it states a prayer for relief, not a
cause of action. Plaintiffs characterize this claim as a claim for
fraud based upon representations PG&E made in connection with the
re-employment benefits and argue that it is not preempted because it
does not depend on any contractual provision of the CBA. PG&E
replies that, to extent that Plaintiffs' claim states a fraud count,
the claim should be dismissed because Plaintiffs fail to meet the

15

Order Granting Defendant PG&E's
Motion to Dismiss Without Leave to Amend
Filed May 5, 2008
Page 16

1 on arguments made by PG&E regarding the proper procedure to pursue
2 Plaintiffs' claims.  Therefore, Plaintiffs' argument for equitable
3 estoppel fails.

4              b.   Equitable Tolling

5       As stated previously, equitable tolling focuses on whether
6 there was excusable delay by the plaintiff and may be applied if,
7 despite all due diligence, a plaintiff is unable to obtain vital
8 information bearing on the existence of his claim.  Huseman, 471
9 F.3d at 1120.  Plaintiffs do not allege that they were unable to
10 obtain vital information bearing on the existence of their LMRA
11 claim.  Therefore equitable tolling does not apply, and Plaintiffs'
12 LMRA claims against PG&E must be dismissed as time-barred.

13      B. Fraud

14      In the November 29, 2007 Order, the Court granted Plaintiffs
15 leave to amend to plead a fraud claim with the particularity
16 required by Rule 9(b).  (November 29, 2007 Order at 17.)  Such
17 allegations must be "specific enough to give defendants notice of
18 the particular misconduct which is alleged to constitute the fraud
19 charged so that they can defend against the charge and not just
20 deny that they have done anything wrong."  Semegen v. Weidner, 780
21 F.2d 727, 731 (9th Cir. 1985).  Statements of the time, place and
22 nature of the alleged fraudulent activities are sufficient, Wool v.
23 Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir. 1987)
24 (superseded on other grounds), provided the plaintiff sets forth
25 "what is false or misleading about a statement, and why it is
26 false."  In re GlenFed, Inc., Sec. Litig., 42 F.3d 1541, 1548 (9th
27 Cir. 1994) (superseded on other grounds).

28                                16

**PG&E's Counterclaim for
Breach of Contract Against
Counter Defendants
Thomas Knowles & Thomas Hicks
Filed July 30, 2007
Paragraphs 6-23**

1    Counterclaimant Pacific Gas and Electric Company ("PG&E") alleges as follows:

2                              **FIRST CAUSE OF ACTION**
                                   **(Breach of Contract)**
3

4        1.       Counterclaimant PG&E is a regulated utility that provides gas and electric power

5    to Northern and Central California. PG&E is a California corporation with its principal place of

6    business in San Francisco, California

7        2.       This Court has jurisdiction to adjudicate this matter because a defendant may, and

8    in some cases must, state a counterclaim it possesses against any opposing party if the claim

9    arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.

10   (Federal Rules of Civil Procedure 13)  The damages requested by PG&E exceed $50,000.00 per

11   counterdefendant.

12       3        This Court is the proper court because of operation of Federal Rules of Civil

13   Procedure 13, and because the contracts at issue in this action were executed in Northern

14   California

15       4.       Counterdefendants Thomas Knowles ("Knowles") and Thomas Hicks ("Hicks")

16   are former PG&E employees  They were employed as Fleet Maintenance mechanics and were

17   members of a bargaining unit represented by the Local Union Number 1245 of the International

18   Brotherhood of Electrical Workers ("IBEW")  While employed by PG&E, Knowles and Hicks'

19   employment was governed by the terms of an agreement between Pacific Gas and Electric

20   Company and the IBEW ("the CBA").

21       5.       On or about May 7, 2001, Knowles and Hicks were laid off.

22       6.       Knowles and Hicks each entered into a Severance Agreement and Release with

23   PG&E, which agreement related to his separation from PG&E   Among other things, Knowles

24   and Hicks each agreed to release PG&E from any claims, rights or privileges that they may have

25   had relating to their employment with PG&E in exchange for valuable consideration. The

26   valuable consideration included the cash payment of $58,183.24 to Knowles and $67,520.59 to

27   Hicks. (Exhibit "A," Knowles' Severance Agreement and Release, Pg. 1; Exhibit "B," Hicks'

28   Severance Agreement and Release, Pg. 1 (collectively referred to herein as the "Severance

LAPAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

2

PG&E'S COUNTERCLAIM FOR BREACH OF CONTRACT AGAINST COUNTER-
DEFENDANTS THOMAS KNOWLES AND THOMAS HICKS
Case No  C07-2284 JCS

1    Agreements").)

2        7.    Under the Severance Agreements, Knowles and Hicks each agreed to hold PG&E

3    harmless from actions, causes of action and claims relating to his employment with PG&E

4    including those arising under federal, state or local laws relating to employment discrimination

5    based on age, contract or tort. (Severance Agreements, ¶ 4) Further, each counterdefendant

6    understood the release extended to all claims whatsoever, known or unknown under section 1542

7    of the California Civil Code. (Severance Agreements, ¶ 5)

8        8    In Paragraph 6 of the Severance Agreements, the Knowles and Hicks each

9    promised "not to initiate, participate or aid, in any way, in any lawsuit or proceeding upon any

10    claim released by him/her under this Severance Agreement and Release." They agreed that a

11    violation of this paragraph constituted a material breach of the Severance Agreements.

12    (Severance Agreements, ¶ 6)

13        9    In Paragraph 11 of the Severance Agreements, Knowles and Hicks agreed that if

14    they initiated a proceeding, other than a contractually-defined arbitration proceeding, that each

15    would repay the amount he received under the Severance Agreements. They also agreed that in

16    the event of a failed challenge to the Severance Agreements, they each would "pay PG&E any

17    loss, cost, damage, or expense, including, without limitation, attorneys' fees PG&E incurred in

18    the proceeding    ." (Severance Agreements, ¶ 11)

19        10.    In Paragraph 12 of the Severance Agreements, Knowles and Hicks agreed to repay

20    to PG&E the valuable consideration received in exchange for the promises made by each of them

21    in the event of a material breach of the Severance Agreements

22        11.    In Paragraph 15, Knowles and Hicks agreed that the Severance Agreements fully

23    superseded any and all prior agreements and understandings, and that any future agreements had

24    to be contained in a writing executed by an authorized PG&E official. In Paragraph 16, Knowles

25    and Hicks agreed that they understood the terms of the Severance Agreements, had been advised

26    to seek legal counsel of their choosing, and that the only agreements made are those contained in

27    the Severance Agreements (Severance Agreements ¶¶ 15-16) Finally, Knowles and Hicks were

28    warned as follows: "PLEASE READ CAREFULLY. THIS SEVERANCE AGREEMENT

3

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

1    AND RELEASE INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS."

2    (Severance Agreements Pg. 5)

3        12.    Counterclaimant PG&E has performed all the terms and conditions required of it

4    under the terms of the Severance Agreements and PG&E detrimentally relied upon Knowles' and

5    Hicks' promises and representations reflected in the Severance Agreements.

6        13.    Counterdefendants Knowles and Hicks initiated an action against PG&E in this

7    Court entitled *Thomas Knowles and Thomas Hicks v. Pacific Gas And Electric Company,*

8    *Deanna Radford, and Does 1-20*, Action No. C 07-2284 on April 17, 2007, claiming breach of

9    contract, breach of the covenant of good faith and fair dealing, and age discrimination (the

10    "underlying action"). Counterdefendants' lawsuit seeks damages for alleged denial of

11    employment benefits.

12        14.    The filing of the underlying action constitutes a material breach of the Severance

13    Agreements by Knowles and Hicks.

14        15.    Each of the counterdefendants knew or should have known that the initiation of

15    the underlying action would constitute a material breach of the Severance Agreements.

16        16.    As a direct, foreseeable and proximate result of counterdefendants' material

17    breach of the Severance Agreements, counterclaimant PG&E has been damaged in amounts to be

18    proven, including the valuable consideration paid to counterdefendants pursuant to the Severance

19    Agreements and costs, interest and attorneys fees.

20                        **SECOND CAUSE OF ACTION**
                    **(Breach of the Covenant of Good Faith and Fair Dealing)**
21

22        17.    Counterclaimants incorporate by reference paragraphs 1 through 16 of this

23    counterclaim as though fully set forth herein.

24        18.    PG&E paid valuable consideration to Knowles and Hicks in exchange for releases

25    of claims.

26        19.    The Severance Agreements entered into by countercomplainant PG&E and

27    counterdefendants Knowles and Hicks each contained an implied covenant of good faith and fair

28    dealing, which obligated counterdefendants, and each of them, to perform the terms and

4

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

1  conditions fairly and in good faith, and refrain from doing any act that would prevent or impede,

2  or deprive counterclaimant of the benefits of the contract.

3       20.    Counterclaimant performed all of the duties and conditions of the Severance

4  Agreements. Counterclaimant relied upon counterdefendants' promises and assurances to honor

5  their promises contained in the Severance Agreements. Counterdefendants knew that

6  counterclaimant fulfilled all of its duties and conditions under the Severance Agreements.

7       21.    Counterdefendants Knowles and Hicks breached the implied covenant of good

8  faith and fair dealing under the Severance Agreements by filing the underlying action seeking

9  alleged employment benefits, claims that counterdefendants expressly released upon execution of

10  the Severance Agreements

11       22.    Counterdefendants' bad faith conduct caused counterclaimant to incur losses

12  including valuable consideration paid to counterdefendants for release of claims contained in the

13  Severance Agreements and attorneys fees, interest and costs.

14       23.    As a proximate result of counterdefendants' breach of the implied covenant of

15  good faith and dealing, counterclaimant continues to suffer consequential economic damages.

16       WHEREFORE, Counterclaimant prays for judgment as follows:

17       1.     Dismissal of the underlying action filed by counterdefendants;

18       2.     Damages in the amount of the valuable consideration paid to each

19  counterdefendant, plus interest;

20       3      Costs of suit and attorney fees; and

21       4.     Such other relief as the Court may see fit to grant.

22  Dated: July 30, 2007              LAFAYETTE & KUMAGAI LLP

23                                    /s/ Susan T. Kumagai
24                                    SUSAN T. KUMAGAI
                                      Attorneys for Defendant and Counterclaimant
25                                    PACIFIC GAS & ELECTRIC COMPANY

26  PGE\Know\Pldg\Counter-claim.doc

27

28
                                                                              5

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

PG&E's Reply
to Opposition to
Motion to Dismiss Complaint
Filed August 30, 2007
Pages 6-11

1    (Opposition, 8:21-2.)

2        All preemption arguments discussed above are equally applicable to Plaintiffs' breach of

3    covenant claim.[3]

4        **4.    Plaintiffs' Age Discrimination Claim is Subsumed in Their Contract Claim.**

5        In <u>Lingle v. Norge Division of Magic Chef, Inc.</u>, 486 U.S. 399 (1988), cited by Plaintiffs,

6    the "purely factual" question of whether and how the employer had fired its employee did "not

7    turn on the meaning of any provision of a collective-bargaining agreement." <u>Id.</u> at 407.

8    Plaintiffs here seek re-employment preferences to which they are not entitled under the CBA. As

9    stated by Plaintiffs, "[i]nvestigation of this claim is a factual question based on their age and *the*

10   *specific motivation of Defendant PG & E for not honoring their oral promise . . . .*" (Opposition,

11   9:13-14) (emphasis added). The "oral promise" is the alleged promise of a 60-month

12   reemployment preference. Plaintiffs' statement conspicuously omits that interpretation of the

13   CBA is required to determine, among other things, whether Plaintiffs even fall within the

14   classification of employees entitled to enhanced re-employment benefits.

15       Plaintiffs' age claim requires interpretation of the CBA and, therefore, is preempted.

16   **B.    Plaintiffs' Released Their Contract Claims.**

17       **1.    The Severance Agreements Were Fully Integrated.**

18       The integration clause of the Severance Agreements provides that "[t]his Severance

19   Agreement and Release sets forth the entire agreement between the parties and fully supersedes

20   any and all prior agreements or understandings between the parties pertaining to the subject

21   matter of this Severance Agreement and Release." (Exh. C-D, Severance Agreements, ¶ 15.)

22   Nevertheless, Plaintiffs allege, with no specification, that "the parties had not incorporated all of

23   the terms of their agreement into the Severance Agreements." (Opposition, 11:17-18.) Even less

24   explicable is Plaintiffs' assertion that the Severance Agreements are "only final and complete

25   with respect to a single term" (which term Plaintiffs failed to identify). (Opposition, 12:8-9.)

26

27

28   [3] Contrary to Plaintiffs' erroneous inference, PG&E's counterclaim is based on the Severance Agreements, not the CBA. Therefore, PG&E's breach of covenant claim is proper and any claim of preemption is inapplicable

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

1    The Agreements' integration clause is clear and unambiguous and, therefore, plaintiffs are

2  barred from any attempt to show a contrary interpretation. Sunniland Fruit, Inc. v. Verni, 233

3  Cal.App.3d 892, 898 (1991).

4          2.     **The Severance Agreement is a Valid Release of All Claims.**

5                 a)     **The Severance Agreement specifically and generally released**
                        **all claims Plaintiffs raise in this action.**

6    "A broadly worded release covers all claims within the scope of the language, even if the

7  particular claim is not expressly listed." Edwards v. Arthur Andersen LLP, 47 Cal.Rptr.3d 788,

8  807 (2006) (review granted); see also Bardin v. Lockheed Aeronautical Systems Co., 70

9  Cal.App.4th 494, 505 (1999) ("Appellant argues that the release does not expressly release

10  respondents from disseminating false or baseless statements. We do not find that limitation in the

11  language of the release. It broadly and unambiguously releases a former employer '*from any and*

12  *all liability for damage of whatever kind....*'") (emphasis in original).

13    By entering into the Severance Agreements, each Plaintiff agreed, in exchange for a cash

14  payment, to:

15
16        Release[] and agree[] to hold harmless PG&E . . . from all actions, causes
          of action, claims, disputes, judgments, obligations, damages, liabilities of
17        whatsoever kind and character, <u>relating to [Plaintiff's] employment</u> with
          PG&E, <u>including his/her employment severance</u> and any action which led
18        to the severance. Specifically, [Plaintiff] understands and agrees that the
          actions, causes of action, claims, disputes, judgments, obligations,
19        damages, and liabilities covered by the preceding sentence include, but are
          not limited to, those arising under any federal, state, or local law,
20        regulation, or order relating to civil rights (including <u>employment</u>
          <u>discrimination</u> on the basis of race, color, religion, age, sex, national
21        origin, ancestry, physical handicap, medical condition, veteran status,
          marital status, and sexual orientation), wage and hour, labor, <u>contract</u>, or
22        <u>tort</u>."

23  (Exs. C-D, ¶ 4) (emphasis added); see also Id. at ¶ 16 ("PLEASE READ CAREFULLY. THIS

24  SEVERANCE AGREEMENT AND RELEASE INCLUDES A RELEASE OF ALL KNOWN

25  AND UNKNOWN CLAIMS").

26    Plaintiffs contend without explanation, that their claim to re-employment preference is not

27  part of "all claims" released. Plaintiffs apparently believe that because the words "right to re-

28  employment" are not contained in the Severance Agreements, their claim to this right was

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

1  unknown at the time of execution. (Opposition, p. 11.) However, the plain language of the

2  Agreement expressly released any claim related to Plaintiffs' employment or severance,

3  including those sounding in discrimination, contract or tort. Further, even if, _arguendo_, the

4  subject release was not specific to Plaintiffs' claims raised herein, California law firmly

5  establishes that general releases are valid and that broadly-worded releases cover specific claims

6  not mentioned by name.

7       Here, in exchange for consideration of over $58,000 each in cash payment, each Plaintiff

8  knowingly and specifically agreed to release claims based on their employment, sounding in

9  contract, tort or discrimination.

10              **b)      The Parol Evidence Rule Bars Consideration of the Oral
                         Contract Alleged by Plaintiffs.**

11     In California, "[t]erms set forth in a writing intended by the parties as a final expression

12 of their agreement with respect to such terms as are included therein may not be contradicted by

13 evidence of any prior agreement or of a contemporaneous oral agreement." C.C.P. § 1856(a).

14 The Parole Evidence Rule applies:

15              . . . if the following two inquiries are answered affirmatively: "1) was the
                writing intended to be an integration, i.e., a complete and final expression
16              of the parties' agreement, precluding any evidence of collateral
                agreements; _and_ 2) is the agreement susceptible of the meaning contended
17              for by the party offering the evidence?

18 Iconix, Inc. v. Tokuda, 457 F.Supp.2d 969, 977 (N.D.Cal. 2006), quoting Wang v. Massey

19 Chevrolet, 97 Cal.App.4th 856, 873 (2002) (citation omitted).

20     Here, the Severance Agreement contains an unambiguous integration clause which "sets

21 forth the entire agreement between the parties and fully supersedes any and all prior agreements

22 or understandings between the parties. . . .," (Ex. C-D, ¶ 14). Therefore, Plaintiffs cannot

23 establish the first prong of elements necessary to proffer evidence of an oral agreement contrary

24 to the Severance Agreements.

25     Nevertheless, Plaintiffs' argue that they "definitely had a right to re-employment" after

26 executing the Severance Agreements, and that the only question is about the time period during

27 which the claim to re-employment preference existed. (Opposition, 11:18-25.) Assuming,

28

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

1  arguendo, that Plaintiffs had some sort of claim to a re-employment preference prior to signing

2  the Severance Agreements, *Plaintiffs released that claim*, along with all other claims against

3  PG&E including claims relating to a purported contract, and tort, when they signed the

4  Severance Agreements.

5      Plaintiffs general allegation that the Agreements do not release their particular contract

6  claim is meaningless and makes it impossible to provide a further response because they cite to

7  no language in the Agreements that is susceptible to a meaning asserted by them. Indeed,

8  Plaintiffs' proposed meaning flatly contradicts the Severance Agreements. Therefore, Plaintiffs'

9  interpretation of the Severance Agreements is barred by the Parol Evidence Rule under Iconix

10  and Wang. (See also C.C. § 1625 ("The execution of a contract in writing, whether the law

11  requires it to be written or not, supersedes all the negotiations or stipulations concerning its

12  matter which preceded or accompanied the execution of the instrument.").)

   c)  **The Release of Plaintiffs' Claims Was Clearly Known at the Time of Execution of the Agreements.**

14      Plaintiffs also claim the protection of California Civil Code § 1542, which states that a

15  release of unknown claims is not effective unless extrinsic evidence supports the parties' intent to

16  release unknown claims. However, Plaintiffs do not identify which claim they consider

17  unknown. Leaving aside the fact that Plaintiffs expressly waived the protection of § 1542,

18  (Ex. C-D, ¶ 5), any claims Plaintiffs had based on their employment, including contract or tort,

19  were identified on the face of the Agreements and cannot be considered unknown. Indeed,

20  Plaintiffs claim to a 60-month re-employment preference based on an oral agreement can scarcely

21  be argued to be unknown, since Plaintiffs admit in their Complaint that they made the alleged

22  oral agreement in 1999, long before the Plaintiffs were paid consideration and the Severance

23  Agreements were executed in 2001. (Complaint, ¶ 13; Ex. C-D, p. 1.)

24      Plaintiffs knowingly released the claims raised in this lawsuit.

25      3.  **The Validity of the Release of Claims Should be Decided by the Court.**

26      All other matters pertaining to the interpretation of the Agreements are for the Court to

27  decide. See, e.g., Parsons v. Bristol Development Co., 62 Cal 2d 861, 865 (1965) ("The

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

1    interpretation of a written instrument, even though it involves what might properly be called

2    questions of fact (see Thayer, Preliminary Treatise on Evidence, pp. 202-204), is essentially a

3    judicial function to be exercised according to the generally accepted canons of interpretation so

4    that the purposes of the instrument may be given effect."); CAZA Drilling (California), Inc. v.

5    TEG Oil & Gas U.S.A., Inc., 142 Cal.App.4th 453, 464 (2006) ("Therefore, the issue is one of

6    contract interpretation and is a matter of law for the court to decide.").

7         The Court can, and should, find Plaintiffs' contract claims were released and are barred.

8              **4.    The Severance Agreements are Not Unconscionable.**

9         With no attempt to even establish the elements of unconscionability, Plaintiffs make a

10   vague reference that the Severance Agreements are unconscionable. The California Supreme

11   Court has stated that unconsionability exists when a contract is both procedurally unconscionable

12   (oppression or surprise existed because of unequal bargaining power) and, substantively

13   unconscionable (the resulting contract is unfairly one-sided). Discover Bank v. Superior Court,

14   36 Cal.4th 148, 160 (2005) (citations omitted).

15        No evidence of oppression or surprise exists. Plaintiffs voluntarily executed the

16   Severance Agreements in exchange for significant cash payments. Each Plaintiff's signature on

17   the Severance Agreements acknowledged that he

18              has been given the necessary time to consider [the Severance
                Agreements'] contents, that he/she fully understands its terms, that he/she
19              has been advised that he/she should consult legal counsel of his/her
                choosing, that the only promises made to him/his/her to sign are those
20              stated herein, and that he/she is signing this Severance Agreement and
                Release voluntarily.
21
22   (Exh. C-D, Severance Agreements, ¶ 16.)

23        Nor did the Agreements produce the "unfairly one-sided" result necessary to make a

24   showing of substantive unconscionability. Again, each Plaintiff received substantial

25   consideration for his release. Plaintiffs' argument that the Agreements were "circular" because

26   "even if Plaintiffs do not receive what they were promised in the agreement . . . any challenge or

27   dispute to the agreement is suddenly a 'breach'" is completely disposed of by the fact that the

28   Plaintiffs' bargained for consideration was received up-front. Plaintiffs do not dispute receiving

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

1  the cash payments

2      The Severance Agreements are neither procedurally nor substantively unconscionable.

3      **C.    Plaintiffs' Remaining Claims Lack Merit.**

4      Plaintiffs' "Malice, Oppression and Fraud" and "Specific Performance" claims fail to

5  state a cause of action and are improperly pled.

6          **1.    Plaintiff's Malice, Fraud and Oppression Count Fails to State a Cause
                    of Action.**

7      In their "Malice, Oppression and Fraud" count in the Complaint, Plaintiffs mislabeled a

8  prayer for punitive damages as a cause of action. "[T]here is no cause of action for punitive

9  damages. Punitive or exemplary damages are remedies . . . Punitive damages are merely incident

10 to a cause of action, and can never constitute the basis thereof." <u>Grieves v. Sup. Ct.</u>, 157

11 Cal.App.3d 159, 163-4 (1984).

12      To the extent Plaintiffs are shifting ground once again, any attempt to change the prayer

13 for punitive damages to state a fraud claim is completely improper. Plaintiffs may not

14 unilaterally amend their Complaint, but must seek leave of Court. Fed. R. Civ. P. 15(a).

15      Even if, <u>arguendo</u>, and Plaintiffs could style their prayer as a fraud count, plaintiffs fail to

16 meet the pleading requirements of FRCP 9(b). Plaintiffs fail allege a place or a time and, most

17 importantly, the underlying words they contend constitute fraud. <u>See Semegen v. Weidner</u>, 780

18 F.2d 727, 731 (9th Cir.1985) (citation omitted) ("plaintiffs must identify who said what to whom,

19 and when such statements were made"); <u>Eugene N. Gordon, Inc. v. La-Z-Boy, Inc.</u>, 2007 WL

20 1101456, *6 (E.D Cal. 2007) ("the allegations must identify the time, place, and content of the

21 alleged misrepresentation.")

22      The Ninth Circuit has held explicitly that claim dismissal is the proper remedy for the

23 failure to plead fraud claims with sufficient particularity: "When an entire complaint, or an entire

24 claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened

25 pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim." <u>Vess v.</u>

26 <u>Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1107 (9th Cir. 2003); <u>see also Eugene N. Gordon, Inc. v.</u>

27 <u>La-Z-Boy, Inc.</u>, 2007 WL 1101456, *6 (E.D.Cal. 2007) (dismissing complaint for failure to state

28

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605